ACCEPTED
15-25-00138-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/17/2025 2:50 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00138-cv**

_____

In the Court of Appeals
for the Fifteenth Judicial District
Austin, Texas

_____

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/17/2025 2:50:12 PM
CHRISTOPHER A. PRINE
Clerk

**SHAMAR D. BRADLEY,**
*Appellant*,

v.

**TEXAS DEPARTMENT OF INFORMATION RESOURCES,**
*Appellees.*

_____

On Appeal from the 261st Judicial District Court of Travis County, Texas
Honorable Sherine Thomas, Judge Presiding

_____

**BRIEF OF APPELLEE**

_____

KEN PAXTON
Attorney General

Brent Webster
First Assistant Attorney General

Austin Kinghorn
Deputy Attorney General for
Civil Litigation

Kimberly Gdula
Division Chief, General Litigation
Division

Denver Burris
Texas Bar No. 24138940
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone (512) 463-2120
Fax (512) 320-0667

ATTORNEYS FOR APPELLEE
**ORAL ARGUMENT NOT REQUESTED**

- i -

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellees herein provide this Court with the following list of parties and the names and addresses of all trial and appellate counsel:

Shamar D. Bradley *Plaintiff-Appellant*

Texas Department of Information Resources  *Defendant-Appellee*

# TABLE OF CONTENTS

Identity Of Parties And Counsel ................................................................................ ii

Table Of Contents ..................................................................................................... iii

Index Of Authorities ................................................................................................. iv

Statement Of The Case ............................................................................................. vi

Statement Regarding Oral Argument........................................................................ vii

Issues Presented ...................................................................................................... viii

Statement Of Facts ..................................................................................................... 1

Summary Of Argument............................................................................................... 3

Standard Of Review .................................................................................................... 3

Argument ..................................................................................................................... 4

    A.    Appellant does not have a probable right to the relief sought. ......................... 4

        1.    None of Appellant's claims against Appellee are viable. .......................... 5

            a.    Whistleblower claim ...................................................................... 5

            b.    Criminal claims............................................................................. 6

            c.    Claims outside the scope of this appeal ........................................ 7

        2.    Sovereign immunity deprives this Court of jurisdiction........................... 7

    B.    Plaintiff is not in danger of suffering a probable, imminent, and irreparable injury. ......... 8

Prayer ........................................................................................................................ 11

Certificate Of Compliance ........................................................................................ 13

Certificate Of Service ............................................................................................... 13

# INDEX OF AUTHORITIES

**Cases**

*Aguilar v. Chastain,*
    923 S.W.2d 740 (Tex.App.—Tyler 1996, writ denied) ................................................. 6

*Andrade v. NAACP of Austin,*
    345 S.W.3d 1 (Tex. 2011) ................................................................ 8

*Butnaru v. Ford Motor Co.,*
    84 S.W.3d 198 (Tex. 2002) ........................................................... 3, 8

*Canteen Corp. v. Republic of Tex. Props., Inc.,*
    773 S.W.2d 398 (Tex. App.—Dallas 1989, no writ) ................................................. 4

*Cardinal Health Staffing Network v. Bowen,*
    106 S.W.3d 220 (Tex. App.—Houston 2003)........................................................... 10

*Devon Energy Prod. Co., L.P. v. McCarver,*
    No. 10-15-00002-CV, 2015 Tex. App. LEXIS 8241 (Tex. App. Aug. 6, 2015) ........................ 9

*Gracia v. RC Cola-7-Up Bottling Co.,*
    667 S.W.2d 517 (Tex. 1984)........................................................... 5

*Mossler v. Shields,*
    818 S.W.2d 752 (Tex. 1991)........................................................... 5

*Tex. Dep't. of Transp. v. Miller,*
    8 S.W.3d 636 (Tex. 1999)........................................................... 8

*Tex. Dept. of Parks and Wildlife v. Miranda,*
    133 S.W.3d 217 (Tex. 2004)........................................................... 7

*Texas Nat. Res. Conservation Comm'n. v. IT-Davy,*
    74 S.W.3d 849 (Tex. 2002)........................................................... 8

*Walling v. Metcalfe,*
    863 S.W.2d 56 (Tex. 1993)........................................................... 3

*Williams v. TDCJ-Inst. Div.,*
    176 S.W.3d 590 (Tex. App.—Tyler 2005, pet. denied)........................................................... 5

*Wyly v. Preservation Dallas,*
    165 S.W.3d 460 (Tex. App.—Dallas 2005, no pet.) ....................................................... 9

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 101.057 (2)................................................................. 8

TEX. CIV. PRAC. & REM. CODE § 65.011(3) .................................................................. 9

# STATEMENT OF THE CASE

*Nature of the Case:*          This lawsuit centers around Appellant's belief that Appellee committed numerous criminal acts against him. Appellant brings all of his claims under criminal statutes.

*Trial Court:*          The trial court is the 261st District Court in Travis County, Texas.

*Trial Court Disposition:*          The order to be appealed is the trial court's order denying Appellant's Motion for Injunctive Relief.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees respectfully submit that oral argument is not necessary. The single issue at hand in this appeal is whether the trial court was correct in denying Appellant's Motion for Injunctive Relief. Since the issue is straightforward and concerns well-settled law, Appellees do not believe oral argument will aid the Court's decision-making process. However, if the Court determines oral argument is warranted, Appellees respectfully request the opportunity to participate.

## ISSUES PRESENTED

1. Did the trial court correctly deny Appellant's Motion for Injunctive Relief when Appellant pleaded to no viable claim and did not present evidence of irreparable harm?

In the Court of Appeals
for the Fifteenth Judicial District
Austin, Texas

**SHAMAR D. BRADLEY,**
*Appellant*,
v.

**TEXAS DEPARTMENT OF INFORMATION RESOURCES,**
*Appellees.*

On Appeal from the 261ˢᵗ Judicial District Court of Travis County, Texas
Honorable Sherine Thomas, Judge Presiding

**BRIEF OF APPELLEE**

Texas Department of Information Resources ("Appellee") files this Brief requesting this Court affirm the trial court's order denying Appellant's Motion for Injunctive Relief and would show as follows:

**STATEMENT OF FACTS**

On February 24, 2025, Appellant Shamar Bradley ("Appellant") filed his Original Petition for Writ of Mandamus in Travis County District Court. C.R. 3. Appellant's Petition brought 53 "counts" against various Defendants, some of whom are not parties to this lawsuit. C.R. 64—80. Against Appellee,

Appellant brings criminal claims for: abuse of official capacity (C.R. 74); copyright infringement (C.R. 75); abuse of official capacity (C.R. 75); official oppression (C.R. 75); tampering with physical evidence (C.R. 76); tampering with governmental record (C.R. 76); obstruction and retaliation (C.R. 76); obstruction and retaliation (C.R. 77); abuse of official capacity (C.R. 77—79). Appellant brings a single tort claim for theft against Appellee. (C.R. 77) Appellant also brings causes of action under 42 U.S.C. § 1983 and Texas Civil Practice and Remedies Code § 104.002(a)(2) in his Amended Petition, but those claims were not present in his Original Petition, the live petition at the time this appeal was initiated. (C.R. 882).

Appellant filed his Motion for Injunctive Relief on June 26, 2025, the denial of which being the catalyst for this appeal. Plaintiff's Motion does not appear in the record and is attached to this Brief as an Appendix. In his Motion, Appellant argued that he is entitled to injunctive relief in the form of a temporary injunction because he is in danger of Appellee causing him to be arrested for not returning his work laptop to Appellee following the termination of his employment. (Appellant's Motion for Injunctive Relief at p. 45—46). Appellant's whistleblower claim against Appellee in his previous lawsuit was dismissed for want of jurisdiction at the trial court level.

Appellant did not present a whistleblower claim in his Original Petition, which was the live petition at the time of this appeal.

## SUMMARY OF ARGUMENT

Appellant is not entitled to a temporary injunction and the trial court's order should be affirmed. Appellant does not have a probable right to the relief he seeks because he either does not have standing to bring his claims, or his claims are barred by Appellee's sovereign immunity. Appellant is not in danger of suffering a probable, imminent, or irreparable injury without a temporary injunction. For those reasons, the trial court's order should be affirmed and Appellant's appeal dismissed.

## STANDARD OF REVIEW

Appellate courts review the grant or denial of a temporary injunction by an abuse of discretion standard. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). "A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Id.* To obtain a temporary injunction, the applicant must plead and prove three specific

elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id*. (citing *Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ).

## ARGUMENT

Appellant fails to show his entitlement to such an extraordinary remedy as a temporary injunction. He is unable to show that he has a probable right to the relief sought, or that he is in danger of suffering a probable, imminent, and irreparable injury without such extraordinary relief. For that reason, his appeal should fail.

**A. Appellant does not have a probable right to the relief sought.**

Appellant does not have a probable right to the relief sought because Appellant's claims should be dismissed on jurisdictional grounds. Appellant does not provide a waiver of sovereign immunity that would abrogate Appellee's sovereign immunity.

### 1.  None of Appellant's claims against Appellee are viable.

#### a.  Whistleblower claim

As a threshold matter, Appellant does not present a whistleblower claim in his Original Petition, and any argument he makes in support of receiving injunctive relief for such a claim is outside the scope of this appeal.

Res judicata, or claims preclusion, prevents the re-litigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984). When a plaintiff's claims are dismissed with prejudice, the doctrine of res judicata prohibits the plaintiff from reasserting his claims against that defendant in a later suit. *see Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991) (holding that dismissal with prejudice functions as final determination on merits); *see also Williams v. TDCJ-Inst. Div.*, 176 S.W.3d 590, 594 (Tex. App.—Tyler 2005, pet. denied) (holding that dismissal with prejudice has full res judicata and collateral estoppel effect).

Appellant seeks reversal of an order denying his Motion for Injunctive Relief. In his Motion, Appellant seeks injunctive relief on a whistleblower claim that was dismissed with prejudice in a previous lawsuit against

Appellee. (Appellant's Motion at p. 23). Even if Appellant had presented a whistleblower claim in his Original Petition, that claim would be barred by res judicata because the claim was fully adjudicated in a prior suit. Appellant's request should be denied and the trial court's order should be affirmed.

### b. Criminal claims

Appellant's Motion seemingly only seeks injunctive relief on his previously dismissed whistleblower claim, which is not present in his Original Petition, the live petition for purposes of this appeal. (Appellant's Motion). To the extent Appellant may seek injunctive relief for any criminal claims in his petition, that attempt should fail and the trial court's order should be affirmed.

Texas does not recognize causes of action brought under the Penal Code. *Aguilar v. Chastain*, 923 S.W.2d 740, 745 (Tex.App.—Tyler 1996, writ denied). Because Texas does not recognize causes of action brought under the Penal Code, Appellant does not have standing with respect to any of his claims against Appellee. As such, Appellant may not receive injunctive relief with respect to any of the criminal claims he brings against Appellee. Accordingly, the trial court's order should be affirmed.

### c. Claims outside the scope of this appeal

Appellee's Brief argues for injunctive relief under causes of action absent in his Original Petition, which was the live petition when this appeal was initiated. Appellant attempts to receive injunctive relief for a claim brought under the Texas Commission on Human Rights Act (Appellant's Brief at p. 52), a tortious interference with a contract claim (*Id.*), a libel claim (*Id.* at p. 54), a whistleblower claim (*Id.* at p. 58), a "free speech retaliation" claim pursuant to 42 U.S.C. § 1983 (*Id.* at p. 72), and claims for violation and deprivation of due process, due course of law, and equal protection under the Texas Constitution (*Id.* at p. 77). These claims were not present in Appellant's live petition at the time of appeal, nor are they present in the Motion he is asking this Court to grant. (C.R. 3—85); (Appellant's Motion). Appellant should not be awarded any relief based on claims that are outside the scope of this appeal. The trial court's order should be affirmed.

### 2. Sovereign immunity deprives this Court of jurisdiction.

A suit against the State or its agencies is barred by sovereign immunity absent clear and unambiguous legislative consent, and sovereign immunity deprives a trial court of subject matter jurisdiction. *Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 224-225 (Tex. 2004); *Tex. Dep't. of*

*Transp. v. Miller*, 8 S.W.3d 636, 638 (Tex. 1999). Sovereign immunity bars a suit against the State unless the legislature expressly consents to the suit. *Texas Nat. Res. Conservation Comm'n. v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Unless the plaintiff pleads a viable claim, sovereign immunity is retained for government defendants. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011).

Appellant brings a theft claim against Appellee. (C.R. 77). Theft is an intentional tort, and the Texas Tort Claims Act does not waive immunity for intentional torts. SEE TEX. CIV. PRAC. & REM. CODE § 101.057 (2). Accordingly, Appellee's sovereign immunity bars this claim. Because sovereign immunity bars this claim, Appellee is unable to show that he has a probable right to the relief sought, and his request for a temporary injunction should be denied. The trial court's order should be affirmed.

## B. Plaintiff is not in danger of suffering a probable, imminent, and irreparable injury.

For purposes of a temporary injunction, an injury is irreparable if the injured party cannot be adequately compensated in monetary damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204. The party applying for a temporary injunction has the

burden of production, which is the burden of offering some evidence that establishes a probable right to recover and a probable interim injury. *See Wyly v. Preservation Dallas,* 165 S.W.3d 460, 465 (Tex. App.—Dallas 2005, no pet.). If an applicant does not discharge his burden, he is not entitled to such extraordinary relief. *Id.*

Appellant asks this Court to reverse the order by the trial court denying Appellant injunctive relief in the form of reinstatement with Appellee. (Appellant's Brief at p. 98). Appellant claims his request is a "statutory injunction" governed by Texas Civil Practice and Remedies Code § 65.011. (*Id*. at p. 40—41). Appellant did not argue for an injunction under this statute in his Motion and only mentions it in passing once. (Appellant's Motion at p. 47). Importantly, section 65.011(3) provides that an applicant may be entitled to an injunction, if the applicant can show they would receive an injunction "under the principles of equity". SEE TEX. CIV. PRAC. & REM. CODE § 65.011(3). Texas Appellate Courts have held that section 65.011(3) "does not supersede the common law's irreparable harm or injury requirement". *Devon Energy Prod. Co., L.P. v. McCarver*, No. 10-15-00002-CV, 2015 Tex. App. LEXIS 8241, at *4 (Tex. App. Aug. 6, 2015). Indeed, the "default rule" is that "the rules of equity control the granting of temporary-injunctive relief unless

a particular statute provides otherwise." *Cardinal Health Staffing Network v. Bowen,* 106 S.W.3d 220, 235 (Tex. App.—Houston 2003). Appellant's assertion that § 65.011(3) "does not include the equitable requirement of irreparable injury and inadequate legal remedy" is incorrect. (<u>Appellant's Brief </u>at p. 41).

Appellant's Brief does not argue he is in danger of an irreparable, imminent harm because it falsely assumes that is not a requirement for injunctive relief. Even if Appellant correctly applied the law in his Brief, he would be unable to obtain injunctive relief because he has not indicated the irreparable injury he is in danger of suffering without preservation of the status quo. Appellant is currently not employed by Appellee; the injunction Appellant seeks does nothing to preserve this status quo and would actually change the current position of the parties. Simply put, no equitable or legal justifications exist for this Court to overturn the trial court's correct decision.

Further, Appellant's Motion for Injunctive Relief argues that he "fears for his safety" after Appellee asked Appellant to return the work computer that was provided to him when Appellee hired Appellant. (<u>Appellant's Motion</u> at p. 46). Appellant also claimed in his Motion, in a paragraph under the heading "STATEMENT OF IMMEDIATE AND IRREPARABLE HARM,"

that he has a protected interest in "his good name, honor, integrity, reputation, and employment which will be *irreparably harmed*" without the Court's intervention. (*Id*.) (emphasis added). Appellant's clear recitation of an element of injunctive relief, and his lackluster attempt to argue such a point, conflict with his claim in his Brief that § 65.011(3) "does not include the equitable requirement of irreparable injury". (Appellant's Brief at p. 41).

Appellant's Motion for Injunctive Relief, the denial of which is the issue on appeal, and his appellate Brief, ostensibly in support of said Motion, contradict each other on whether Appellant is supposed to prove irreparable harm at all. Appellant's Brief does not even attempt to argue that he needs protection from an irreparable harm. Accordingly, the decision of the trial court should be affirmed.

## PRAYER

For the foregoing reasons, the Court should dismiss Appellant's appeal and affirm the trial court's order. Appellant does not attempt to argue for the granting of his Motion for Injunctive Relief and instead argues for claims outside the scope of this appeal. Appellant has not established his entitlement

to such extraordinary relief as a temporary injunction, and the trial court's order should be affirmed.

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for
Civil Litigation

KIMBERLY GDULA
Division Chief, General Litigation Division

*/s/ Denver Burris*
DENVER BURRIS
Assistant Attorney General
Texas Bar No. 24138940
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4105 | FAX: (512) 320-0667
Denver.Burris@oag.texas.gov

## CERTIFICATE OF COMPLIANCE

This document complies with the requirements of Texas Rule of Appellate Procedure 9.4(i)(2)(B). This document contains 2,123 words and was prepared using Microsoft Word as part of the Microsoft Office program. This certificate complies with the requirement of Texas Rule of Appellate Procedure 9.4(i)(3).

*/s/Denver Burris*
*Attorney for Appellee*

## CERTIFICATE OF SERVICE

I certify that that on November 17, 2025, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

Shamar Bradley       CM/RRR#: 7020 1290 0000 7441 8641
10109 Lake Creek Pkwy
#170682
Austin, Texas 78117
210-425-5464
Shamar.d.bradley@gmail.com
**PLAINTIFF PRO SE**

*/s/ Denver Burris*
**DENVER BURRIS**
Assistant Attorney General

**No. 15-25-00138-cv**
_____

In the Court of Appeals
for the Fifteenth Judicial District
Austin, Texas
_____

**SHAMAR D. BRADLEY,**
*Appellant*,

v.

**TEXAS DEPARTMENT OF INFORMATION RESOURCES,**
*Appellees.*
_____

On Appeal from the 261st Judicial District Court of Travis County, Texas
Honorable Sherine Thomas, Judge Presiding
_____

**APPENDIX OF APPELLEE**
_____

KEN PAXTON
Attorney General

Brent Webster
First Assistant Attorney General

Austin Kinghorn
Deputy Attorney General for
Civil Litigation

Kimberly Gdula
Division Chief, General Litigation
Division

Denver Burris
Texas Bar No. 24138940
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone (512) 463-2120
Fax (512) 320-0667

ATTORNEYS FOR APPELLEE

TABLE OF CONTENTS

Table of Contents ……………………………………………………………….. ii

Plaintiff's Motion for Injunctive Relief; June 26, 2025 …………………………………000001

6/26/2025 2:59 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-001373
Max Hernandez

Cause No. D-1-GN-25-001373

| | | |
|---|---|---|
| SHAMAR D. BRADLEY | § | IN THE 261ST DISTRICT COURT |
| *Plaintiff* | § | |
| v. | § | TRAVIS COUNTY |
| TEXAS OFFICE OF THE | § | |
| ATTORNEY GENERAL, | § | **JURY TRIAL DEMANDED** |
| TEXAS DEPARTMENT OF | § | |
| INFORMATION RESOURCES, | § | **WRIT OF MANDAMUS REQUESTED** |
| *and all other Defendants* | § | |
| *similarly situated* | § | |

App. 000001

Copy from re:SearchTX

**Plaintiff**
Shamar D. Bradley
Pro Se
shamar.d.bradley@gmail.com
10109 Lake Creek Parkway, #170682
Austin, TX 78717
Telephone: (210) 425-5464

**Defendants**
The Texas Department of Information Resources ("DIR")

**Trial and Appellate Counsel for Defendants**
Denver Burris
Assistant Attorney General
denver.burris@oag.texas.gov
Texas Bar No. 24138940
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4105
Facsimile: (512) 320-0667

GENERAL COUNSEL FOR DEFENDANT
Josh Godbey
General Counsel
josh.godbey@dir.texas.gov
Texas Bar No. 24049996
300 W. 15th Street, Suite 1300
Austin, TX 78701
Telephone: (512) 475-4550

Copy from re:SearchTX

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................................. 1

INDEX OF AUTHORITIES ............................................................................................... 3

STATEMENT OF JURISDICTION ..................................................................................... 9

ISSUES PRESENTED ...................................................................................................... 9

STATEMENT OF FACTS ............................................................................................... 10

ARGUMENT ................................................................................................................ 13

    I.      Standard of Review ..................................................................................13

    II.     The Texas Whistleblower Act ..................................................................15

    III.    DIR's missing and misleading instructions are due process violations ...........................15

        a.   DIR refused or failed to inform the plaintiff of his whistleblower rights .................. 17

        b.   DIR claimed there was no appeal procedure and ignored its invocation.................... 18

        c.   The prescribed content of the Whistleblower Poster is deficient............................. 18

    IV.   Doctrines of Stare Decisis, Res Judicata, and Collateral Estoppel do not apply .............19

        a.   DIR failed to give notice on their Amended Plea to the Jurisdiction.......................... 22

        b.   The plaintiff filed this case prior to the dismissal of the other case.......................... 22

        c.   The trial court ignored the plaintiff's motion to dismiss for want of prosecution....... 23

        d.   The trial court erred in dismissing the other case with prejudice .............................. 23

    V.     Plaintiff is likely to prevail on the merits of whistleblower retaliation ...........................23

        a.   The plaintiff's report of a violation of law was a protected disclosure....................... 23

            i.    DIR's acts and omissions are official acts .............................................................. 23

            ii.   Plaintiff reported a violation of a law by another public employee...................... 24

            iii.  The violation had occurred and was not speculative ........................................... 25

        b.   DIR is not entitled to sovereign immunity for whistleblower retaliation .................. 25

        c.   The Whistleblower Act is a remedial statute and thus should be construed liberally. 26

        d.   Sovereign immunity does not bar suits against a State official's unlawful acts ......... 26

        e.   A constitutional challenge to a state official's action is not a suit against the State ... 28

        f.   No Permission required to sue the State for a state official's violations of state law . 29

        g.   The trial court wrongly pursued a narrow construction of the Act ............................. 30

        h.   Okoli is flawed and cannot be applied to the facts of this case ................................. 31

        i.   The trial court disregarded the unlawful employment practice claim ....................... 36

        j.   "Regulate Under the Law" Is Unconstitutionally Vague .......................................... 37

    VI.   DIR has investigative, regulatory, and enforcement powers ...........................................38

        a.   DIR is a regulatory agency that makes rules governing other Agencies ................... 38

        b.   DIR has investigatory authority ............................................................................... 39

        c.   DIR has enforcement authority ................................................................................ 40

        d.   DIR otherwise regulates conduct outside the Agency .............................................. 40

STATEMENT OF IMMEDIATE AND IRREPARABLE HARM......................................... 45

CONCLUSION AND PRAYER ........................................................................................ 47

AFFIDAVIT .................................................................................................................. 48

CERTIFICATE OF SERVICE .......................................................................................... 48

APPENDIX ................................................................................................................... 49

Copy from re:SearchTX

**CASES:**

Page(s)

*Alamo Heights Indep. Sch. Dist. v. Clark,*
544 S.W.3d 755, 770-71 (Tex. 2018) ................................................................. 13

*Barr v. Resolution Trust Corp.,*
837 S.W.2d 627, 628 (Tex.1992) ................................................................. 19, 20

*Bd. of Regents of State Colleges v. Roth,*
408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ................................ 16

*Bonniwell v. Beech Aircraft Corp.,*
663 S.W.2d 816, 818 (Tex.1984) ...................................................................... 20

*Bradley v. Department of Information Resources,*
D-1-GN-24-009408 ................................................................................. 102-137

*Brandt v. Hickel,*
427 F.2d 53, 56 (9th Cir. 1970) ........................................................................ 22

*Brickman v. Office of the Attorney General,*
D-1-GN-20-006861 ................................................................................. 138-141

*In re Bridgestone Ams. Tire Operations, LLC,*
459 S.W.3d 565, 572 (Tex. 2015) ................................................................. 37,38

*Brody v. Vill. of Port Chester,*
434 F.3d 121, 129–30 (2d Cir. 2005) ................................................................ 22

*Burch v. City of San Antonio,*
518 S.W.2d 540, 544 (Tex. 1975) ..................................................................... 26

*Camacho v. Samaniego,*
954 S.W.2d 811, 818 (Tex. App.—El Paso 1997, writ denied) .......................... 24

*City of Cockrell Hill v. Johnson,*
48 S.W.3d 887, 896-97 (Tex. App.—Fort Worth 2001, pet. denied) ................. 24

*City of Dallas v. VSC, LLC,*
347 S.W.3d 231, 238–39 (Tex. 2011) (same) .................................................... 25

*City of Fort Worth v. Pridgen,*
653 S.W.3d 176, 182, 184 (Tex. 2022) ............................................................. 25

*City of Mason v. West Tex. Utils. Co.,*
237 S.W.2d 273, 280 (Tex. 1951) ..................................................................... 26

*City of San Antonio v. Maspero,*
640 S.W.3d 523, 528 (Tex. 2022) ..................................................................... 13

*City of Waco v. Lopez,*
259 S.W.3d 147, 154 (Tex. 2008) ..................................................................... 30

*City of West Covina v. Perkins,*
525 U.S. 234, 241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999) ............................. 16

*Connally v. Dallas Indep. Sch. Dist.,*
506 S.W.3d 767, 788 (Tex. App.—El Paso 2016, no pet.) ................................ 25

*Engelman Irrigation Dist. v. Shields Bros., Inc.,*
960 S.W.2d 343 (Tex. App.—Corpus Christi 1997, pet. denied) ...................... 22

Copy from re:SearchTX

**CASES:**

Page(s)

*Familias Unidas v. Briscoe,*
 619 F.2d 391, 403 (5th Cir. 1980) ................................................................................24

*Foster v. Wells,*
 4 Tex. 101,104 (1849) ........................................................................................................21

*Getty Oil Co. v. Ins. Co. of N. Am.,*
 845 S.W.2d 794, 800 (Tex.1992) ..................................................................................19

*Gonzalez v. Sullivan,*
 914 F.2d 1197, 1203 (9th Cir. 1990) ..........................................................................22

*Gracia v. RC Cola-7-Up Bottling Co.,*
 *667 S.W.2d 517, 519 (Tex.1984)* ................................................................................19

*Harris Cty. v. Sykes,*
 136 S.W.3d 635 (Tex. 2004) ..........................................................................................22

*Hosner v. DeYoung,*
 1 Tex. 764, 769 (1847) ......................................................................................................13

*Housing Auth. of City of El Paso v. Rangel,*
 131 S.W.3d 542, 547-48 (Tex. App.—El Paso 2004, pet. granted by agr.,
 judgm't vacated w.r.m.)......................................................................................................24

*Jeanes v. Henderson,*
 688 S.W.2d 100, 103 (Tex.1985) ..................................................................................21

*Martinez v. Tex. State Bd. of Med. Exam'rs,*
 476 S.W.2d 400, 405 (Tex. Civ. App.—San Antonio 1972, writ ref'd n.r.e.)....................17

*Mathews v. Eldridge,*
 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)....................................16

*Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.,*
 642 S.W.3d 551, 557 (Tex. 2022) ..................................................................................38

*Mission Consol. Indep. Sch. Dist. v. Garcia,*
 372 S.W.3d 629, 635-36 (Tex. 2012)............................................................................14

*Mosley v. Tex. Health & Human Servs. Comm'n,*
 593 S.W.3d 250 (Tex. 2019) ..........................................................................................16

*Mosser v. Plano Three Venture,*
 893 S.W.2d 8, 12 (Tex. App.— Dallas 1994, no writ).............................................22

*Mullane v. Cent. Hanover Bank & Trust Co.,*
 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)........................................16, 22

*Nelson v. Williams,*
 135 S.W.3d 202, 206 (Tex. App.—Waco 2004, pet. denied) .............................20

*Nu-Way Energy Corp. v. Delp,*
 205 S.W.3d 667, 675-76 (Tex. App.— Waco 2006, pet. denied).......................20

*Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.),*
 *200* F.3d 382, 386 (5th Cir. 2000) ................................................................................20

*Puga v. Donna Fruit Co.,*
 634 S.W.2d 677, 679 (Tex.1982) ..................................................................................19

Copy from re:SearchTX

# CASES:

Page(s)

*Reata Constr. Corp. v. City of Dallas,*
197 S.W.3d 371, 374-75 (Tex. 2006)................................................................26

*In re Smith,*
333 S.W.3d 52, 587 (Tex. 2011) (orig. proceeding). ......................................26

*State & County Mut. Fire Ins. Co. v. Miller,*
52 S.W.3d 693, 696 (Tex. 2001) (per curiam) ................................................20

*SMI/USA, Inc. v. Profile Techs., Inc.,*
38 S.W.3d 205, 211 (Tex. App. Waco 2001, no pet.)......................................20

*Spradlin v. Jim Walter Homes, Inc.,*
34 S.W.3d 578, 581 (Tex. 2000) .....................................................................32

*State v. Holland,*
221 S.W.3d 639, 642 (Tex. 2007) ...................................................................13

*State v. Lueck,*
290 S.W.3d 876, 880 (Tex.2009) .....................................................................13

*Steakley,*
28 Sw.L.J. 355..................................................................................................21

*Steger v. Muenster Drilling Co., Inc.,*
134 S.W.3d 359, 368 (Tex. App.—Fort Worth 2003, pet. denied)...................20

*Tarrant County v. Bivins,*
936 S.W.2d 419, 422 (Tex. App.—Fort Worth 1996, no writ)..........................24

*Tex. Dep't of Parks & Wildlife v. Miranda,*
133 S.W.3d 217. 226-28 (Tex. 2004)...............................................................13

*Texas Dep't of Transp. v. Jones,*
8 S.W.3d 636 (Tex. 1999) ...............................................................................21

*Tex. Dep't. of Transp. v. Needham,*
82 S.W.3d. 314, 318 (Tex. 2002) .............................................................34, 35

*Texas Bd. of Pardons & Paroles v. Feinblatt,*
82 S.W.3d 513, 521 (Tex. App.—Austin 2002, pet. denied) ............................30

*Texas Dep't of Crim. Just. v. McElyea,*
239 S.W.3d 842, 849 (Tex. App.—Austin 2007, pet. denied) ................... 25-26

*Texas Dep't of Hum. Servs. v. Okoli,*
440 S.W.3d 611, 617 (Tex. 2014) ................................................................ 31-35

*Texas Health & Hum. Servs. Comm'n v. Pope,*
No. 03-19-00368-CV, 2020 WL 6750565, at *7
(Tex. App.—Austin Nov. 18, 2020, pet. filed) (mem. op.) ...............................25

*Tex. Health & Hum. Servs. Comm'n v. Pope,*
674 S.W.3d 273, 281 (Tex. 2023) ...................................................................

*Traxler v. Entergy Gulf States, Inc.,*
376 S.W.3d 742, 744 -45 (Tex. 2012)..............................................................26

*Univ. of Tex. Med. Sch. at Hous. v. Than,*
901 S.W.2d 926, 929 (Tex. 1995) at 930 ...................................................16, 22

Copy from re:SearchTX

**CASES:**

Page(s)

*Univ. of Texas Sw. Med. Ctr. at Dallas v. Gentilello,*
398 S.W.3d 680, 685 (Tex. 2013) ..................................................................34, 35

*University of Houston v. Barth,*
178 S.W.3d 157, 162 (Tex. App.—Houston [1st Dist.] 2005, no pet.) .............................26

*U.S. v. Henderson,*
707 F.2d 853, 856–57 (5th Cir. 1983).................................................................22

*Wichita County v. Hart,*
892 S.W.2d 912, 929 (Tex. App.—Austin 1994)...........................................................24

**STATUTES AND RULES**

Page(s)

Texas Constitution:
  Art. I §  2.......................................................................................44
  Art. I §  13......................................................................................15
  Art. I §  19......................................................................................15
United States Code:
  5  U.S.C. § 2302(f)(1)(A)................................................................ 14-15
  17  U.S.C. § 506(a)(1)(B) ............................................................. 102-137
Texas Labor Code:
  §  21.055......................................................................................36
Texas Civil Practice and Remedies Code:
  §  65.011......................................................................................47
Texas Code of Criminal Procedure:
  §  2A.........................................................................................38
  §  2.14.......................................................................................38
  §  2.15.......................................................................................38
  §  59.01(5)...................................................................................37
Texas Rules of Civil Procedure:
  13........................................................................................ 102-137
  51(a),(b) ................................................................................ 102-137
  91a.3(b) ................................................................................. 102-137
  165a...................................................................................... 102-137
  176.8..................................................................................... 102-137
  190....................................................................................... 102-137
  305....................................................................................... 102-137
  306a...................................................................................... 102-137

Copy from re:SearchTX

**STATUTES**

Page(s)

Texas Government Code:
§ 311.016.....................................................................................................17
§ 311.023(5) ...............................................................................................30
§§ 554.002(a), (b)(1)-(2).........................................14, 18, 31, 43, 47
§ 554.003...........................................................................13, 17, 26, 47
§ 554.0035..................................................................................................26
§ 554.004............................................................................................36, 37
§ 554.009(a),(b) .................................................................9, 17, 18
§§ 2054.021(f), (g)(4) .............................................................................40
§§ 2054.0286(b)(3)-(4) ...........................................................................40
§§ 2054.036(a), (b)(1)-(6).......................................................................40
§§ 2054.037(a)(1), (b) ............................................................................39
§ 2054.051(h).............................................................................................41
§§ 2054.052(a), (e)(1)(B) .......................................................38-41
§ 2054.0565(a) ...........................................................................................41
§ 2054.058...................................................................................................42
§ 2054.102(b)..............................................................................................39
§ 2054.1264(e) ...........................................................................................39
§ 2054.130(b)..............................................................................................39
§ 2054.2606(d) ...........................................................................................39
§ 2054.262...................................................................................................39
§ 2054.271(c) ..............................................................................................39
§ 2054.379...................................................................................................39
§ 2054.452(b)..............................................................................................39
§ 2054.453(a)(1) ........................................................................................39
§ 2054.458...................................................................................................39
§ 2054.459...................................................................................................39
§ 2054.52007..............................................................................................39
§ 2054.552(c) ..............................................................................................39
§ 2054.554(c) ..............................................................................................39
§ 2054.259...................................................................................................40
§ 2054.1181(a) ...........................................................................................42
§ 2261.256(b)..............................................................................................41

Copy from re:SearchTX

## OTHER AUTHORITIES

Page(s)

Texas Attorney General Whistleblower Poster
https://www.texasattorneygeneral.gov/sites/default/files/files/divisions/general-oag/WhistleblowerPoster.pdf ...............................................................................80

DIR Contract Management Handbook
https://dir.texas.gov/sites/default/files/DIR%20Contract%20Management%20Guide%20and%20Handbook.pdf ............................................................................... 81-93

DIR RFO #DIR-CPO-TMP-550, 04DEC2020
https://cf-store.widencdn.net/txdir/d/0/c/d0c35072-bba8-4258-8600-dee18ca9a883.pdf?response-content-disposition=attachment%3B%20filename%3D%22DIR-CPO-4893%20RFO%20DIR-CPO-TMP-550.pdf............................................................. 94-97

State of Utah Cooperative Contract with Tyler Technologies
https://s3-us-west-2.amazonaws.comPDF1650563051_Tyler Technologies - Master Agreement.pdf ...................................................................................... 98-99

DIR-CPO-5274 Tyler Technologies Appendix C Pricing Index
https://txdir.widen.net/view/pdf/dmotcjew5u/DIR-CPO-5274-Appendix-C-Pricing-Index.pdf?t.download=true&u=tmwul0 .................................................... 100-101

Public Law 95-454, Civil Service Reform Act (CSRA) of 1978
https://www.govinfo.gov/content/pkg/STATUTE-92/pdf/STATUTE-92-Pg1111.pdf.......... 52-57

House Bill 1075, Texas Whistleblower Act (TWA) of 1983
https://lrl.texas.gov/LASDOCS/68R/HB1075/HB1075_68R.pdf#page=1 ..................................58

Public Law 101-12, Whistleblower Protection Act (WPA) of 1989
https://www.congress.gov/101/statute/STATUTE-103/STATUTE-103-Pg16.pdf................ 59-61

Senate Bill 248, Protections for Reporting Violations of Law, 1989
https://lrl.texas.gov/LASDOCS/73R/SB248/SB248_73R.pdf#page=1................................. 62-64

House Bill 175, Amendment to Texas Whistleblower Act of 1994
https://lrl.texas.gov/LASDOCS/74R/HB175/HB175_74R.pdf ........................................... 65-71

Public Law 112-199, Whistleblower Protection Enhancement Act (WPEA) of 2012
https://home.treasury.gov/system/files/306/WPEA-2012-PL-112-199.pdf.......................... 71-73

House Bill 3893, Whistleblower Protection and Accountability Act of Texas
https://capitol.texas.gov/tlodocs/87R/billtext/pdf/HB03893I.pdf....................................... 74-79

Copy from re:SearchTX

## STATEMENT OF JURISDICTION

A public employee of a state governmental entity may sue under this chapter in a district court of the county in which the cause of action arises or in a district court of Travis County. *See* Tex Gov't Code § 554.007(a).

## ISSUES PRESENTED

DIR willfully refused or negligently failed to comply with a mandatory requirement to inform the plaintiff of his whistleblower rights by posting a sign in the workplace in accordance with Tex. Gov't Code § 554.009(a). Nevertheless, the content prescribed by the attorney general to be included in the whistleblower rights sign is unconstitutionally vague and insufficient to accomplish the Act's purpose. This was disregarded by the trial court when it refused to consider the plaintiff's good faith belief that DIR was a qualified governmental entity authorized to regulate the law violations and coworker sleeping at his desk was reasonable in light of his training and experience. The government's missing and misleading instructions are due process violations.

Assuming arguendo that the whistleblower sign had actually been posted in the workplace and its prescribed content was adequate, DIR's defense still fails on the merits. Despite the contention that DIR does not have the authority to regulate, enforce, or investigate violations of copyright law, DIR's statutory authority clearly establishes that DIR does, in fact, qualify as a "law enforcement authority" under the Act. The plaintiff reported the violation of a law to his supervisor and coworkers, all of which had the statutory authority to regulate under, enforce, and investigate the misconduct and type of law that was violated.

Copy from re:SearchTX

STATEMENT OF FACTS

Between November 13th, 2023 and August 21st, 2024, the plaintiff was employed as a Database Administrator at DIR; his duties in that capacity required him to coordinate the planning, development, maintenance, and monitoring of integrated database systems; evaluate and review database architecture; and maintain data integrity.

The original work location was 300 West 15th Street in Austin (WPC). On December 8th, the plaintiff and some coworkers were relocated to an alternate work site at the Austin Data Center (ADC). Neither location had a required Whistleblower Rights Sign posted wheresoever and the plaintiff was never informed of his whistleblower rights or received any training on them. On May 29th and August 14th, the plaintiff observed his coworker sleeping at his desk. On August 7th, plaintiff became aware of his coworker's criminal copyright infringement which he reported to his coworkers and supervisor on August 9th, 16th, and 20th. On August 20th, the plaintiff complained about his coworker repeatedly sleeping at work and for attempting to blame him for the four-month delay of a trivial task that should have taken only 2 hours. On August 21st, the plaintiff was terminated for "misconduct" and repeated attempts to elicit an explanation of the alleged "misconduct" were refused. He stated that he was being retaliated against for reporting criminal activity and requested the appeal process, but was told that "there is no appeal process."

The plaintiff attempted to initiate appeal and grievance procedures on August 21st, September 11th, 20th, and 23rd, and October 12th and all were disregarded. The plaintiff specifically stated on September 23rd in his letter to the defendants that DIR failed to inform the plaintiff of his whistleblower rights, and by extension, the reporting requirements under the act.

The plaintiff had no choice but to file a lawsuit as a surrogate for the defendants refusal to comply with Tex. Gov't Code § 554.006. The defendants illegally failed to comply with the

Copy from re:SearchTX

plaintiff's duly issued subpoenas so he had no choice but to file a Public Records Request to establish the fact that the defendants failed or refused to post the whistleblower sign or train its employees on how to report illegal activity by another public employee. The trial court disregarded this jurisdictional fact when evaluating whether or not a jury could find that the plaintiff made what he in good-faith believed to be a valid report to an "appropriate law enforcement authority" under the Act.

The plaintiff filed a whistleblower retaliation case on November 20th, again alleging that the defendants failed to inform the plaintiff of the whistleblower reporting requirements in his original petition. He resubmitted the evidence and argument that DIR failed to inform him of the whistleblower Act Reporting requirements on November 27th in the evidence in support of the motion for injunctive relief. The defendants claimed that they were entitled to sovereign immunity because the plaintiff only made the report to his supervisor, when in reality, he also reported it to his coworkers. The stated for the third time in his amended complaint on December 23rd, that the failed to inform him of the whistleblower Act Reporting requirements.

Notwithstanding these reiterated jurisdictional facts, the trial court granted the defendant's plea to the jurisdiction. The trial court overlooked the hypocritical nature of the defendants' claim that the plaintiff's report of malfeasance was procedurally deficient and instead elected to participate in the defendants' deprivation of the plaintiff's due process by falsely claiming a dismissal hearing had occurred, when in reality, it did not.

In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. *See* Rule 4, Tex. R. Civ. P. Plaintiff was illegally terminated in retaliation for reporting criminal activity on August 21st, 2024; 90 days from the termination

Copy from re:SearchTX

date (excluding the day of the act) is November 20th, 2024. A public employee must initiate action under the grievance or appeal procedures of the employing state governmental entity relating to termination of employment before suing under this chapter. *See* Tex. Gov't Code § 554.006(a). The employee must invoke the applicable grievance or appeal procedures not later than the 90th day after the date on which the alleged violation occurred. 90 days from the termination date (excluding the day of the act) is November 20th, 2024. Plaintiff invoked appeal procedures via lawsuit on November 20th, 2024. Therefore, the appeal procedure was timely invoked. *See* Tex. Gov't Code § 554.006(b)(1).

Time used by the employee in acting under the grievance or appeal procedures is excluded. *See* Tex. Gov't Code § 554.006(c). Plaintiff received notice from DIR via Public Records request that DIR had "no responsive records" relating "to the DIR employee responsible for handling the internal DIR whistleblower grievance relating to the illegal retaliatory termination of Shamar Bradley in accordance with Tex. Gov't Code § 554.006(b)".

If a final decision is not rendered before the 61st day after the date procedure is initiated, the employee may elect to exhaust the applicable procedures, in which event the employee must sue not later than the 30th day after the date those procedures are exhausted to obtain relief under this chapter. *See* Tex. Gov't Code § 554.006(a)(1). Plaintiff invoked appeal procedures on November 20th, 2024. The 61st day after procedures are initiated (not including the date of the act (November 20th, 2024)) is January 22nd, 2025; 30 days after the date of exhaustion of appeal procedures (not including the date of the act) is February 22nd, 2025. If the last day is a Saturday, Sunday, or legal holiday, the time period is extended to the next day that is not a Saturday, Sunday, or legal holiday. *See* Tex. R. Civ. P. Rule 4. February 22nd, 2025 is a Saturday; the next day that is not a Saturday or Sunday or legal holiday is February 24th, 2025. Thus, this appeal is timely filed.

Copy from re:SearchTX

I.      Standard of Review

The State and its agencies, including DIR, "are immune from suit and liability in Texas unless the Legislature expressly waives sovereign immunity." *State v. Lueck, 290 S.W.3d 876, 880 (Tex. 2009)*. An agency may assert its immunity in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 225-26 (Tex. 2004)*; see also *Hosner v. DeYoung, 1 Tex. 764, 769 (1847)*. Although immunity from suit is a jurisdictional question generally distinct from immunity from liability, the Supreme Court has held the two are interwoven in the context of the Whistleblower Act, which requires plaintiffs to allege jurisdictional facts giving rise to an actual violation of the Act to qualify for the statutory waiver of immunity. *Lueck, 290 S.W.3d at 881*; see Tex. Gov't Code §§ 554.003(a) (authorizing suit by public employee terminated in violation of Act), .0035 (waiving immunity "to the extent of liability for the relief allowed under this chapter for a violation of this chapter").

A plea to the jurisdiction presents a question of law that is reviewed de novo on appeal, *State v. Holland, 221 S.W.3d 639, 642 (Tex. 2007)*, mirroring the standard applied to a traditional motion for summary judgment, *City of San Antonio v. Maspero, 640 S.W.3d 523, 528 (Tex. 2022)*. When a plea to the jurisdiction challenges the existence of alleged jurisdictional facts, such as those necessary to establish a claim under the Whistleblower Act, "we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Alamo Heights Indep. Sch. Dist. v. Clark, 544 S.W.3d 755, 770-71 (Tex. 2018)*. A defendant that files a plea to the jurisdiction has the initial burden of meeting the summary judgment standard of proof for its assertion that the courts lack jurisdiction; if it does so, the plaintiff must then "show that a disputed

Copy from re:SearchTX

material fact exists regarding the jurisdictional issue." *Mission Consol. Indep. Sch. Dist. v. Garcia, 372 S.W.3d 629, 635 (Tex. 2012)*.

When a fact issue exists, the plea to the jurisdiction should be denied. If the plaintiff fails to raise a fact question on the jurisdictional issue or the relevant evidence supporting the defendant's assertion is undisputed, the plea to the jurisdiction must be granted as a matter of law. "[I]n determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Alamo Heights, 544 S.W.3d at 771*. In doing so, "we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not." DIR has not disputed, but rather has confessed, that it failed or refused to inform the plaintiff of the reporting requirements under the Act.

Accordingly, this court cannot disregard evidence demonstrating that DIR failed to inform its employees of their whistleblower rights by posting a sign in the workplace or the inference that this lack of information caused the plaintiff to report the violation of a law to his coworkers and supervisor pursuant to 5 U.S.C § 2302(f)(1)(A) and not "an appropriate law enforcement authority" pursuant to Tex. Gov't Code § 554.002(b). Therefore, this court cannot grant a plea to the jurisdiction in this case.

Regardless, DIR is authorized to regulate, enforce, and investigate in general, and is specifically authorized to enforce and regulate copyright infringement of software licensed to it perpetrated by one of its own employees.

Copy from re:SearchTX

II.     The Texas Whistleblower Act

Congress established whistleblower protections for federal employees in the Civil Service Reform Act (CSRA) of 1978. Texas enacted whistleblower protections in the Texas Whistleblower Act (TWA, hereinafter, "the Act") of 1983. Congress improved the CSRA 1989 and Texas followed suit in 1989 and 1994. Congress passed the Whistleblower Protection Enhancement Act (WPEA) of 2012, which protected the refusal to participate in criminal or unauthorized activity and added 5 U.S.C § 2302(f)(1)(A): "A disclosure shall not be excluded because the disclosure was made to a supervisor."

Absent the whistleblower rights sign, and as a former federal employee, the plaintiff made what he in good faith believed to be valid report to an individual authorized to regulate the misconduct by reporting a violation of a law to his supervisor.

III.    DIR's missing and misleading instructions are due process violations

All courts shall be open, and every person for an injury done him, in his person or reputation, shall have remedy by due course of law. TEX. CONST. art. I § 13. No citizen of this State shall be deprived of liberty, privileges, or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX. CONST. art. I § 19. The defendants injured the plaintiff's good name, honor, reputation and liberty interest in his employment and deprived the plaintiff of due process of internal appeal procedures and the trial court deprived him of remedy by due course of law.

The Supreme Court of Texas held that the government's misleading instructions are violations of due process rights under the Texas Constitution and held that Mosley had a protected liberty interest in her employment and reputation, and the state's actions created a high risk of erroneous deprivation by misrepresenting the steps needed to protect her interests. The remedy

Copy from re:SearchTX

was to reinstate her administrative case for a proper rehearing. *Mosley v. Tex. Health & Human Servs. Comm'n, 593 S.W.3d 250 (Tex. 2019)*. (We conclude that the misrepresentations in the letter, largely due to the incorrect regulation included therein, effectively deprived Mosely of her right to judicial review and violated her right to due process. Instead of directing her to file a motion for rehearing, the letter misled Mosley to believe the order would become "final" and that her name would be placed on the Registry "unless" she filed "a timely petition for judicial review" within thirty days. This misdirection makes this case distinguishable from others in which the government simply failed to inform a party about an available remedy.) *Cf. City of West Covina v. Perkins, 525 U.S. 234, 241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999)* (holding no due-process deprivation when city notified citizen that it seized his property without telling him what he must do to recover the property); *City of Dallas v. VSC, LLC, 347 S.W.3d 231, 238–39 (Tex. 2011) (same)*.

A two-part test governs a due-process claim: this court must determine whether petitioners "(1) ha[ve] a liberty or property interest that is entitled to procedural due process protection; and (2) if so, we must determine what process is due." Included among the protected liberty interests is the right "to engage in any of the common occupations of life." (quoting *Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)*. Due process must also be satisfied "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Univ. of Tex. Med. Sch. at Hous. v. Than, 901 S.W.2d 926, 929 (Tex. 1995) at 930*.

"Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *(citing Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)*; *Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)* ). The Supreme Court measures what process is due under a "flexible standard"

Copy from re:SearchTX

that depends on "the practical requirements of the circumstances." This standard includes three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. (citing *Mathews, 424 U.S. at 335, 96 S.Ct. 893*). In the context of an administrative hearing, "[t]he ultimate test of due process of law . is the presence or absence of rudiments of fair play long known to our law." *Martinez v. Tex. State Bd. of Med. Exam'rs, 476 S.W.2d 400, 405 (Tex. Civ. App.—San Antonio 1972, writ ref'd n.r.e.).*

Posting a whistleblower sign in the workplace would have imposed a microscopic fiscal and administrative burden on the defendants, but doing so would have minimized their ability to engage in corrupt malfeasance by informing their workers of their rights.

a. DIR refused or failed to inform the plaintiff of his whistleblower rights

A state entity shall inform its employees of their rights under this chapter by posting a sign in a prominent location in the workplace. Tex. Gov't Code § 554.009(a). The following constructions apply unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute: "Shall" imposes a duty; "May not" imposes a prohibition and is synonymous with "shall not." Tex. Gov't Code §§ 311.016(2), (5).

DIR willfully refused or negligently failed to perform a mandatory duty imposed on it by state law requiring it to inform its employees, including the plaintiff, of the rights of whistleblowers as set forth in § 554.009(a); this deprived the plaintiff of his due process right to seek remedy under § 554.003.

Copy from re:SearchTX

b.  DIR claimed there was no appeal procedure and ignored its invocation

A public employee must initiate action under the grievance or appeal procedures of the employing state entity relating to termination of employment before suing under this chapter. Tex. Gov't Code § 554.006(a).

While being terminated, the plaintiff informed the defendants that he was being retaliated against for reporting misconduct and requested to appeal, but was told that there was "no appeal procedure." The plaintiff's repeated invocations of appeal procedures after the retaliatory termination fell upon deaf ears and blind eyes. The defendants' mistaken understanding of law and resultant misrepresentation of the law and appeal procedures erroneously deprived the plaintiff of due process; it also illuminates the double-standard used to obtain its plea to the jurisdiction on the dubious claim that the plaintiff did not follow proper reporting procedures.

c.  The prescribed content of the Whistleblower Poster is deficient

The attorney general shall prescribe the design and content of the sign required by this section. Tex. Gov't Code § 554.009(b).

The "Whistleblower Poster" published on the Attorney General website states: "The Texas Whistleblower Act protects public employees who make good faith reports of violations of law by their employer to an appropriate law enforcement authority. An employer may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who makes a report under the Act."

The text of the poster substitutes "good faith believes is authorized to" with "make good faith reports" and omits "another public employee" as a subject of a report of a violation and omits the legislature's definition of "law enforcement authority" in § 554.002(b) ("regulate under, enforce, investigate, or prosecute.") The Attorney general, in the content it prescribed in its poster,

Copy from re:SearchTX

demonstrates a tenuous grasp of the Act, or alternatively, is actively attempting to misinform public employees of the Act in an attempt to discourage reports of government malfeasance by misrepresenting the Act.

The notice does not reasonably convey the required information and is sufficiently misleading that it violates the due process rights of all public employees.

IV.     Doctrines of Stare Decisis, Res Judicata, and Collateral Estoppel do not apply

Much difficulty is associated with the doctrine of res judicata is due to the confusion of several related theories. Broadly speaking, res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments. *Puga v. Donna Fruit Co., 634 S.W.2d 677, 679 (Tex.1982)*. Within this general doctrine, there are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel). Res judicata, or claims preclusion, prevents the re-litigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Gracia v. RC Cola-7-Up Bottling Co., 667 S.W.2d 517, 519 (Tex.1984)*.

Res judicata prevents the re-litigation of a finally-adjudicated claim and related matters that should have been litigated in a prior suit. *Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex.1992)*. Texas follows the transactional approach to res judicata. *Id. at 630*. This approach mandates that a defendant bring as a counterclaim any claim arising out of the transaction or occurrence that is the subject matter of the opposing party's suit. *Id.* But when the parties are co-parties rather than opposing parties, the compulsory counterclaim rule and res judicata only act as a bar to a co-party's claim in a subsequent action if the co-parties had "issues drawn between them" in the first action. *Getty Oil Co. v. Ins. Co. of N. Am., 845 S.W.2d 794, 800 (Tex.1992)*.

Copy from re:SearchTX

Issue preclusion, or collateral estoppel, prevents re-litigation of particular issues already resolved in a prior suit. *Bonniwell, 663 \*629 S.W.2d at 818. Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816, 818 (Tex.1984).*

A claim of res judicata under Texas law consists of three elements: (1) a final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second suit based on claims actually litigated in the first suit or claims which should have been litigated in the first suit. *Nu-Way Energy Corp. v. Delp, 205 S.W.3d 667, 675-76 (Tex. App.—Waco 2006, pet. denied) (citing State & County Mut. Fire Ins. Co. v. Miller, 52 S.W.3d 693, 696 (Tex. 2001) (per curiam)); Nelson v. Williams, 135 S.W.3d 202, 206 (Tex. App.—Waco 2004, pet. denied); Steger v. Muenster Drilling Co., Inc., 134 S.W.3d 359, 368 (Tex. App.—Fort Worth 2003, pet. denied).*

Under federal law, the doctrine of res judicata applies if: (1) the parties in both suits are identical; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there is a final judgment on the merits; and (4) the same cause of action is involved in both suits. *Id.* A dismissal with prejudice in a federal suit is considered a judgment on the merits for res judicata purposes. *Epps v. Fowler, 351 S.W.3d 862, 868–69 (Tex. 2011) (citing Dean v. Riser, 240 F.3d 505, 509 (5th Cir. 2001)).* Even if these four elements are present however, res judicata will not bar a subsequent action unless the plaintiff could and should have brought its . . . claims in the former proceedings. *Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex.1992); Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.), 200 F.3d 382, 386 (5th Cir. 2000) at 388; also, SMI/USA, Inc. v. Profile Techs., Inc., 38 S.W.3d 205, 211 (Tex. App. Waco 2001, no pet.).*

Claim preclusion prevents splitting a cause of action. *Jeanes v. Henderson, 688 S.W.2d 100, 103 (Tex.1985).* The policies behind the doctrine reflect the need to bring all litigation to an end,

Copy from re:SearchTX

prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Zollie Steakley & Weldon U. Howell, Jr., Ruminations on Res Judicata, 28 Sw.L.J. 355, 358-59 (1974).*

The question that has given courts the most difficulty is determining what claims should have been litigated in the prior suit. Early on, the Supreme Court held that res judicata "is not only final as to the matter actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have decided." *Foster v. Wells, 4 Tex. 101,104 (1849).* The Supreme court has never repudiated this definition of claim preclusion, and it appears in some form in most definitions of res judicata. See, e.g*., Jeanes v. Henderson, 688 S.W.2d 100, 103 (Tex.1985)* (res judicata bars not only what was actually litigated but also claims that could have been litigated in the original cause of action). If taken literally, this definition of the rule would require that all disputes existing between parties be joined, regardless of whether the disputes have anything in common. The Supreme Court has resorted to a wide variety of theories and tests to give res judicata a more restrictive application. See generally  *William V. Dorsaneo III, Texas Litigation Guide § 131.06[4][b][ii] (1991); Steakley, 28 Sw.L.J. 355.*

According to Rule 41(b) of the Federal Rules of Civil Procedure, the following are not claim preclusive and are not considered an adjudication "on the merits": (1) a lack of jurisdiction; (2) improper venue; (3) failure to join a party when required to do so under Federal Rule of Civil Procedure 19 (aka " Mandatory Joinder "); (4) voluntary dismissals.

Pleas to the jurisdiction are limited to challenges to the court's authority, not merits-based defenses like res judicata. *Texas Dep't of Transp. v. Jones, 8 S.W.3d 636 (Tex. 1999)*. Res judicata is generally not a jurisdictional issue unless it involves a court lacking authority to hear the case (e.g., exclusive jurisdiction of another tribunal). The Texas Supreme Court held that a prior

Copy from re:SearchTX

dismissal for lack of jurisdiction (e.g., due to immunity) does not trigger res judicata for claim preclusion because it is not a judgment on the merits. *Harris Cty. v. Sykes, 136 S.W.3d 635 (Tex. 2004).*

The Supreme Court held that res judicata did not deprive the trial court of jurisdiction but was instead an affirmative defense to be raised via summary judgment or trial, not a plea to the jurisdiction. The plea was denied because res judicata did not negate the court's subject-matter jurisdiction. *Engelman Irrigation Dist. v. Shields Bros., Inc., 960 S.W.2d 343 (Tex. App.—Corpus Christi 1997, pet. denied).*

a.   DIR failed to give notice on their Amended Plea to the Jurisdiction

It is well-established that "[t]he failure to give adequate notice violates the most rudimentary demands of due process of law." *Mosser v. Plano Three Venture, 893 S.W.2d 8, 12 (Tex. App.— Dallas 1994, no writ)*; *Mullane, 339 U.S. at 314, 70 S.Ct. 652* ("The notice must be of such nature as reasonably to convey the required information."). Thus, several federal courts hold that a "sufficiently misleading" notice may violate a claimant's right to due process. *Gonzalez v. Sullivan, 914 F.2d 1197, 1203 (9th Cir. 1990)*; see also *Brody v. Vill. of Port Chester, 434 F.3d 121, 129–30 (2d Cir. 2005)*; *U.S. v. Henderson, 707 F.2d 853, 856–57 (5th Cir. 1983)*; *Brandt v. Hickel, 427 F.2d 53, 56 (9th Cir. 1970)*. Because of the similarities between the due-process language of the Fourteenth Amendment and the Texas Constitution, the Supreme Court considers federal due-process jurisprudence "to be persuasive authority in applying our due course of law guarantee." *Than, 901 S.W.2d at 929*.

b.   The plaintiff filed this case prior to the dismissal of the other case

This cause, incorporating the whistleblower retaliation complaint along with other causes of action culminating in the plaintiff's decision to report the violation of a law to his supervisor,

Copy from re:SearchTX

was filed on February 24th, 2025. The order dismissing the whistleblower retaliation complaint for lack of jurisdiction was entered on February 28th, 2025.

c.  The trial court ignored the plaintiff's motion to dismiss for want of prosecution

The plaintiff filed a motion to dismiss for want of prosecution in the whistleblower retaliation complaint on  February 5th, 2025, well before the case was dismissed for lack of jurisdiction. The trial court deprived the plaintiff of due process  by ignoring his motion for voluntary dismissal and granting the defendant's plea to the jurisdiction.

d.  The trial court erred in dismissing the other case with prejudice

Trial courts are not required to dismiss whistleblower retaliation complaints for lack of jurisdiction "with prejudice.  *Newth V. Adjutant General's Department, 883 S.W.2d 356*.

The trial court did not enter findings of fact or law after the dismissal of the whistleblower retaliation complaint. Therefore, the trial court did not rule on the merits of the whistleblower retaliation complaint. The defendant may not bring a res judicata defense in a plea to the jurisdiction and as such, the plaintiff is entitled to injunctive relief.

V.      Plaintiff is likely to prevail on the merits of whistleblower retaliation

a.  The plaintiff's report of a violation of law was a protected disclosure

i.    DIR's acts and omissions are official acts

Governmental agencies act by way of the people who run or are employed by the agencies. "An employee's actions taken pursuant to his duties and authorized by state law are considered actions taken by the State," and courts have held that for whistleblower purposes, the acts of an appointed officer that fall within the authority of his office, even if he misuses that authority, "should be construed as acts of the employing governmental entity." *Housing Auth. of City of El*

Copy from re:SearchTX

*Paso v. Rangel, 131 S.W.3d 542, 547-48 (Tex. App.—El Paso 2004, pet. granted by agr., judgm't vacated w.r.m.)*; *Familias Unidas v. Briscoe, 619 F.2d 391, 403 (5th Cir. 1980)* ("Actions for damages against a party in his official capacity are, in essence, actions against the governmental entity of which the officer is an agent."); *Camacho v. Samaniego, 954 S.W.2d 811, 818 (Tex. App.—El Paso 1997, writ denied)* ("A county employee's actions taken pursuant to his duties and authorized by State law are considered actions taken by the State of Texas."); *Tarrant County v. Bivins, 936 S.W.2d 419, 422 (Tex. App.—Fort Worth 1996, no writ)* ("Sheriff Williams is a part of the County's government when he is acting in his official capacity."); *Wichita County v. Hart, 892 S.W.2d 912, 929 (Tex. App.—Austin 1994)* ("We hold that the sheriff is a part of the County's government when he is acting in his official capacity, and consequently the County is liable for his misdeeds."), rev'd on other grounds, *917 S.W.2d 779 (Tex. 1996); cf. City of Cockrell Hill v. Johnson, 48 S.W.3d 887, 896-97 (Tex. App.—Fort Worth 2001, pet. denied)* (because alderman's alleged illegal conduct was not undertaken in his official capacity, "he was not part of the City's government when he committed the alleged legal violations," and thus Act did not apply). The refusal or failure to post the whistleblower sign, to investigate the plaintiffs complaint, the coworker's criminal copyright infringement, the retaliatory termination, and the refusal to initiate appeal/grievance procedures are all official acts of DIR.

ii. Plaintiff reported a violation of a law by another public employee

The plaintiff reported criminal copyright infringement by a public employee of DIR; that action was an official act by the department itself, meaning that the plaintiff reported violations of the law by his employing governmental entity and may therefore avail himself of the protections of the Act. *Texas Health & Hum. Servs. Comm'n v. Pope, No. 03-19-00368-CV, 2020 WL 6750565, at *7 (Tex. App.—Austin Nov. 18, 2020, pet. filed) (mem. op.)* (whistleblowers fell within Act

Copy from re:SearchTX

because they reported that company with which HHSC had contracted was violating legal requirements for transporting minors to medical appointments). The Supreme court clarified that Act may be "aimed at ferreting out government mismanagement to protect the public" because of concerns "that employees who disclose mismanagement deserve legal protection." *City of Fort Worth v. Pridgen, 653 S.W.3d 176, 182, 184 (Tex. 2022) (internal quotation marks omitted)*.

    iii.    The violation had occurred and was not speculative

The plaintiff has sufficiently alleged and substantiated facts that he had reported—based on his good-faith beliefs, observations, and understanding of the law—violations of the law that had occurred and were continuing to occur, not merely speculative, possible future violations of the law. *McElyea, 239 S.W.3d at 850* (Act does not require employee to "identify a specific law" or "establish an actual violation of law"); *Connally v. Dallas Indep. Sch. Dist., 506 S.W.3d 767, 788 (Tex. App.—El Paso 2016, no pet.)* ("in most cases involving a charge of Tampering with a Governmental Record, there will be no 'direct evidence' of a defendant's mental state," meaning that proof of culpable mental state almost invariably depends on circumstantial evidence; "knowledge and intent may be inferred from the facts surrounding a defendant's presentation of falsified information on a document submitted for filing as a governmental record"; and report is sufficient under Act if report can support inference that subject of report was "acting with the requisite knowledge and intent when they presented allegedly falsified documents."

b.  DIR is not entitled to sovereign immunity for whistleblower retaliation

A public employee who is subjected to adverse personnel action in violation of the Act may sue the employing governmental entity, the sovereign immunity of which is "waived and abolished to the extent of liability for the relief allowed" under the Act, § 554.0035, and may seek injunctive relief, actual damages, attorney's fees, reinstatement, and lost compensation, § 554.003(a), (b).

Copy from re:SearchTX

Sovereign immunity protects the State and its political subdivisions from being sued unless the State has waived immunity or otherwise consented. *Mission Consol. Indep. Sch. Dist. v. Garcia, 253 S.W.3d 653, 655 (Tex. 2008)*; *Reata Constr. Corp. v. City of Dallas, 197 S.W.3d 371, 374-75 (Tex. 2006)*. The general rule is that "a statutory waiver of sovereign immunity must be construed narrowly," and the statutory language waiving immunity must be clear and unambiguous. *In re Smith, 333 S.W.3d 582, 587 (Tex. 2011) (orig. proceeding)*.

c.  The Whistleblower Act is a remedial statute and thus should be construed liberally

However, "[i]f a statute is curative or remedial in its nature the rule is generally applied that it be given the most comprehensive and liberal construction possible." *Burch v. City of San Antonio, 518 S.W.2d 540, 544 (Tex. 1975)*; *Traxler v. Entergy Gulf States, Inc., 376 S.W.3d 742, 744 -45 (Tex. 2012)* (remedial and curative statute should generally be construed so it is "given the most comprehensive and liberal construction possible" and "certainly should not be given a narrow, technical construction" (quoting *City of Mason v. West Tex. Utils. Co., 237 S.W.2d 273, 280 (Tex. 1951)*)).

The 3rd and other appellate courts have observed that the Act is a remedial statute and thus should be construed liberally. *Texas Dep't of Crim. Just. v. McElyea, 239 S.W.3d 842, 849 (Tex. App.—Austin 2007, pet. denied)*; *University of Houston v. Barth, 178 S.W.3d 157, 162 (Tex. App.—Houston [1st Dist.] 2005, no pet.)*. Therefore, DIR is not entitled to sovereign immunity for its whistleblower retaliation in the instant case.

d.  Sovereign immunity does not bar suits against a State official's unlawful acts

The Texas Supreme Court observed that the purpose of sovereign immunity is to "protect[] the State from lawsuits for money damages," *City of El Paso v. Heinrich, 284 S.W.3d 366, 368 (Tex. 2009)*. The Court acknowledged that "an action to determine or protect a private party's rights

Copy from re:SearchTX

against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars*." Id. (quoting Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 405 (Tex. 1997), superseded by statute, Act of May 30, 1999, 76th Leg., R.S., ch. 1352, § 9, 1999 Tex. Gen. Laws 4578, 4583-87, as recognized in Gen. Servs. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591 (Tex. 2001)) (internal quotation marks omitted).* Assessing "the intersection of these two rules," the court concluded that, "while governmental immunity generally bars suits for retrospective monetary relief, it does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions."

However, the court subsequently explained that, while the Heinrich decision held "a claim for prospective declaratory and injunctive relief against government actors in their official capacities but acting [ultra vires] is not barred by immunity even if the requested relief compels the governmental entity to make monetary payments," the rule of sovereign immunity still "bars suits against governmental entities for retrospective monetary relief."

The Supreme Court has stated that "[t]he constitutional privilege of a State to assert its sovereign immunity in its own courts does not confer upon the State a concomitant right to disregard the Constitution or valid federal law." *Alden v. Maine, 527 U.S. 706, 753, 754-55 (1999).* Recognizing that Congress relied on state courts to vindicate essential rights arising under the Constitution and federal laws, the Court previously noted: "With the growing awareness that this reliance had been misplaced, however, Congress recognized the need for original federal court jurisdiction as a means to provide at least indirect federal control over the unconstitutional actions of state officials." *Butz v. Economou, 438 U.S. 478, 502 n.30 (1978) (quoting District of Columbia v. Carter, 409 U.S. 418, 428 (1973)).*

Copy from re:SearchTX

DIR's refusal to inform the plaintiff of his whistleblower rights by posting a sign in the workplace, refusal to investigate his complaint, and initiate appeal and grievance procedures are illegal acts; therefore, the defendants cannot claim immunity to suit for its violations of state law.

e. A constitutional challenge to a state official's action is not a suit against the State

In *Ex parte Young*, the Supreme Court decided that a suit challenging the constitutionality of a state official's action is not one against the state. *Ex parte Young, 209 U.S. 123 (1908).* Further, if a state official acts contrary to laws of the state, the Court acknowledged the official should not have immunity because a sovereign could not and would not authorize its officers to violate its own laws. *Id. at 159-60.*

Thus, a suit against a state official seeking redress for conduct not permitted by state law is a suit against the officer, not the sovereign. *Id. at 160.* The Court theorized that an unconstitutional enactment is void and does not impart immunity to a state official because the state cannot authorize the action; therefore, the officer is "stripped of his official or representative character and is subjected ... to the consequences of his [official] conduct." *Id.*

"Similarly, when [a] state officer violates a state statute, the sovereign has ... [not] erected [a] shield against liability." See id. (explaining that the state has "no power to impart . . . any immunity" to the state official due to the state official's unconstitutional conduct). *Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 158 (1984) (Stevens, J., dissenting) (emphasis omitted).* The Court permitted an exception to Eleventh Amendment immunity so that a private party could bring suit against a state official in that officer's official capacity, but only for injunctive relief. See *Young, 201 U.S. at 163* (establishing an exception to the immunity principle for parties seeking injunctive relief).

Copy from re:SearchTX

f.  No Permission required to sue the State for a state official's violations of state law

"A private litigant in Texas is not required to obtain legislative permission to sue the State for a state official's violations of state law." *Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 404 (Tex. 1997) (citing Dir. of the Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex., 600 S.W.2d 264, 265-66 (Tex. 1980)), superseded by statute, Act of May 30,1999,76th Leg., R.S., ch. 1352, § 9,1999 Tex. Gen. Laws 4578, 4583-87, as recognized hn Gen. Servs. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591 (Tex. 2001).* "A state official's illegal or unauthorized actions are not acts of the State." *Id.*

The Texas Supreme Court has ruled that "an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars." *Id.; cf Tex. Highway Comm'n v. Tex. Ass'n of Steel Imps., Inc., 372 S.W.2d 525, 529-31 (Tex. 1963)* (concluding that a suit challenging a Texas Highway Commission's Minute Order was not against the state because the state agency was acting without statutory authority).

Currently, Congress has the ability to abrogate Eleventh Amendment immunity through its power to enforce the Fourteenth Amendment. See *Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976)* (recognizing the congressional power to allow private suits against states for purposes of enforcing the Fourteenth Amendment); see also *Seminole Tribe, 517 U.S. at 72* (acknowledging the congressional power established in Fitzpatrick).

Section Five of the Fourteenth Amendment empowers Congress to enforce the substantive provisions of the Fourteenth Amendment through appropriate legislation. More specifically, Section Five grants Congress the power to legislatively enforce the prohibitions in Section One of the Fourteenth Amendment. *(*Thus, the states must meet certain procedural requirements before it

Copy from re:SearchTX

can deprive a person of life, liberty, or property. *See Duncan v. Louisiana, 391 U.S. 145, 164 (1968)* (outlining the doctrine of "Selective Incorporation" and identifying the following incorporated rights: the right to trial by jury, the right against self-incrimination, "the right to counsel, the right to compulsory process for witnesses, the right to confront witnesses, the right to a speedy and public trial, and the right to be free from unreasonable searches and seizures*").*

The Court noted that the Due Process Clause requires states to afford civil litigants a "meaningful opportunity to be heard" by removing obstacles to their full participation in judicial proceedings. *Boddie v. Connecticut, 401 U.S. 371 (1971)* id. at 379 (holding that a state may not deny a citizen access to the courts without infringing on the "Due Process Clause of the Fourteenth Amendment").

g.  The trial court wrongly pursued a narrow construction of the Act

In consideration of this case, this court cannot ignore the purpose of the Act as "a broad remedial measure intended to encourage disclosure of governmental malfeasance and corruption," *City of Waco v. Lopez, 259 S.W.3d 147, 154 (Tex. 2008)*, or the "consequences of a particular construction," Tex. Gov't Code § 311.023(5). This court should also consider the context in which the Act was enacted and the State's fundamental policies of governmental transparency and accountability.

The 3rd Court of Appeals refused to analogize the Act's waiver of immunity to the more limited waiver provided by the Texas Tort Claims Act. *Texas Bd. of Pardons & Paroles v. Feinblatt, 82 S.W.3d 513, 521 (Tex. App.—Austin 2002, pet. denied)* (comparing Texas Whistleblower Act with Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code §§ 101.001-.109). They noted that the Act "contains a broad waiver of immunity expressed in expansive language" while the Tort Claims Act provides a waiver that is "is limited in scope." They also observed that the two statutory

Copy from re:SearchTX

schemes serve "different purposes" and are "guided by different policy concerns," concluding that "[i]t is reasonable to expect that the legislature intended a broad waiver of immunity for *whistleblower claims to accomplish" the Act's "important policies."*

h.   Okoli is flawed and cannot be applied to the facts of this case

In their Amended Plea to the Jurisdiction, the defendants stated: "Plaintiff did not report the alleged violation of law to anyone with "authority to investigate or prosecute criminal conduct or otherwise regulate conduct outside the agency involved." *Okoli, 440 S.W.3d at 618*. … DIR is not a law enforcement authority and does not have prosecutorial powers in any sense. As a result, Plaintiff did not trigger the protections of the Whistleblower Act."

First, the Supreme Court stated in *Okoli: "*According to Okoli, TDHS trained its employees in how to report illegal acts by other employees. Okoli asserts that TDHS instructed him to report such acts first to an immediate supervisor, and then up the chain of command if the first supervisor's response was unsatisfactory." DIR has confessed to refusing or failing to inform its employees of their whistleblower rights to refusing or failing to train them on how to report illegal acts of other DIR employees.

Second, the trial court misapplied *Okoli* to the facts of this case by mistakenly accepting the defendants' framing of § 554.002(b)(1) and (2) as a set of two criteria, either of which would satisfy the Act's requirements, when in reality, there is a total set of four evaluation criterion. Quoting the defendant's plea: "The Texas Supreme Court has held that "[t]o satisfy the Act's requirements, a report must be made to (1) an individual person who possesses the law-enforcement powers specified under the Act, or (2) someone who, like a police-intake clerk, works for a governmental arm specifically charged with exercising such powers." *Texas Dep't of Hum. Servs. v. Okoli, 440 S.W.3d 611, 617 (Tex. 2014)*." As the Supreme Court has explained, the "use

Copy from re:SearchTX

of the disjunctive conjunction 'or' between . . . two phrases . . . signifies a separation between two distinct ideas." *Spradlin v. Jim Walter Homes, Inc., 34 S.W.3d 578, 581 (Tex. 2000)*. After examination of the disjunctive conjunctions, there are four definitions of "law enforcement agency" in the Act:

(1) regulate under the law alleged to be violated in the report
(2) enforce the law alleged to be violated in the report
(3) investigate violation of criminal law
(4) prosecute a violation of criminal law

Notably, criteria (1)-(2) do not specify the type of law alleged to be violated, whereas (3)-(4) qualify the type as *criminal law.* While criteria (2)-(4) fit neatly under both of *Okoli's* requirements for reports of violations of *criminal law* made internally, "regulate under the law alleged to be violated in the report" does not because it not explicitly state "criminal*"* (which is also true for (3)).

Thirdly, *Okoli's* phrase "someone who, like a police-intake clerk, works for a governmental arm specifically charged with exercising such powers" unduly restricts the Act's purpose "to encourage disclosure of governmental malfeasance and corruption." Specifically, the phrase "like a police-intake clerk" unconstitutionally narrows the scope of "malfeasance and corruption" to purely criminal acts; due process violations are clear examples of "government malfeasance" but not necessarily explicit criminal acts, which is a determination that would made on a case-by-case basis.

The protocol for reporting a judge's due process violation is to file a sworn complaint with the State Commission on Judicial Conduct which is "a governmental arm specifically charged with exercising such powers" of investigating, regulating, and enforcing violations of due process by judges the Commission "supervises." The commission does not have a "police-intake clerk", but a judicial officer found to have been retaliated against for reporting a judge to the commission for

Copy from re:SearchTX

violations of the constitution would not "trigger the protections of the Whistleblower Act" under *Okoli*.

Fourth, the *Okoli* precedent is flawed because the holding that "internal agency reports to a supervisor were not whistleblower reports to an appropriate law enforcement authority if the agency itself generally lacked authority to investigate or prosecute criminal conduct or otherwise regulate conduct outside the agency involved" because it omits the term "enforce" from the statutory definition of a "law enforcement authority" in the Act and the plaintiff did not only report the violation to his supervisor.

The errors of framing, omission, and substitution in *Okoli* and the defendants' due process errors, and mistakes and misrepresentations of law and fact are evident in the rest of the defendant's claims: "DIR, as an agency, has no law enforcement duties or powers" and that "DIR is not a law enforcement authority and does not have prosecutorial powers in any sense." While it is true that DIR does not have "arrest" or "prosecutorial powers", it a rulemaking "regulatory agency" that has been granted statutory authority to "investigate," "enforce", and "regulate outside conduct."

The defendants make the fatal miscalculation to mistakenly rely on DIR's lack of authority to "prosecute criminal conduct", which is a concession, not a defense. DIR's subsequent refusal to examine its own authority to "otherwise regulate [outside] conduct" is an extension of its mea culpa.

The Supreme Court first interpreted what it means to be an "appropriate law[-]enforcement authority" under the amended statute in *Texas Department of Transportation v. Needham, 82 S.W.3d 314 (Tex. 2002)*. To satisfy this requirement, a plaintiff seeking the Act's protection must prove that the report was made to an appropriate law-enforcement authority, or that the employee had a good-faith belief that it was. *Id. at 320*. An employee's belief is in good faith if: (1) the

Copy from re:SearchTX

employee believed the governmental entity qualified, and (2) the employee's belief was reasonable in light of the employee's training and experience.

While the first element is subjective, the second element is an objective one: the reporting employee only receives Whistleblower Act protection if a reasonably prudent employee in similar circumstances would have believed the governmental entity to which he reported a violation of law was an appropriate law-enforcement authority. *Needham, 82 S.W.3d 314 (Tex. 2002) Id. at 321*. Whether an employee has a good-faith belief that the entity is an appropriate law- enforcement authority "turns on more than an employee's personal belief, however strongly felt or sincerely held." *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello, 398 S.W.3d 680, 683 (Tex. 2013) (emphasis in original)*.

The trial court cannot apply *Okoli* on the premise that this case is also analogous to *Lueck* and *Needham* because those employees reported violations of law to supervisors within the department and that those supervisors lacked appropriate law-enforcement authority to regulate or enforce the law violated and therefore were insufficient to trigger the Act's protections. *Lueck, 290 S.W.3d at 885–86* (holding the head of a division within TxDOT could not regulate or enforce federal traffic data-collection regulations); *Needham, 82 S.W.3d at 320–21* (holding TxDOT could only internally discipline an employee who violated drunk-driving laws). On the contrary, DIR does have the authority to regulate and enforce federal copyright laws, by terminating a contract in which a party attempts to defraud another and barring the party from entering into future contracts.

Importantly, in both *Needham* and *Lueck*, the whistleblowers had been made aware that their supervisors lacked law-enforcement authority. On the other hand, the DIR supervisor attempted to dismiss and misconstrue the criminal nature of the complaint, indicating complicity

Copy from re:SearchTX

in the criminal act. Unlike the employees in *Needham* and *Lueck*, the plaintiff did report to an appropriate law-enforcement authority, nor would any reasonable jury conclude that he did not have had a good-faith belief that he did so.

In *Okoli*, the Supreme court declined, as it did in *Gentilello*, to say that no internal report could ever merit protection under the Act. See *398 S.W.3d at 686*. In *Gentilello*, it posited this hypothetical:

> "We do not hold that a Whistleblower Act report can never be made internally. A police department employee could retain the protections of the Whistleblower Act if she reported that her partner is dealing narcotics to her supervisor in the narcotics or internal affairs division. In such a situation, the employee works for an entity with authority to investigate violations of drug laws committed by the citizenry at large. UTSW concedes in its briefing that "some Whistleblower Act reports may be made internally—for instance, a report of a violation of the Texas Penal Code to a supervisor who is also a policeman and, as such, is authorized to investigate violations of criminal law." But here, as in *Needham* and *Lueck*, the supervisor lacked any such power to enforce the law allegedly violated or to investigate or prosecute criminal violations against third parties generally."

The defendant's amended plea to the jurisdiction goes on to state: "Moreover, a report to his DIR manager is insufficient, because a governmental entity is obligated to comply with laws does not mean they are a law enforcement authority, and Plaintiff's manager is (at most) "a law-compliance authority, but he was not a law-enforcement authority" sufficient to meet the requirements of the Whistleblower Act, and dismissal based on sovereign immunity is appropriate."

This analogy is invalid because an "Information Technology Operations Manager" of the "Department of Information Resources" clearly has the authority to regulate the criminal copyright infringement of a software license owned by DIR perpetrated by a DIR employee. Had the plaintiff reported the coworker for copyright infringement of software not owned and licensed by DIR, then perhaps this defense would be valid. It should be alarming to suggest that a manager in a state

Copy from re:SearchTX

agency has no authority to manage the official conduct and misconduct of one of their own employees; this is a paradoxical defense in light of the termination of the plaintiff for unspecified alleged "misconduct." The defendants claim knowledge of the criminal copyright infringement prior to the retaliatory termination. The defendants do not deny or contest that the report of his coworker's criminal copyright infringement was the cause of his termination. No reasonable jury would find that the plaintiff did not have a good faith belief that his manager could not regulate his coworker's copyright infringement of software licensed to DIR.

i.  The trial court disregarded the unlawful employment practice claim

A public employee who sues under this chapter has the burden of proof, except that if the termination of a public employee occurs not later than the 90th day after the date on which the employee reports a violation of law, the termination, is presumed, subject to rebuttal, to be because the employee made the report. Tex. Gov't Code § 554.004(a). An employer commits an unlawful employment practice if the employer retaliates against a person who files a complaint. Tex. Gov't Code § 21.055.

The defendants begin their amended plea with "Plaintiff Shamar Bradley ("Plaintiff"), proceeding pro se, erroneously claims that he was discharged by DIR "because I reported a colleague for sleeping at work." Pl.'s Amd. Petition at 13. Weeks later, Plaintiff apparently changed his mind, theorizing that he was terminated in violation of whistleblower protection statutes. Pl.'s Amd. Petition at 14. Plaintiff observed what he believed to be "mistakenly using" licensed software and reported it to his superiors." The defendant omits that the report was also made to his coworkers. The whistleblower retaliation claim is in addition to, not instead of, the unlawful employment practices claim, and the defendant erroneously surmises. It is not necessarily illegal

Copy from re:SearchTX

to sleep at work if your job is fake laptop job in an airconditioned cubicle and not operating heavy machinery.

The plaintiff reported the criminal copyright infringement prior to complaining about the coworker sleeping at work. Due to the fact that no corrective action was taken in between the report and the complaint, it is reasonable to assume that both were contributing factors in his discharge. The defendants refused to explain the plaintiff's alleged "misconduct" in the termination letter or while terminating him and did not raise the affirmative defense that they would have terminated the plaintiff based solely on information, observation, or evidence that was not related to the fact that the plaintiff made a protected report of a violation of law as set forth in Tex. Gov't Code § 554.004(b).

The defendants are barred from alleging that they would have terminated the plaintiff absent his whistleblower activity by the doctrine of res judicate; he was terminated presumably so the defendant could seize the plaintiff's work computer to destroy (tamper) with the evidence.

j.   "Regulate Under the Law" Is Unconstitutionally Vague

"Law enforcement agency" means an agency of the state or an agency of a political subdivision of the state authorized by law to employ peace officers. Tex. Code Crim. Proc. § 59.01(5). When enacting the Act, the legislature could have but chose not to reference § 59.01(5), presumably intentionally. *In re Bridgestone Ams. Tire Operations, LLC, 459 S.W.3d 565, 572 (Tex. 2015).*

None of the definitions of "peace officer", "special investigator" in Tex. Code Crim. Proc. §§ 2A.001,  .002 and other officers in §§ .003-.008 explicitly grant a peace officer the ability to "regulate under the law", and no statute defines "regulate" or "regulate under the law." "[I]f a

Copy from re:SearchTX

statute defines a term, a court is bound to construe that term by its statutory definition only." *Tex. Dep't. of Transp v. Needham, 82 S.W.3d. 314, 318 (Tex. 2002) (citing Tex. Gov't Code § 311.011(b))*.

VI.     DIR has investigative, regulatory, and enforcement powers

When answering a question of statutory interpretation, the Supreme Court always looks to "the plain meaning of the words chosen" by the Legislature. *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co., 642 S.W.3d 551, 557 (Tex. 2022)*. When those words unambiguously answer the question at hand, a court's inquiry is at an end, irrespective of anyone's assessment of the statute's overall intent or purpose. The Supreme Court presumes the Legislature enacts statutes with full knowledge of the existing law. *In re Bridgestone Ams. Tire Operations, LLC, 459 S.W.3d 565, 572 (Tex. 2015)*.

a.   DIR is a regulatory agency that makes rules governing other Agencies

"Regulatory agency" means any department that: is in the executive branch of state government; has authority that is not limited to a geographical portion of the state; was created by the Texas Constitution or a statute of this state; and has constitutional or statutory authority to engage in regulation. Tex. Gov't. Code § 572.002(8). The Department of Information Resources is a regulatory agency. § 572.054(g-1).

"Regulation" means rulemaking and "rule" means all or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or to describe the organization, procedure, or practice requirements of an agency. § 572.004(5). Rulemaking is a general power of DIR: The department may adopt rules as necessary to implement its responsibility. § 2054.052(a).

The board shall develop and implement a policy to encourage the use of negotiated rulemaking procedures under Chapter 2008 for the adoption of department rules. § 2054.037(a)(1).

Copy from re:SearchTX

The department shall develop rules or guidelines for its review of major information resources projects and project management practices for the projects. The department shall also assist the Legislative Budget Board in evaluating the determinations about comparative costs and benefits that state agencies make. § 2054.037(b).

DIR shall adopt rules:

1. To establish department standards regarding evaluation and approval of operating plans. § 2054.102(b)
2. To establish procedures and required formats for implementing posting of cost-efficiency suggestions and ideas on state agency websites. § 2054.1264(e)
3. To remove of data from data processing equipment. § 2054.130(b)
4. To prescribe the amount of the fee to be collected by a state agency that establishes a profile system for its license holders. § 2054.2606(d)
5. Regarding operation of the state electronic internet portal project of § 251. § 2054.262
6. Regarding the use of a standardized database for authentication of individual identities and signatures. § 2054.271(c)
7. Regarding statewide technology centers. § 2054.379
8. To provide training for and technical assistance to state agencies regarding compliance with ensuring access to electronic and information resources by individuals with disabilities, § 2054.452(b)
9. To implement compliance with federal standards and laws, including rules regarding: the development, procurement, maintenance, and use of electronic and information resources by state agencies to provide access to individuals with disabilities. § 2054.453(a)(1)
10. Regarding the development and monitoring of state agency Internet websites to provide access to individuals with disabilities. § 2054.458
11. Regarding emerging technologies related to the purpose of and the commercial availability of products, including computer software, to implement access to electronic and information resources by individuals with disabilities. § 2054.459
12. Necessary to implement the Texas volunteer incident response team. § 2054.52007
13. To implement additional provisions on contracting including conflict of interest in contracting. § 2054.552(c)
14. Necessary to develop or update the contract management guide. § 2054.554(c).

Criminal copyright infringement can occur in any of these scenarios.

b. DIR has investigatory authority

A board member must complete a training program. The training program must provide information to the person regarding the rules of the department, with an emphasis on the rules that relate to disciplinary and investigatory authority. Tex. Gov't Code §§ 2054.021(f), (g)(4).

Copy from re:SearchTX

The department shall keep a file about each written complaint filed with the department that the department has authority to resolve. The department shall provide to the person filing the complaint about the department's policies and procedures pertaining to complaint investigation and resolution. The department shall notify the person filing the complaint of the status of the complaint unless the notice would jeopardize an undercover investigation. Tex. Gov't Code §§ 2054.036(a), (b)(1)-(6).

c. DIR has enforcement authority

The executive director shall employ a chief data officer to ensure compliance with statutes and rules requiring agencies to uncover fraud and waste and verify compliance with applicable laws. Tex. Gov't Code §§ 2054.0286(a)(3), (a)(4).

The department shall develop policies related to operation of the project; approve or disapprove services to be provided by the project; operate and promote the project; oversee contract performance for the project; comply with department financial requirements; oversee money generated for the operation and expansion of the project. Tex. Gov't Code § 2054.259.

d. DIR otherwise regulates conduct outside the Agency

The department may acquire, apply for, secure, hold, and protect under the laws of the State of Texas, the United States, any state in the United States, or any nation a copyright for an original work of authorship fixed in any tangible medium of expression, now known or later developed, from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. § 2054.052(e)(1)(B). "Secure, hold, and protect a copyright", by definition, "regulate[s] conduct outside the agency [DIR] involved" by prohibiting the unauthorized use of the original work protected. A copyright holder cannot "secure, hold, or

Copy from re:SearchTX

"protect" a copyright it is not aware of any violations of the copyright; a violation of a copyright cannot be discovered without an investigatory or regulatory authority.

Each state agency shall publish a contract management handbook that establishes consistent contracting policies and practices to be followed by the agency and that is consistent with the comptroller's contract management guide. The agency's handbook may include standard contract provisions and formats for the agency to incorporate in contracts. Tex. Gov't Code § 2261.256(b).

Unlike DIR's refusal or failure to post a whistleblower right's sign, DIR complied with the mandate to "publish a contract management handbook", stating: "Contract Manager shall enforce contract terms and manage actions of parties as governed by the terms of the contract." *See* DIR Contract Management Handbook, Page 7.

The department shall coordinate with the quality assurance team to develop contracting standards for information resources technologies acquisition and purchased services and work with state agencies to ensure deployment of standardized contracts. Tex. Gov't Code § 2054.051(h). The department may include terms in a procurement contract entered into by the department, including a contract entered into under § 2157.068, that allow the contract to be used by another state agency, a political subdivision of this state, a governmental entity of another state, or an assistance organization as defined by § 2175.001. Tex. Gov't Code § 2054.0565(a). When contracting with a vendor to perform a task related to an electronic government project, the department shall consider methods of payments, including considering whether a percentage of money to be saved could be used to provide an incentive to the vendor to complete the project on time and under budget. Tex. Gov't Code § 2054.058.

Copy from re:SearchTX

The department shall provide additional oversight services, including risk management, quality assurance services, independent project monitoring, and project management, for major information resources projects described by § 2054.003(10)(C) and for other major information resources projects selected for oversight by the governor, lieutenant governor, or speaker of the house of representatives. A state agency with a project subject to oversight shall pay for oversight by the department and quality assurance team based on a funding model developed by the department. The department may contract with a vendor to provide the necessary oversight at the department's direction. Tex. Gov't Code § 2054.1181(a).

DIR manages IT contracts for state and local governments throughout the country. DIR Contract DIR-CPO-4893 states: "State agencies are prohibited from doing business with terrorists and terrorist organizations. Any Respondent listed in the prohibited Vendor list authorized by Executive Order #13224, "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism" As part of DIR's contract management, periodic checks will be performed to ensure Contract Holder remains in compliance with these Federal Requirements. DIR shall have the absolute right to terminate the Contract without recourse in the event Successful Respondent becomes listed on the Terrorism List."

DIR conducts "periodic checks" or, in other words" "investigates" technology vendors to "regulate under" Executive Order #13224. In the event a technology vendor is designated as a terrorist organization, DIR "enforces" Executive Order #13224 by "terminat[ing] the Contract without recourse." Therefore, DIR has "investigative," "regulatory," and "enforcement" powers of "criminal law" of other state agencies.

Tyler Technologies provides software to state and local governments to manage legal case files for courts and those that participate in legal proceedings. DIR manages the contracts between

Copy from re:SearchTX

Tyler Technologies and state and local governments in Texas and other states. Tyler Technologies contract number with DIR is DIR-CPO-5274, which allows governmental entities to purchase licenses for its Case Management Complete Platforms and Portfolio Suites at a 19.5% discount, per user.

The State of Utah entered into contract #AR3764 with Tyler Technologies on April 20th, 2022 with a pricing model for SaaS Case Management Development Platform based on increments of 5, 10, 25, 50, up to 200 concurrent users. The basic tier, Foundation, has an annual price of $47,823.39 for up to 5 concurrent users and $333,459.51 for up to 200 concurrent users. The premium tier, Advanced, has an annual price of $93,907.32 for up to 5 concurrent users and $829,785.13 for up to 200 concurrent users. Based on DIR's pricing model and Tyler Technologies' software licensing tiers, it is clear that DIR can "regulate under the law", "investigate", and "enforce" copyright infringement despite not having explicit "arrest or prosecutorial powers."

The claim that DIR "generally lacked authority to regulate conduct outside the agency" is clearly false. Contracts and those that manage them by definition "regulate conduct outside the agency involved"-a service for which DIR generates revenue for by charging a contract administration fee. The plaintiff's report of copyright infringement to his coworkers and supervisor satisfies § 554.002(b) because DIR can "regulate under and enforce the law alleged to be violated in the report" and "investigate a violation of criminal law."

However, had the plaintiff reported a violation of a different law by another governmental unit to his supervisor and coworkers such as unlawful restraint, official oppression, abuse of official capacity, removal of public information, refusing to provide public information, tampering with governmental record, tampering with physical evidence, obstruction and retaliation, tampering with witness, preventing execution of civil service, theft, perjury, aggravated perjury,

Copy from re:SearchTX

child endangerment, terroristic threats, aggravated kidnapping, sale of child, or trafficking of persons, then the plaintiff would not have triggered the protections of the whistleblower act.

Last but not least, if DIR seriously wants to take the public position that it will allow government criminals to defraud technology vendors by illegally duplicating licenses and using their software for improper and unauthorized purposes, then the people have no choice but to exercise their inalienable right to alter, reform or abolish DIR in such manner as they may think expedient. TEX. CONST. art. I § 2.

Copy from re:SearchTX

STATEMENT OF IMMEDIATE AND IRREPARABLE HARM

The defendants repeatedly refused to initiate an internal complaint investigation prior to the retaliatory termination of the plaintiff and subsequently repeatedly refused to initiate appeal and grievance procedures invoked by him. Despite having been made aware of the plaintiff's intention to pursue legal remedies, the defendants repetitiously demanded that he return his work computer containing evidence crucial to protect his reputation, but ironically failed to issue him an invoice for the equipment assigned to him or provide instructions to him to retrieve his personal property that was seized while he was being retaliated against.

In response to the defendant's whistleblower retaliation lawsuit, the defendants did not deny the plaintiff's reports of wrongdoing or the merits of his reports; they asserted that the reports were not made to an "appropriate authority". All of the defendants' pleadings contained knowingly false statements of fact and were frivolous and improper to delay the trial of the case and harass the plaintiff. Defendants refused to provide duly subpoenaed witnesses to establish facts necessary to establish the court's jurisdiction, causing the trial court to erroneously grant their amended plea to the jurisdiction.

After the plaintiff filed a petition for review in the Supreme court, he made an appearance at the defendant's public quarterly board meeting to retrieve his personal property. Shortly after he arrived at the meeting a police presence was requested. After the meeting concluded, the plaintiff confirmed with the officer that his presence was the cause of his appearance. He requested that the officer contact DIR to retrieve his personal property and the invoice for the DIR equipment; fortunately, he was able to retrieve his personal property, but unfortunately, he was advised by the State Police Officer that it is DIR's contention that the DIR property assigned to him was designated as stolen, which is false. The next day, he made a report to the defendants that it is a

Copy from re:SearchTX

criminal offense to knowingly make a false statement to a peace officer with intent to deceive by claiming a crime occurred, when in reality, it did not, as set forth in Tex. Pen. Code § 37.08. In response to the plaintiff's report of the defendant's criminal false report to a police officer, the defendant's threatened "any appropriate legal action" for failing to promptly return the equipment containing the evidence of his coworker's criminal activity that he was retaliated against for reporting.

The defendant's pattern of escalating criminal behavior targeting the plaintiff has caused him to fear for his safety and that the defendants will cause him to be falsely arrested for retaining his work computer during the adjudication of the petition for review so the defendants can seize it and destroy the evidence of their criminal activity contained therein. Furthermore, the facts of case D-1-GN-25-001373, which is a separate but related case, involving freedom of information act violations, false arrests, etc., where multiple government agencies pretended body worn camera video of the plaintiff did not exist and made false statements in official reports indicates that DIR may attempt a similar strategy to avoid liability in this case. The plaintiff has a protected liberty interest in his good name, honor, integrity, reputation, and employment which will be irreparably harmed without immediate intervention.

Copy from re:SearchTX

CONCLUSION AND PRAYER

This court has jurisdiction over the plaintiff's cognizable whistleblower retaliation complaint that is not barred by res judicata. The state and the defendants are not entitled to sovereign immunity for illegal acts perpetrated *inverso ordine*. The plaintiff likely to prevail on the merits of due process violations and whistleblower retaliation, and unlawful employment practices on the trial of this cause. The defendants did not raise the affirmative defense that the termination would have occurred absent his complaint of misconduct or report of a violation of a law. The plaintiff is entitled to injunctive relief to include establishes and protecting his right to engage in the common occupations of life that and reinstatement to a similar position, of which the defendant currently has available and advertised on its website.

The Court should grant the writ of injunction reinstating the plaintiff to his former or an equivalent position. A writ of injunction may be granted if the applicant is entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions. Tex. Civ. Prac. & Rem. Code §§ 65.011(1)-(3). A public employee whose employment is terminated in violation of Section 554.002 is entitled to sue for injunctive relief. Tex. Gov't Code § 554.003. The defendant currently has a "Project Manager III (00049052)" position that has been unfulfilled since April 28th, 2025. The plaintiff is qualified for this position and capable of performing the job.

Respectfully submitted.

/s/ Shamar D. Bradley
Shamar D. Bradley
Pro Se
shamar.d.bradley@gmail.com
10109 Lake Creek Parkway, #170682
Austin, TX 78717
Telephone: (210) 425-5464

Copy from re:SearchTX

# AFFIDAVIT

STATE OF TEXAS
COUNTY OF BEXAR

"My name is Shamar D. Bradley. I am of sound mind and capable of making this sworn statement. I have personal knowledge of the facts written in this statement. I understand that if I lie, I may be held criminally responsible. The statements of fact and evidentiary documents contained herein are true."

_____/S/_____
Shamar D. Bradley, MS, MBA, EIT
10109 Lake Creek Parkway, #170682
Austin, TX 78717
shamar.d.bradley@gmail.com
210-425-5464

# CERTIFICATE OF SERVICE

On June 26th, 2025, this document was served electronically in accordance with Rule 9.2(b)(1) on Denver Burris, lead counsel for Defendant DIR, via denver.burris@oag.texas.gov.

/s/ Shamar D. Bradley
Shamar D. Bradley

Copy from re:SearchTX

APPENDIX

**List Of Exhibits**                                                                                    Page

Exhibit A1 - Pub. Law 95-454, CSRA of 1978, 13OCT1978, Page 1 ........................................ 52
Exhibit A2 - Pub. Law 95-454, CSRA of 1978, 13OCT1978, Page 3 ........................................ 53
Exhibit A1 - Pub. Law 95-454, CSRA of 1978, 13OCT1978, Page 4 ........................................ 54
Exhibit A1 - Pub. Law 95-454, CSRA of 1978, 13OCT1978, Page 5 ........................................ 55
Exhibit A1 - Pub. Law 95-454, CSRA of 1978, 13OCT1978, Page 6 ........................................ 56
Exhibit A1 - Pub. Law 95-454, CSRA of 1978, 13OCT1978, Page 7 ........................................ 57
Exhibit B - HB 1075, 68th R.S., TWA of 1983, 08APR1983, Page 1 ........................................ 58
Exhibit C1 - Pub. Law 101-12, WPA of 1989, 10APR1989, Page 1 ......................................... 59
Exhibit C2 - Pub. Law 101-12, WPA of 1989, 10APR1989, Page 2 ......................................... 60
Exhibit C3 - Pub. Law 101-12, WPA of 1989, 10APR1989, Page 3 ......................................... 61
Exhibit D1 - SB 248 73rd R.S., Revision of TWA, 10APR1989, Page 1 ................................... 62
Exhibit D2 - SB 248 73rd R.S., Revision of TWA, 10APR1989, Page 64 ................................. 63
Exhibit D3 - SB 248 73rd R.S., Revision of TWA, 10APR1989, Page 65 ................................. 64
Exhibit E1 - HB 175 74th R.S., Revision of TWA, 17NOV1994, Page 1 .................................. 65
Exhibit E2 - HB 175 74th R.S., Revision of TWA, 17NOV1994, Page 2 .................................. 66
Exhibit E3 - HB 175 74th R.S., Revision of TWA, 17NOV1994, Page 3 .................................. 67
Exhibit E4 - HB 175 74th R.S., Revision of TWA, 17NOV1994, Page 4 .................................. 68
Exhibit E5 - HB 175 74th R.S., Revision of TWA, 17NOV1994, Page 5 .................................. 69
Exhibit E6 - HB 175 74th R.S., Revision of TWA, 17NOV1994, Page 6 .................................. 70
Exhibit E7 - HB 175 74th R.S., Revision of TWA, 17NOV1994, Page 7 .................................. 71
Exhibit F1 - Pub. Law 112-199, WPEA of 2012, 27NOV2012, Page 1 .................................... 72
Exhibit F2 - Pub. Law 112-199, WPEA of 2012, 27NOV2012, Page 2 .................................... 73
Exhibit G1 - HB3893, Proposed Revision to TWA, 06MAR2025, Page 1 ................................ 74
Exhibit G2 - HB3893, Proposed Revision to TWA, 06MAR2025, Page 2 ................................ 75
Exhibit G3 - HB3893, Proposed Revision to TWA, 06MAR2025, Page 3 ................................ 76
Exhibit G4 - HB3893, Proposed Revision to TWA, 06MAR2025, Page 4 ................................ 77
Exhibit G5 - HB3893, Proposed Revision to TWA, 06MAR2025, Page 5 ................................ 78
Exhibit G6 - HB3893, Proposed Revision to TWA, 06MAR2025, Page 6 ................................ 79
Exhibit H - OAG Whistleblower Sign ................................................................................... 80
Exhibit I1 - DIR Contract Management Handbook Page 1 ..................................................... 81
Exhibit I2 - DIR Contract Management Handbook Page 2 ..................................................... 82
Exhibit I3 - DIR Contract Management Handbook Page 3 ..................................................... 83
Exhibit I4 - DIR Contract Management Handbook Page 4 ..................................................... 84
Exhibit I5 - DIR Contract Management Handbook Page 5 ..................................................... 85
Exhibit I6 - DIR Contract Management Handbook Page 6 ..................................................... 86
Exhibit I7 - DIR Contract Management Handbook Page 7 ..................................................... 87
Exhibit I8 - DIR Contract Management Handbook Page 8 ..................................................... 88
Exhibit I9 - DIR Contract Management Handbook Page 9 ..................................................... 89
Exhibit I10 - DIR Contract Management Handbook Page 10 ................................................... 90
Exhibit I11 - DIR Contract Management Handbook Page 11 ................................................... 91
Exhibit I12 - DIR Contract Management Handbook Page 12 ................................................... 92

Copy from re:SearchTX

Exhibit I13 - DIR Contract Management Handbook Page 13 ...................................................... 93
Exhibit J1 - DIR RFO #DIR-CPO-TMP-550, 04DEC2020, Page 1.......................................... 94
Exhibit J2 - DIR RFO #DIR-CPO-TMP-550, 04DEC2020, Page 21........................................ 95
Exhibit J3 - DIR RFO #DIR-CPO-TMP-550, 04DEC2020, Page 22........................................ 96
Exhibit J4 - DIR RFO #DIR-CPO-TMP-550, 04DEC2020, Page 23........................................ 97
Exhibit K1 - Utah Cooperative Contract with Tyler Tech, 20APR2022, Page 1 ......................... 98
Exhibit K2 - Utah Cooperative Contract with Tyler Tech, 20APR2022, Page 55 ....................... 99
Exhibit L1 - DIR-CPO-5274 Tyler Tech, Pricing Index, Page 1 ............................................... 100
Exhibit L2 - DIR-CPO-5274 Tyler Tech, Pricing Index, Page 2 .............................................. 101
Exhibit M - Bradley v DIR, D-1-GN-24-009408 ................................................................... 102
Exhibit M1 - Bradley v DIR, D-1-GN-24-009408 Case Summary ........................................... 102
Exhibit M1A - Bradley v DIR, D-1-GN-24-009408 Case Summary, Page 1 ............................ 102
Exhibit M1B - Bradley v DIR, D-1-GN-24-009408 Case Summary, Page 2 ............................. 103
Exhibit M1C - Bradley v DIR, D-1-GN-24-009408 Case Summary, Page 3 ............................. 104
Exhibit M1D - Bradley v DIR, D-1-GN-24-009408 Case Summary, Page 4 ............................. 105
Exhibit M1E - Bradley v DIR, D-1-GN-24-009408 Case Summary, Page 5 ............................. 106
Exhibit M2 - Original Petition, D-1-GN-24-009408, 20NOV2024 .......................................... 107
Exhibit M2A - Original Petition, Page 1 ................................................................................ 107
Exhibit M2B - Motion for Injunctive Relief, Page 1 ............................................................... 108
Exhibit M2C - Motion for Injunctive Relief, Page 2 ............................................................... 109
Exhibit M2D - Motion for Injunctive Relief, Page 3 ...............................................................110
Exhibit M2E - Motion for Injunctive Relief, Page 4 ...............................................................111
Exhibit M3 - Evidence in Support of Motion for Injunctive Relief, Page 14.............................112
Exhibit M4 - Order Denying Motion for Injunctive Relief .......................................................113
Exhibit M4A - Order Denying Motion for Injunctive Relief Email, 27JAN2025.......................114
Exhibit M5 - DIR's Amended Plea to the Jurisdiction, 09JAN2025 .........................................115
Exhibit M5A - DIR's Amended Plea to the Jurisdiction, Page 2 ...............................................115
Exhibit M5B - DIR's Amended Plea to the Jurisdiction, Page 3 ...............................................116
Exhibit M5C - DIR's Amended Plea to the Jurisdiction, Page 4 ...............................................117
Exhibit M5D - DIR's Amended Plea to the Jurisdiction, Page 5 ...............................................118
Exhibit M5E - DIR's Amended Plea to the Jurisdiction, Page 6 ...............................................119
Exhibit M6A - Email to Court Administrator's Office, 03JAN2025, Page 1 ............................. 120
Exhibit M6B - Email to Court Administrator's Office, 03JAN2025, Page 2 ............................. 121
Exhibit M7 - Email from Court Administrator's Office, 03JAN2025 ....................................... 122
Exhibit M8 - Lack of Notice of Whistleblower Rights Sign at WPC........................................ 123
Exhibit M9 - Lack of Notice of Whistleblower Rights Sign at ADC ........................................ 124
Exhibit M10 - Lack Training of Whistleblower Rights ........................................................... 125
Exhibit M11A - Email to Court Administrator's Office, 30JAN2025 - 1, Page 1 ..................... 126
Exhibit M11B - Email to Court Administrator's Office, 30JAN2025 - 1, Page 2 ..................... 127
Exhibit M13 - Email to Court Administrator's Office, 30JAN2025 - 2 .................................... 128
Exhibit M14 - Email from Court Administrator's Office, 30JAN2025 - 1................................ 129
Exhibit M15 - Email to Court Administrator's Office, 30JAN2025 - 3 .................................... 130
Exhibit M16 - Email from Court Administrator's Office, 30JAN2025 - 2................................ 131

Copy from re:SearchTX

Exhibit M17 - Email from Court Administrator's Office, 30JAN2025 - 3.................................. 132
Exhibit M18 - Email to Court Administrator's Office, 30JAN2025 - 4 .................................... 133
Exhibit M19 - Email to Court Administrator's Office, 30JAN2025 - 5 .................................... 133
Exhibit M20 - Email from Court Administrator's Office, 30JAN2025 - 4................................ 134
Exhibit M21 - Email from Court Administrator's Office, 30JAN2025 - 5................................ 135
Exhibit M22 - Order Granting Defendant's Plea to the Jurisdiction ........................................ 136
Exhibit M23 - Order Granting DIR's Plea to the Jurisdiction Email, 03MAR2025 ................. 137
Exhibit N1 - Brickman V. OAG Final Order, 04APR2025, Page 1.......................................... 138
Exhibit N2 - Brickman V. OAG Final Order, 04APR2025, Page 2.......................................... 139
Exhibit N3 - Brickman V. OAG Final Order, 04APR2025, Page 3.......................................... 140
Exhibit N4 - Brickman V. OAG Final Order, 04APR2025, Page 4.......................................... 141
Exhibit O1 - DIR Project Manager III Job Announcement, 28APR2025, Page 1 ..................... 142
Exhibit O2 - DIR Project Manager III Job Announcement, 28APR2025, Page 2 ..................... 143
Exhibit O3 - DIR Project Manager III Job Announcement, 28APR2025, Page 3 ..................... 144
Exhibit O4 - DIR Project Manager III Job Announcement, 28APR2025, Page 4 ..................... 145
Exhibit O5 - DIR Project Manager III Job Announcement, 28APR2025, Page 5 ..................... 146
Exhibit O6 - DIR Project Manager III Job Announcement, 28APR2025, Page 6 ..................... 147
Exhibit O7 - DIR Project Manager III Job Announcement, 28APR2025, Page 7 ..................... 148
Exhibit 1 - "State-Owned Property" Email from Lisa Jammer, 27AUG2024 ........................... 149
Exhibit 2 - "DIR Equipment" Email from Randa Maldonado, 12SEP2024.............................. 150
Exhibit 3 - Request for Invoice Email to Lisa Jammer, 20SEP2024 ....................................... 151
Exhibit 4A - DIR Whistleblower Appeal Email, 23SEP2024, Page 1 ...................................... 151
Exhibit 4B - DIR Whistleblower Appeal Email, 23SEP2024, Page 2 ...................................... 152
Exhibit 5 - Information Request for Invoice for DIR Property, 08NOV2024 ........................... 153
Exhibit 6 - Police Presence at DIR Board Meeting, 29MAY2025 ........................................... 154
Exhibit 7 - Report of Criminal False Report to Peace Officer, 30MAY2025 ........................... 155
Exhibit 8 - Email from Lisa Jammer, 30MAY2025................................................................. 156
Exhibit 9 - Defendants' Threat of Any Legal Action, 30MAY2025 ........................................ 157

Copy from re:SearchTX

Exhibit A1 - Pub. Law 95-454, CSRA of 1978, 13OCT1978, Page 1

PUBLIC LAW 95-454—OCT. 13, 1978          92 STAT. 1111

## Public Law 95-454
## 95th Congress

## An Act

To reform the civil service laws.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Oct. 13, 1978

[S. 2640]

Civil Service Reform Act of 1978.

5 USC 1101 note.

### SHORT TITLE

SECTION 1. This Act may be cited as the "Civil Service Reform Act of 1978".

### TABLE OF CONTENTS

SEC. 2. The table of contents is as follows:

### TABLE OF CONTENTS

Sec. 1. Short title.
Sec. 2. Table of contents.
Sec. 3. Findings and statement of purpose.

TITLE I—MERIT SYSTEM PRINCIPLES

Sec. 101. Merit system principles; prohibited personnel practices.

TITLE II—CIVIL SERVICE FUNCTIONS; PERFORMANCE APPRAISAL; ADVERSE ACTIONS

Sec. 201. Office of Personnel Management.
Sec. 202. Merit Systems Protection Board and Special Counsel.
Sec. 203. Performance appraisals.
Sec. 204. Adverse actions.
Sec. 205. Appeals.
Sec. 206. Technical and conforming amendments.

TITLE III—STAFFING

Sec. 301. Volunteer service.
Sec. 302. Interpreting assistants for deaf employees.
Sec. 303. Probationary period.
Sec. 304. Training.
Sec. 305. Travel, transportation, and subsistence.
Sec. 306. Retirement.
Sec. 307. Veterans and preference eligibles.
Sec. 308. Dual pay for retired members of the uniformed services.
Sec. 309. Civil service employment information.
Sec. 310. Minority recruitment program.
Sec. 311. Temporary employment limitation.

TITLE IV—SENIOR EXECUTIVE SERVICE

Sec. 401. General provisions.
Sec. 402. Authority for employment.
Sec. 403. Examination, certification, and appointment.
Sec. 404. Retention preference.
Sec. 405. Performance rating.
Sec. 406. Awarding of ranks.
Sec. 407. Pay rates and systems.
Sec. 408. Pay administration.
Sec. 409. Travel, transportation, and subsistence.
Sec. 410. Leave.
Sec. 411. Disciplinary actions.
Sec. 412. Retirement.
Sec. 413. Conversion to the Senior Executive Service.
Sec. 414. Limitations on executive positions.
Sec. 415. Effective date; congressional review.

Copy from re:SearchTX

PUBLIC LAW 95-454—OCT. 13, 1978     92 STAT. 1113

be delegated in appropriate cases to the agencies to expedite processing appointments and other personnel actions, with the control and oversight of this delegation being maintained by the Office of Personnel Management to protect against prohibited personnel practices and the use of unsound management practices by the agencies;

"(6) a Senior Executive Service should be established to provide the flexibility needed by agencies to recruit and retain the highly competent and qualified executives needed to provide more effective management of agencies and their functions, and the more expeditious administration of the public business;

"(7) in appropriate instances, pay increases should be based on quality of performance rather than length of service;

"(8) research programs and demonstration projects should be authorized to permit Federal agencies to experiment, subject to congressional oversight, with new and different personnel management concepts in controlled situations to achieve more efficient management of the Government's human resources and greater productivity in the delivery of service to the public;

"(9) the training program of the Government should include retraining of employees for positions in other agencies to avoid separations during reductions in force and the loss to the Government of the knowledge and experience that these employees possess; and

"(10) the right of Federal employees to organize, bargain collectively, and participate through labor organizations in decisions which affect them, with full regard for the public interest and the effective conduct of public business, should be specifically recognized in statute.

## TITLE I—MERIT SYSTEM PRINCIPLES

MERIT SYSTEM PRINCIPLES; PROHIBITED PERSONNEL PRACTICES

SEC. 101. (a) Title 5, United States Code, is amended by inserting after chapter 21 the following new chapter:

### "CHAPTER 23—MERIT SYSTEM PRINCIPLES

"Sec.
"2301. Merit system principles.
"2302. Prohibited personnel practices.
"2303. Prohibited personnel practices in the Federal Bureau of Investigation.
"2304. Responsibility of the General Accounting Office.
"2305. Coordination with certain other provisions of law.

### "§ 2301. Merit system principles

5 USC 2301.

"(a) This section shall apply to—
  "(1) an Executive agency;
  "(2) the Administrative Office of the United States Courts; and
  "(3) the Government Printing Office.
"(b) Federal personnel management should be implemented consistent with the following merit system principles:
  "(1) Recruitment should be from qualified individuals from appropriate sources in an endeavor to achieve a work force from all segments of society, and selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition which assures that all receive equal opportunity.

Copy from re:SearchTX

92 STAT. 1114       PUBLIC LAW 95–454—OCT. 13, 1978

"(2) All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.

"(3) Equal pay should be provided for work of equal value, with appropriate consideration of both national and local rates paid by employers in the private sector, and appropriate incentives and recognition should be provided for excellence in performance.

"(4) All employees should maintain high standards of integrity, conduct, and concern for the public interest.

"(5) The Federal work force should be used efficiently and effectively.

"(6) Employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards.

"(7) Employees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance.

"(8) Employees should be—

    "(A) protected against arbitrary action, personal favoritism, or coercion for partisan political purposes, and

    "(B) prohibited from using their official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for election.

"(9) Employees should be protected against reprisal for the lawful disclosure of information which the employees reasonably believe evidences—

    "(A) a violation of any law, rule, or regulation, or

    "(B) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

*Infra.*

"(c) In administering the provisions of this chapter—

"(1) with respect to any agency (as defined in section 2302(a)(2)(C) of this title), the President shall, pursuant to the authority otherwise available under this title, take any action, including the issuance of rules, regulations, or directives; and

"(2) with respect to any entity in the executive branch which is not such an agency or part of such an agency, the head of such entity shall, pursuant to authority otherwise available, take any action, including the issuance of rules, regulations, or directives; which is consistent with the provisions of this title and which the President or the head, as the case may be, determines is necessary to ensure that personnel management is based on and embodies the merit system principles.

5 USC 2302.
Definitions.

## "§ 2302. Prohibited personnel practices

"(a)(1) For the purpose of this title, 'prohibited personnel practice' means any action described in subsection (b) of this section.

"(2) For the purpose of this section—

    "(A) 'personnel action' means—

        "(i) an appointment;

        "(ii) a promotion;

Copy from re:SearchTX

PUBLIC LAW 95-454—OCT. 13, 1978          92 STAT. 1115

"(iii) an action under chapter 75 of this title or other disciplinary or corrective action;

"(iv) a detail, transfer, or reassignment;

"(v) a reinstatement;

"(vi) a restoration;

"(vii) a reemployment;

"(viii) a performance evaluation under chapter 43 of this title;

"(ix) a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in this subparagraph; and

"(x) any other significant change in duties or responsibilities which is inconsistent with the employee's salary or grade level;

with respect to an employee in, or applicant for, a covered position in an agency;

"(B) 'covered position' means any position in the competitive service, a career appointee position in the Senior Executive Service, or a position in the excepted service, but does not include—

"(i) a position which is excepted from the competitive service because of its confidential, policy-determining, policy-making, or policy-advocating character; or

"(ii) any position excluded from the coverage of this section by the President based on a determination by the President that it is necessary and warranted by conditions of good administration.

"(C) 'agency' means an Executive agency, the Administrative Office of the United States Courts, and the Government Printing Office, but does not include—

"(i) a Government corporation;

"(ii) the Federal Bureau of Investigation, the Central Intelligence Agency, the Defense Intelligence Agency, the National Security Agency, and, as determined by the President, any Executive agency or unit thereof the principal function of which is the conduct of foreign intelligence or counterintelligence activities; or

"(iii) the General Accounting Office.

"(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

"(1) discriminate for or against any employee or applicant for employment—

"(A) on the basis of race, color, religion, sex, or national origin, as prohibited under section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16);

"(B) on the basis of age, as prohibited under sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a);

"(C) on the basis of sex, as prohibited under section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d));

"(D) on the basis of handicapping condition, as prohibited under section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791); or

"(E) on the basis of marital status or political affiliation, as prohibited under any law, rule, or regulation;

Copy from re:SearchTX

**92 STAT. 1116**              **PUBLIC LAW 95-454—OCT. 13, 1978**

"(2) solicit or consider any recommendation or statement, oral or written, with respect to any individual who requests or is under consideration for any personnel action unless such recommendation or statement is based on the personal knowledge or records of the person furnishing it and consists of—

"(A) an evaluation of the work performance, ability, aptitude, or general qualifications of such individual; or

"(B) an evaluation of the character, loyalty, or suitability of such individual;

"(3) coerce the political activity of any person (including the providing of any political contribution or service), or take any action against any employee or applicant for employment as a reprisal for the refusal of any person to engage in such political activity;

"(4) deceive or willfully obstruct any person with respect to such person's right to compete for employment;

"(5) influence any person to withdraw from competition for any position for the purpose of improving or injuring the prospects of any other person for employment;

"(6) grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment;

5 USC 3110.

"(7) appoint, employ, promote, advance, or advocate for appointment, employment, promotion, or advancement, in or to a civilian position any individual who is a relative (as defined in section 3110(a)(3) of this title) of such employee if such position is in the agency in which such employee is serving as a public official (as defined in section 3110(a)(2) of this title) or over which such employee exercises jurisdiction or control as such an official;

"(8) take or fail to take a personnel action with respect to any employee or applicant for employment as a reprisal for—

"(A) a disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

"(i) a violation of any law, rule, or regulation, or

"(ii) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,

if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs; or

"(B) a disclosure to the Special Counsel of the Merit Systems Protection Board, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences—

"(i) a violation of any law, rule, or regulation, or

"(ii) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;

"(9) take or fail to take any personnel action against any employee or applicant for employment as a reprisal for the exercise of any appeal right granted by any law, rule, or regulation;

Copy from re:SearchTX

PUBLIC LAW 95-454—OCT. 13, 1978          92 STAT. 1117

"(10) discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others; except that nothing in this paragraph shall prohibit an agency from taking into account in determining suitability or fitness any conviction of the employee or applicant for any crime under the laws of any State, of the District of Columbia, or of the United States; or

"(11) take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title.

This subsection shall not be construed to authorize the withholding of information from the Congress or the taking of any personnel action against an employee who discloses information to the Congress.

"(c) The head of each agency shall be responsible for the prevention of prohibited personnel practices, for the compliance with and enforcement of applicable civil service laws, rules, and regulations, and other aspects of personnel management. Any individual to whom the head of an agency delegates authority for personnel management, or for any aspect thereof, shall be similarly responsible within the limits of the delegation.

"(d) This section shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through affirmative action or any right or remedy available to any employee or applicant for employment in the civil service under—

"(1) section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16), prohibiting discrimination on the basis of race, color, religion, sex, or national origin;

"(2) sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), prohibiting discrimination on the basis of age;

"(3) under section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d)), prohibiting discrimination on the basis of sex;

"(4) section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791), prohibiting discrimination on the basis of handicapping condition; or

"(5) the provisions of any law, rule, or regulation prohibiting discrimination on the basis of marital status or political affiliation.

"**2303. Prohibited personnel practices in the Federal Bureau of Investigation**          5 USC 2303.

"(a) Any employee of the Federal Bureau of Investigation who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority, take or fail to take a personnel action with respect to any employee of the Bureau as a reprisal for a disclosure of information by the employee to the Attorney General (or an employee designated by the Attorney General for such purpose) which the employee or applicant reasonably believes evidences—

"(1) a violation of any law, rule, or regulation, or

"(2) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

For the purpose of this subsection, 'personnel action' means any action described in clauses (i) through (x) of section 2302(a)(2)(A) of this          "Personnel action."

Copy from re:SearchTX

I certify that the attached is a true and correct copy of RR 1075, which was filed of record on FEB 2 8 1983 and referred to the committee on:

State Affairs

Betty Murray
Chief Clerk of the House

1983 APR -8 PM 12: 06
HOUSE OF REPRESENTATIVES

By B. Harrison

FILED FEB 28 1983
H.B. No. 1075

A BILL TO BE ENTITLED

AN ACT

relating to the protection of public employees who report a violation of law.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. DEFINITIONS. In this Act:

(1) "Law" means a state or federal statute, an ordinance passed by a local governmental body, or a rule adopted under a statute or an ordinance.

(2) "Local governmental body" means:

(A) a county;

(B) an incorporated city or town;

(C) a public school district; or

(D) a special purpose district or authority.

(3) "Public employee" means a person who performs services for compensation under a written or oral contract for a state or local governmental body. The term does not include an independent contractor.

(4) "State governmental body" means:

(A) a board, commission, department, office, or other agency in the executive branch of state government that was created under the constitution or a statute of the state, including an institution of higher education as defined by Section 61.003, Texas Education Code;

(B) the legislature or a legislative agency; or

68R2521 PBS-D                                    1

Copy from re:SearchTX

**103 STAT. 16**     **PUBLIC LAW 101–12—APR. 10, 1989**

Public Law 101–12
101st Congress

## An Act

Apr. 10, 1989
[S. 20]

To amend title 5, United States Code, to strengthen the protections available to Federal employees against prohibited personnel practices, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Whistleblower
Protection
Act of 1989.
5 USC 1201 note.

### SECTION 1. SHORT TITLE.

This Act may be cited as the "Whistleblower Protection Act of 1989".

5 USC 1201 note.

### SEC. 2. FINDINGS AND PURPOSE.

(a) FINDINGS.—The Congress finds that—

(1) Federal employees who make disclosures described in section 2302(b)(8) of title 5, United States Code, serve the public interest by assisting in the elimination of fraud, waste, abuse, and unnecessary Government expenditures;

(2) protecting employees who disclose Government illegality, waste, and corruption is a major step toward a more effective civil service; and

(3) in passing the Civil Service Reform Act of 1978, Congress established the Office of Special Counsel to protect whistleblowers (those individuals who make disclosures described in such section 2302(b)(8)) from reprisal.

(b) PURPOSE.—The purpose of this Act is to strengthen and improve protection for the rights of Federal employees, to prevent reprisals, and to help eliminate wrongdoing within the Government by—

(1) mandating that employees should not suffer adverse consequences as a result of prohibited personnel practices; and

(2) establishing—

(A) that the primary role of the Office of Special Counsel is to protect employees, especially whistleblowers, from prohibited personnel practices;

(B) that the Office of Special Counsel shall act in the interests of employees who seek assistance from the Office of Special Counsel; and

(C) that while disciplining those who commit prohibited personnel practices may be used as a means by which to help accomplish that goal, the protection of individuals who are the subject of prohibited personnel practices remains the paramount consideration.

### SEC. 3. MERIT SYSTEMS PROTECTION BOARD; OFFICE OF SPECIAL COUNSEL; INDIVIDUAL RIGHT OF ACTION.

(a) MERIT SYSTEMS PROTECTION BOARD.—Chapter 12 of title 5, United States Code is amended—

(1) in section 1201 in the second sentence by striking out "Chairman and";

Copy from re:SearchTX

PUBLIC LAW 101-12—APR. 10, 1989     103 STAT. 17

(2) in the heading for section 1202 by striking out the comma and inserting in lieu thereof a semicolon;

(3) in section 1202(b)—

(A) in the first sentence by striking out "his" and inserting in lieu thereof "the member's"; and

(B) in the second sentence by striking out "of this title";

(4) in section 1203(a) in the first sentence by striking out the comma after "time";

(5) in section 1203(c) by striking out "the Chairman and Vice Chairman" and inserting in lieu thereof "the Chairman and the Vice Chairman";

(6) by redesignating section 1204 as section 1211(b) and inserting such subsection after section 1211(a) (as added in paragraph (11) of this subsection);

(7) by redesignating section 1205 as section 1204, and amending such redesignated section—

(A) by striking out "and Special Counsel", "the Special Counsel," and "of this section" each place such terms appear;

(B) by striking out "subpena" and "subpenaed" each place such terms appear and inserting in lieu thereof "subpoena" and "subpoenaed", respectively;

(C) in subsection (a)(4) by striking out "(e)" and inserting in lieu thereof "(f)";

(D) by amending subsection (b)(2) to read as follows:

"(2) Any member of the Board, any administrative law judge appointed by the Board under section 3105, and any employee of the Board designated by the Board may, with respect to any individual—

"(A) issue subpoenas requiring the attendance and presentation of testimony of any such individual, and the production of documentary or other evidence from any place in the United States, any territory or possession of the United States, the Commonwealth of Puerto Rico, or the District of Columbia; and

"(B) order the taking of depositions from, and responses to written interrogatories by, any such individual.";

(E) in subsection (c) in the first sentence—

(i) by striking out "(b)(2) of this section," and inserting in lieu thereof "(b)(2)(A) or section 1214(b), upon application by the Board,"; and

(ii) by striking out "judicial";

(F) by redesignating subsections (d) through (k) as subsections (e) through (l), respectively, and inserting after subsection (c) the following new subsection:

"(d) A subpoena referred to in subsection (b)(2)(A) may, in the case of any individual outside the territorial jurisdiction of any court of the United States, be served in such manner as the Federal Rules of Civil Procedure prescribe for service of a subpoena in a foreign country. To the extent that the courts of the United States can assert jurisdiction over such individual, the United States District Court for the District of Columbia shall have the same jurisdiction to take any action respecting compliance under this subsection by such individual that such court would have if such individual were personally within the jurisdiction of such court.";

(G) in subsection (e) (as redesignated by subparagraph (F) of this paragraph)—

District of Columbia.

Copy from re:SearchTX

103 STAT. 18                    PUBLIC LAW 101–12—APR. 10, 1989

(i) in paragraph (1)—
(I) by redesignating such paragraph as subparagraph (A) of paragraph (1); and
(II) by inserting at the end thereof the following new subparagraph:
"(B)(i) The Merit Systems Protection Board may, during an investigation by the Office of Special Counsel or during the pendency of any proceeding before the Board, issue any order which may be necessary to protect a witness or other individual from harassment, except that an agency (other than the Office of Special Counsel) may not request any such order with regard to an investigation by the Office of Special Counsel from the Board during such investigation.
"(ii) An order issued under this subparagraph may be enforced in the same manner as provided for under paragraph (2) with respect to any order under subsection (a)(2).";
(ii) in paragraph (2)—
(I) by redesignating such paragraph as subparagraph (A) of paragraph (2) and striking out "of this section" in the first sentence therein; and
(II) by inserting at the end thereof the following new subparagraph (B):

Regulations.

"(B) The Board shall prescribe regulations under which any employee who is aggrieved by the failure of any other employee to comply with an order of the Board may petition the Board to exercise its authority under subparagraph (A)."; and
(iii) in paragraph (3) by inserting "of Personnel Management" after "Office";
(H) in subsection (f) (as redesignated by subparagraph (F) of this paragraph)—
(i) in paragraph (1) in the first sentence by inserting "of the Office of Personnel Management" after "Director", and by striking out "of this title";
(ii) in paragraph (2)—
(I) in the first sentence by inserting a comma after "subsection";
(II) in subparagraph (A) by striking out "of this title"; and
(III) in subparagraph (B) by striking out "of this title"; and
(iii) in paragraph (3)—
(I) in subparagraph (A) by striking out "(A)";
(II) by striking out subparagraph (B); and
(III) by redesignating subparagraph (C) and clauses (i) and (ii) therein as paragraph (4) and subparagraphs (A) and (B), respectively; and
(I) in subsection (j) (as redesignated by subparagraph (F) of this paragraph) in the second sentence by striking out "of this title" after "chapter 33";
(8) by striking out sections 1206 through 1208;
(9) by redesignating section 1209(a) as section 1205, and inserting before such section the following section heading:

"§ 1205. Transmittal of information to Congress";

(10) by redesignating section 1209(b) as section 1206, and inserting before such section the following section heading:

Copy from re:SearchTX

By \_\_\_\_Haley\_\_\_\_                              S. B. No. 248

A BILL TO BE ENTITLED

AN ACT

relating to the adoption of a nonsubstantive revision of statutes relating to areas of government that affect or involve both state and local entities, including the operation of government and governmental bodies, public officers and employees, and fiscal affairs and including conforming amendments, repeals, and penalties.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. ADOPTION OF TITLES 5, 6, AND 10, GOVERNMENT CODE. The Government Code is amended by adding Titles 5, 6, and 10 to read as follows:

TITLE 5. OPEN GOVERNMENT; ETHICS

SUBTITLE A. OPEN GOVERNMENT

Chapter 551. OPEN MEETINGS

Chapter 552. OPEN RECORDS

Chapter 553. PUBLIC DISCLOSURE

Chapter 554. PROTECTION FOR REPORTING VIOLATIONS OF LAW

Chapter 555. STATE AGENCY RECORDS RELATING TO

LICENSE HOLDERS

Chapter 556. POLITICAL ACTIVITIES BY STATE EMPLOYEES

Chapter 557. SEDITION, SABOTAGE, AND COMMUNISM

Chapter 558. INTERPRETERS FOR DEAF OR HEARING

IMPAIRED PERSONS

[Chapters 559-570 reserved for expansion]

73R3011 DAK-D                              1

Copy from re:SearchTX

employee who sues under this chapter has the burden of proof, except that if the suspension or termination of a public employee occurs not later than the 90th day after the date on which the employee reports a violation of law, the suspension or termination is presumed, subject to rebuttal, to be because the employee made the report. (V.A.C.S. Art. 6252-16a, Sec. 3(b).)

Sec. 554.005. LIMITATION PERIOD. Except as provided by Section 554.006, a public employee who seeks relief under this chapter must sue not later than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence. (V.A.C.S. Art. 6252-16a, Sec. 3(a) (part).)

Sec. 554.006. EXHAUSTION OF GRIEVANCE OR APPEAL PROCEDURES. (a) An employee of a local government must exhaust that government's grievance or appeal procedures relating to suspension or termination of employment or unlawful discrimination before suing under this chapter.

(b) The employee must invoke the grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence.

(c) Time used by the employee in exhausting the grievance or appeal procedures is excluded from the period established by Section 554.005.

73R3011 DAK-D                              64

Copy from re:SearchTX

(d) This section does not apply if a final decision is not rendered before the 31st day after the date on which the employee initiated the grievance or appeal. (V.A.C.S. Art. 6252-16a, Secs. 3(d), (e).)

Sec. 554.007. WHERE SUIT BROUGHT. A public employee may sue under this chapter in a district court of the county in which the employee resides or in a district court of Travis County. (V.A.C.S. Art. 6252-16a, Sec. 3(c).)

Sec. 554.008. CIVIL PENALTY. (a) A supervisor who suspends or terminates the employment of a public employee in violation of this chapter is liable for a civil penalty not to exceed $1,000.

(b) The attorney general or appropriate prosecuting attorney may sue to collect a civil penalty under this section.

(c) A civil penalty collected under this section shall be deposited in the state treasury. (V.A.C.S. Art. 6252-16a, Sec. 5.)

Sec. 554.009. NOTICE TO EMPLOYEES. (a) A state agency or local government shall inform its employees of their rights under this chapter by posting a sign in a prominent location in the workplace.

(b) The attorney general shall prescribe the design and content of the sign required by this section. (V.A.C.S. Art. 6252-16a, Sec. 6.)

CHAPTER 555. STATE AGENCY RECORDS RELATING TO LICENSE HOLDERS

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 555.001. DEFINITIONS

Sec. 555.002. RULES

Sec. 555.003. EXCEPTION

73R3011 DAK-D                          65

Copy from re:SearchTX

95 JUN 30 PM 2:53

HOUSE OF REPRESENTATIVES

I certify that the attached is a true and correct copy of the document which was filed of record in the Chief Clerk's Office and referred to the committee on:

State Affairs

Cynthia Gerhardt

Chief Clerk of the House

FILED NOV 17 1994

By _John Hirsch_

H.B. No. 175

A BILL TO BE ENTITLED

AN ACT

relating to the protection of a public employee who reports a violation of law.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 554.001, Government Code, is amended to read as follows:

Sec. 554.001. DEFINITIONS. In this chapter:

(1) "Law" means:

(A) a state or federal statute;

(B) an ordinance of a local governmental entity [body]; or

(C) a rule adopted under a statute or ordinance.

(2) "Local governmental entity [government]" means a political subdivision of the state, including a:

(A) [a] county;

(B) [a] municipality;

(C) [a] public school district; or

(D) [a] special-purpose district or authority.

(3) "Personnel action" means an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation.

(4) [(3)] "Public employee" means an employee or appointed officer [a person] other than an independent contractor who is paid to perform[, for compensation, performs] services for a

Copy from re:SearchTX

state or local governmental entity [body-under-a-written-or-oral contract].

(5) [(4)] "State governmental entity [agency]" means:

(A) a board, commission, department, office, or other agency in the executive branch of state government, created under the constitution or a statute of the state, including an institution of higher education, as defined by Section 61.003, Education Code;

(B) the legislature or a legislative agency; or

(C) the Texas Supreme Court, the Texas Court of Criminal Appeals, a court of appeals, a state judicial agency, or the State Bar of Texas.

SECTION 2. Section 554.002, Government Code, is amended to read as follows:

Sec. 554.002. RETALIATION PROHIBITED FOR REPORTING VIOLATION OF LAW. (a) A state [agency] or local governmental entity [government] may not suspend or terminate the employment of, or take other adverse personnel action [discriminate] against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

(b) In this section, a report is made to an appropriate law enforcement authority if the authority:

(1) is a part of a state or local governmental entity or of the federal government; and

(2) is authorized to:

(A) regulate under or enforce the law alleged to

74R1960 MJW-F                    2

Copy from re:SearchTX

be violated in the report; or

(B) investigate or prosecute a violation of criminal law.

SECTION 3. Section 554.003, Government Code, is amended to read as follows:

Sec. 554.003. RELIEF AVAILABLE TO PUBLIC EMPLOYEE. (a) A public employee whose employment is suspended or terminated or who is subjected to an adverse personnel action [discriminated-against] in violation of Section 554.002 is entitled to sue for:

(1) injunctive relief;

(2) actual damages;

(3) [exemplary-damages;

[(4)] court costs; and

(4) [(5)] reasonable attorney fees.

(b) In addition to relief under Subsection (a), a public employee whose employment is suspended or terminated in violation of this chapter is entitled to:

(1) reinstatement to the employee's former position or an equivalent position;

(2) compensation for wages lost during the period of suspension or termination; and

(3) reinstatement of fringe benefits and seniority rights lost because of the suspension or termination.

(c) In a suit under this chapter against an employing state or local governmental entity, a public employee may not recover more than $250,000 in monetary damages, including lost wages.

SECTION 4. Chapter 554, Government Code, is amended by

74R1960 MJW-F                    3

Copy from re:SearchTX

adding Section 554.0035 to read as follows:

Sec. 554.0035. WAIVER OF IMMUNITY. A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

SECTION 5. Section 554.004, Government Code, is amended to read as follows:

Sec. 554.004. BURDEN OF PROOF; PRESUMPTION; AFFIRMATIVE DEFENSE. (a) A public employee who sues under this chapter has the burden of proof, except that if the suspension or termination of, or adverse personnel action against, a public employee occurs not later than the 90th day after the date on which the employee reports a violation of law, the suspension, [or] termination, or adverse personnel action is presumed, subject to rebuttal, to be because the employee made the report.

(b) It is an affirmative defense to a suit under this chapter that the employing state or local governmental entity would have taken the action against the employee that forms the basis of the suit based solely on information, observation, or evidence that is not related to the fact that the employee made a report protected under this chapter of a violation of law.

SECTION 6. Section 554.006, Government Code, is amended to read as follows:

Sec. 554.006. USE [EXHAUSTION] OF GRIEVANCE OR APPEAL PROCEDURES. (a) A public [An] employee [of--a--local--government]

74R1960 MJW-F                    4

Copy from re:SearchTX

must initiate action under the [exhaust--that--government's] grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action [unlawful-discrimination] before suing under this chapter.

(b) The employee must invoke the applicable grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence.

(c) Time used by the employee in acting under [exhausting] the grievance or appeal procedures is excluded, except as provided by Subsection (d), from the period established by Section 554.005.

(d) If a final decision is not rendered before the 31st day after the date procedures are initiated under Subsection (a), the employee may elect to:

(1) exhaust the applicable procedures under Subsection (a), in which event the employee must sue not later than the 30th day after the date those procedures are exhausted to obtain relief under this chapter; or

(2) terminate procedures under Subsection (a), in which event the employee must sue within the time remaining under Section 554.005 to obtain relief under this chapter [This-section does-not-apply-if-a-final-decision-is-not-rendered-before-the--31st day-after-the-date-on-which-the-employee-initiated-the-grievance-or appeal].

74R1960 MJW-F                                    5

Copy from re:SearchTX

SECTION 7. Section 554.007, Government Code, is amended to read as follows:

Sec. 554.007. WHERE SUIT BROUGHT. A public employee may sue under this chapter in a district court of the county in which the cause of action arises [employee-resides-or-in-a-district-court-of Travis-County].

SECTION 8. Section 554.008, Government Code, is amended by amending Subsection (a) and by adding Subsections (d) and (e) to read as follows:

(a) A supervisor who in violation of this chapter suspends or terminates the employment of a public employee or takes an adverse personnel action against the employee [in-violation-of-this chapter] is liable for a civil penalty not to exceed $5,000 [$1,000].

(d) A civil penalty assessed under this section shall be paid by the supervisor and may not be paid by the employing governmental entity.

(e) The personal liability of a supervisor or other individual under this chapter is limited to the civil penalty that may be assessed under this section.

SECTION 9. Section 554.009(a), Government Code, is amended to read as follows:

(a) A state [agency] or local governmental entity [government] shall inform its employees of their rights under this chapter by posting a sign in a prominent location in the workplace.

SECTION 10. The changes in law made by this Act apply only to a suspension or termination of employment of a public employee

74R1960 MJW-F                                6

Copy from re:SearchTX

or to other adverse personnel action taken against a public employee on or after the effective date of this Act. A suspension or termination of employment of a public employee or other adverse personnel action against the employee, within the meaning of the law changed by this Act, that is taken before the effective date of this Act is governed by the law existing on the date the suspension, termination, or other adverse personnel action occurred, and the former law is continued in effect for that purpose.

SECTION 11. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

74R1960 MJW-F                                              7

Copy from re:SearchTX



PUBLIC LAW 112–199—NOV. 27, 2012          126 STAT. 1465

Public Law 112–199
112th Congress

## An Act

To amend chapter 23 of title 5, United States Code, to clarify the disclosures of information protected from prohibited personnel practices, require a statement in non-disclosure policies, forms, and agreements that such policies, forms, and agreements conform with certain disclosure protections, provide certain authority for the Special Counsel, and for other purposes.

Nov. 27, 2012
[S. 743]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

Whistleblower Protection Enhancement Act of 2012. 5 USC 101 note.

This Act may be cited as the "Whistleblower Protection Enhancement Act of 2012".

# TITLE I—PROTECTION OF CERTAIN DIS-CLOSURES OF INFORMATION BY FED-ERAL EMPLOYEES

**SEC. 101. CLARIFICATION OF DISCLOSURES COVERED.**

(a) IN GENERAL.—Section 2302(b)(8) of title 5, United States Code, is amended—

(1) in subparagraph (A)(i), by striking "a violation" and inserting "any violation"; and

(2) in subparagraph (B)(i), by striking "a violation" and inserting "any violation (other than a violation of this section)".

(b) PROHIBITED PERSONNEL PRACTICES UNDER SECTION 2302(b)(9).—

(1) TECHNICAL AND CONFORMING AMENDMENTS.—Title 5, United States Code, is amended—

(A) in subsections (a)(3), (b)(4)(A), and (b)(4)(B)(i) of section 1214 and in subsections (a), (e)(1), and (i) of section 1221, by inserting "or section 2302(b)(9) (A)(i), (B), (C), or (D)" after "section 2302(b)(8)" each place it appears; and

(B) in section 2302(a)(2)(C)(i), by inserting "or section 2302(b)(9) (A)(i), (B), (C), or (D)" after "(b)(8)".

(2) OTHER REFERENCES.—(A) Title 5, United States Code, is amended in subsection (b)(4)(B)(i) of section 1214 and in subsection (e)(1) of section 1221 by inserting "or protected activity" after "disclosure" each place it appears.

(B) Section 2302(b)(9) of title 5, United States Code, is amended—

(i) by striking subparagraph (A) and inserting the following:

Copy from re:SearchTX

126 STAT. 1466          PUBLIC LAW 112–199—NOV. 27, 2012

"(A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—

"(i) with regard to remedying a violation of paragraph (8); or

"(ii) other than with regard to remedying a violation of paragraph (8);"; and

(ii) in subparagraph (B), by inserting "(i) or (ii)" after "subparagraph (A)".

(C) Section 2302 of title 5, United States Code, is amended by adding at the end the following:

"(f)(1) A disclosure shall not be excluded from subsection (b)(8) because—

"(A) the disclosure was made to a supervisor or to a person who participated in an activity that the employee or applicant reasonably believed to be covered by subsection (b)(8)(A)(i) and (ii);

"(B) the disclosure revealed information that had been previously disclosed;

"(C) of the employee's or applicant's motive for making the disclosure;

"(D) the disclosure was not made in writing;

"(E) the disclosure was made while the employee was off duty; or

"(F) of the amount of time which has passed since the occurrence of the events described in the disclosure.

"(2) If a disclosure is made during the normal course of duties of an employee, the disclosure shall not be excluded from subsection (b)(8) if any employee who has authority to take, direct others to take, recommend, or approve any personnel action with respect to the employee making the disclosure, took, failed to take, or threatened to take or fail to take a personnel action with respect to that employee in reprisal for the disclosure.".

**SEC. 102. DEFINITIONAL AMENDMENTS.**

Section 2302(a)(2) of title 5, United States Code, is amended—

(1) in subparagraph (B)(ii), by striking "and" at the end;

(2) in subparagraph (C)(iii), by striking the period at the end and inserting "; and"; and

(3) by adding at the end the following:

"(D) 'disclosure' means a formal or informal communication or transmission, but does not include a communication concerning policy decisions that lawfully exercise discretionary authority unless the employee or applicant providing the disclosure reasonably believes that the disclosure evidences—

"(i) any violation of any law, rule, or regulation; or

"(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.".

**SEC. 103. REBUTTABLE PRESUMPTION.**

Section 2302(b) of title 5, United States Code, is amended by amending the matter following paragraph (12) to read as follows: "This subsection shall not be construed to authorize the withholding of information from Congress or the taking of any personnel action against an employee who discloses information to Congress. For purposes of paragraph (8), (i) any presumption relating to the performance of a duty by an employee whose conduct is the subject of a disclosure as defined under subsection (a)(2)(D) may be rebutted

Determination.

Copy from re:SearchTX

By: Reynolds                                      H.B. No. 3893

A BILL TO BE ENTITLED

AN ACT

Relating to the protection of whistleblowers, accountability in public and private sectors, and penalties for retaliatory actions.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  SHORT TITLE.

This Act may be cited as the "Whistleblower Protection and Accountability Act of Texas."

SECTION 2.  PURPOSE.

The purpose of this Act is to:

1. Strengthen protections for whistleblowers who report fraud, corruption, unlawful activities, or violations of public trust;

2. Deter retaliation against whistleblowers through civil and criminal penalties;

3. Promote transparency and accountability in government entities, law enforcement, and private-sector organizations.

SECTION 3.  DEFINITIONS.

For the purposes of this Act, the following definitions apply:

1. Whistleblower - An employee, contractor, or volunteer who reports misconduct, fraud, corruption, safety violations, or unlawful activities in good faith.

2. Retaliation - Any adverse employment action,

1

Copy from re:SearchTX

including termination, demotion, suspension, harassment, blacklisting, pay reduction, or other forms of discrimination.

3. Protected Disclosure - A good faith communication regarding misconduct reported to a supervisor, compliance officer, oversight body, law enforcement, or an elected official.

SECTION 4. SCOPE OF COVERAGE.

This Act applies to:

1. Public Sector Employees – State, county, municipal, and law enforcement personnel.

2. Private Sector Employees - Employees of businesses and nonprofit organizations operating in Texas.

3. Contractors and Volunteers - Individuals performing services for an employer under contract or as unpaid personnel.

SECTION 5. PROHIBITED RETALIATION.

(a) No employer, agency, or organization may engage in retaliation against a whistleblower.

(b) Retaliation includes, but is not limited to:

1. Termination, suspension, or demotion;

2. Pay reduction or denial of benefits;

3. Workplace harassment or the creation of a hostile work environment;

4. Blacklisting or any act that harms future employment opportunities.

(c) Employers violating this provision may be subject to criminal liability under Texas Penal Code § 39.06 (Misuse of Official Information) and civil liability under Chapter 554, Texas

2

Copy from re:SearchTX

Government Code (Whistleblower Protection Act).

SECTION 6.   WHISTLEBLOWER PROTECTIONS.

(a)   Confidentiality: Whistleblower identities shall remain confidential unless disclosure is required by law.

(b)   Remedies for Retaliation:

1.   Reinstatement to the same or equivalent position;

2.   Compensation for lost wages, benefits, and emotional distress;

3.   Punitive damages and reimbursement of legal fees.

SECTION 7.   MANDATORY REPORTING REQUIREMENTS.

(a)   All employers in Texas shall establish:

1.   Internal procedures for whistleblower disclosures;

2.   Mandatory notification of employee rights under this Act;

3.   Supervisor and HR personnel training on handling whistleblower complaints.

SECTION 8.   TEXAS WHISTLEBLOWER OVERSIGHT COMMISSION (TWOC).

(a)   The Texas Whistleblower Oversight Commission (TWOC) is hereby established as an independent body to:

1.   Receive, investigate, and mediate whistleblower complaints;

2.   Recommend penalties for retaliatory actions;

3.   Require annual reports from organizations detailing whistleblower disclosures and remedial actions taken.

SECTION 9.   TRANSPARENCY IN PUBLIC ENTITIES.

All Texas government agencies, including constables'

3

Copy from re:SearchTX

H.B. No. 3893

offices, shall:

(a) Submit quarterly budget reports disclosing funding allocations for specialized units;

(b) Include whistleblower reports and resolutions for public review under the Texas Public Information Act (Chapter 552, Texas Government Code).

SECTION 10. LAW ENFORCEMENT ACCOUNTABILITY.

(a) No law enforcement agency, including constables' precincts, may hire an officer previously dismissed for:

1. Official misconduct under Texas Penal Code § 39.02 (Abuse of Official Capacity);

2. Civil rights violations under Texas Penal Code § 39.03 (Official Oppression).

(b) Agencies must conduct thorough background checks and periodic personnel reviews of all officers.

SECTION 11. LEGAL RECOURSE FOR WHISTLEBLOWERS.

(a) Whistleblowers may file civil lawsuits against employers within three (3) years of retaliatory actions.

(b) Lawsuits may include:

1. Compensation for economic and emotional damages;

2. Recovery of legal fees and punitive damages;

3. Injunctive relief restoring employment or benefits.

SECTION 12. AMENDMENTS TO TEXAS WHISTLEBLOWER ACT.

(a) Expansion of Protections:

1. Extends whistleblower protections to private-sector employees;

4

Copy from re:SearchTX

2. Includes explicit safeguards for reporting constitutional and civil rights violations;

3. Aligns Texas laws with federal whistleblower protections under the Whistleblower Protection Enhancement Act (WPEA).

SECTION 13. PENALTIES FOR RETALIATION.

(a) Civil Penalties: Employers guilty of retaliation may face:

1. Fines up to $500,000 per violation;

2. Compensatory damages for affected whistleblowers.

(b) Criminal Penalties:

3. Any employer obstructing a whistleblower disclosure may be charged under Texas Penal Code § 36.06 (Obstruction or Retaliation) and face imprisonment.

SECTION 14. ESTABLISHMENT OF WHISTLEBLOWER SUPPORT FUND.

(a) A state-funded program shall provide:

1. Financial assistance for whistleblowers facing legal proceedings;

2. Counseling services for whistleblowers and their families.

SECTION 15. ENFORCEMENT.

(a) The Texas Attorney General's Office shall oversee enforcement of this Act;

(b) The Texas Whistleblower Oversight Commission (TWOC) shall monitor compliance and publish an annual report to the Texas Legislature.

SECTION 16. EFFECTIVE DATE.

5

Copy from re:SearchTX

H.B. No. 3893

This Act shall take effect on January 1, 2025.

SECTION 17.  SEVERABILITY.

If any provision of this Act is held invalid, the remainder of the Act shall not be affected and shall continue in full force and effect.

6

Copy from re:SearchTX

Exhibit H - OAG Whistleblower Sign

**NOTICE**

**The Texas Whistleblower Act** protects public employees who make good faith reports of violations of law by their employer to an appropriate law enforcement authority. An employer may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who makes a report under the Act.

Copy from re:SearchTX



# CONTRACT MANAGEMENT HANDBOOK



Contract Management Handbook – Department of Information Resources

Copy from re:SearchTX

Exhibit I2 - DIR Contract Management Handbook Page 2

The information contained in this Contract Management Handbook complies with Texas Government Code 2261.256, which requires each state agency to develop and comply with purchasing accountability and risk analysis procedures. This handbook identifies contracts that require enhanced contract monitoring or immediate attention of contract management staff and establishes clear levels of purchasing accountability and staff responsibilities related to purchasing.

Additionally DIR contract procedures are drafted with the State of Texas Contract Management Guide (hereinafter the "Guide") as a reference and with the intent to use as much of the "best practices" contained therein as applies to the Cooperative, Enterprise and internal contracts that DIR establishes. To the extent any procedures are at variance with the Contract Management Guide, there are practical reasons for the variance. Most of the Cooperative Contracts are commodity contracts as opposed to a deliverable-based project type contracts. For example, the typical DIR Cooperative Contract allows a Customer to place an order directly with the Vendor, the Vendor ships the item or items to the Customer, and invoicing and payment ensue. Therefore, some of the steps outlined in the Guide do not apply or are not essential to a successful contract of this variety. Finally, DIR uses a template as the Contract. These templates have been carefully drafted and are not generally open to extensive renegotiation with Vendors. The few alternative language items allowed are highlighted as exceptions to the standard language in the contract document. The template is attached to each solicitation so that Vendors understand DIR's contract terms and conditions when developing their proposals. DIR has found this disclosure of the Contract as a part of the procurement process speeds the contract award process.

Copy from re:SearchTX

## Accountability through risk analysis

Planning is the first and a very important step in Contract Management. Better planning results in a more successful Contract. A well-formed solicitation document results in better responses and more competition. A clear statement of demand/need and effective research gathering makes the Contracting Team more knowledgeable about the subject matter of a contract. Planning focuses the Contract Manager on who, why, what, how and when of the Procurement. *Who* establishes the Contract Management Team. *Why* helps to determine the need for a Procurement. *What* focuses on the Product or Service to be procured. *How* is the procurement method and the Contract model. *When* establishes the proper timeline.

According to the Guide, "each contract management initiative should include an executive sponsor, a contract manager, purchasing department staff and program staff to assist in the contract management process. The extent and degrees of executive sponsorship and participation should be directly related to the level of risk associated with the procurement."

These DIR Procedures state that the Contract Management team shall be composed of a Contract Manager, Enterprise or Cooperative Contracts Director, Contracts Attorney, Purchasing Staff, Chief Procurement Officer, and the Executive Director (or designee). Possible involvement by the Executive Director of the Department of Information Resources will be dependent on the contract initiative itself.

According to the Guide, risk management is an important step in the planning phase. In the planning phase, the DIR Contract Manager will conduct a certain amount of risk analysis and work to mitigate that risk by adhering to the procedures established in the DIR Contract Management Procedures.

Contract Demand/Need establishes the two types of Needs Assessment that DIR Contract Managers will deal with, internal and external. Internal demand would be expressed through DIR Management. External demand would be expressed through outside forces, Vendors or Customers.

Success of resulting contracts is based on effective research performed up front during the planning stage. The DIR Procedures identify the method for gathering research such as description of the product/service, how the product or service is sold, who sells the product or service, pricing offered to other states, potential use by Customers and potential cost avoidance.

According to the Guide, well-formed objectives will help keep the contracting process focused and on track. Any resulting recommendations from the New Product Service Request initiated

Copy from re:SearchTX

in the DIR Procedures become DIR Contract Management contracting objectives and purpose.

In addition to the research DIR Contracts Managers will rely on the experience of having done these types of procurements repeatedly. DIR staff also review solicitations and contracts put into place by other states, other Texas state cooperatives, and the federal government.

For the Cooperative Contracts, the standard DIR business model is a direct model, whereby customers deal directly with the Vendors. DIR puts the Contract into place and the Customers work directly with the Vendor under the terms of the Contract to obtain products and services.

The Guide indicates that during the Planning stage a cost estimate should be developed. Based on the research done in the Planning stage, the Contract Manager should have estimates on how much the product/service should cost Customers. Since DIR Cooperative Contracts are awarded on an indefinite quantity basis with no minimum guarantees of any purchase, DIR does not perform this cost estimate exercise as an internal cost item. However DIR does perform cost avoidance calculations for its Contracts, which benchmarks DIR prices against pricing achieved by other purchasing cooperatives and demonstrates savings to the taxpayers generated by use of the DIR Contracts. Deliverables Based Information Technology Services Contracts.

## Enhanced Monitoring of Contracts

The DIR Contract Management staff determine which contracts require enhanced monitoring through the use of a risk assessment matrix (Appendix A). In making the determination, the matrix considers factors such as:

- The contract type;
- The contract amount;
- Risk;
- Special circumstances of the project; and
- Scope of goods or services provided.

Enhanced contract monitoring reports will be provided to the Chief Procurement Officer and, when applicable, the Executive Director or the DIR Board.

## Purchasing Accountability and Responsibilities

The following are a list of the responsibilities of staff across the agency regarding purchases. Individuals authorized to obligate the agency are identified in DIR's Delegation Matrix for Contracts and Amendments (Appendix B)

Copy from re:SearchTX

### Purchasing Staff

- Establish standard DIR procedures for procurement of products and services in accordance with state statutes, Comptroller rules, and DIR policies.
- Within the agency purchasing process, there are built-in separation of duties and additional authorizations.
- Perform all departmental purchases, or authorize the delegation thereof.
- The Purchaser works independently to procure routine agency needs and consults with other agency personnel with relevant expertise for more complex purchases.
- The Purchaser plans, organizes, coordinates, and prepares specifications for procurement documents.
- Assist DIR employees with the various types of purchases.

### Contract Staff

- Establish standard DIR procedures for procurement of products and services in accordance with state statutes, Comptroller rules, and DIR policies.
- Within the agency Contracting process, ensure there are built in separation of duties and multiple levels of authorizations
- Perform all departmental contracting functions in accordance with DIR policies.
- The Contract Staff works independently to procure more complex purchases.
- The Contract Staff handles all aspects of the contract process.

### All DIR Employees

- Anticipate needs well in advance to allow time for purchase requests to be processed and products to be delivered.
- Ensure that products and services are requisitioned according to agency guidelines.
- Ensure all documents are handled by the appropriate procurement or contract staff, and that no obligation is made outside those who are authorized on behalf of the agency to make such obligations.

Copy from re:SearchTX

**Requesting department is** responsible for contract initiation including:

- Consulting with the Chief Procurement Office and the Office of the General Counsel when necessary;
- Identifying needs;
- Planning;
- Preparing risk assessment with assistance of Contract Manager (reference **Appendix A**);
- Developing detailed statement of work, deliverables and performance measures;
- Identifying DIR Policies that apply to services being performed;
- Assisting Contracts Department with contract development; and
- Assisting with contract negotiations, when needed.

**Requesting department,** after contract has been awarded, will:

- Apply specialized knowledge, skills, and techniques to support program activities;
- Administer and manage daily operations of required services established in contract. The three elements managed are cost, time, and scope;
- Manage performance as required in the contract. May require involvement of Contract Manager should a dispute arise;
- Ensure provider meets required performance objectives defined in the contract;
- Oversee delivery and receipt of services;
- Analyze invoices for contractual compliance;
- Certify services were performed and deliverables met; and
- Approve invoice for payment.

Copy from re:SearchTX

## Contract Management

**All contracts must be processed by the Contracts Department.** All DIR divisions are required to consult with the Contracts Department when a contract is anticipated.

1. **Contract Department** handles contract management. **Contract Manager** shall:
   a. Conduct competitive solicitation processes as required, to select vendors/service providers based on best value standards;
   b. Check Comptroller's Vendor Performance Tracking System (VPTS) to identify past performance issues before awarding contract or PO;
   c. Process all contract documents and amendments including renewals;
   d. Obtain required documentation;
   e. Ensure appropriate terms, conditions and clauses are in each contract;
   f. Negotiate final terms with other party;
   g. Prepare and finalize contract documents;
   h. Obtain legal review;
   i. Obtain reviews and approvals from all stakeholders. Contract approval is accomplished by routing through CAPPS workflow;
   j. Obtain signatures from all required parties. Contract documents are routed for signature in accordance with DIR Purchase Approval Matrix (Appendix B);
   k. Enforce contract terms and manage actions of parties as governed by the terms of the contract;
   l. Ensure DIR receives the services contracted for, at the quality level expected, at the time agreed to and for the price that was negotiated.

2. Ensure contracts are properly awarded in accordance with legal and statutory requirements and that the highest ethical standards are followed at all times;

3. Ensure integrity of DIR is maintain in all its business dealings;

4. Meet Certified Texas Contracts Manager (CTCM) standards; and

5. Certify all contracts have been entered into in accordance with the rules, statutes and Contract Management Guidelines established by Comptroller of Public Accounts.

Copy from re:SearchTX

## DIR Risk Assessment Matrix (RAM)

The DIR Risk Assessment Matrix (RAM) is a tool used by contract staff to analyze contracts to identify areas of risk (the potential for loss, harm, or damage may occur due to errors or problems associated with contractors' performance). This tool also allows staff to identify specific areas that may need accelerated monitoring.

This tool should be used prior to: 1) awarding contracts from RFP/RFO proposals; 2) entering into new contracts with vendors; and 3) renewing existing contracts.

Risk factors are indicators that determine the risk of the contract or project objectives not being met.

The risk factors included in the DIR RAM include:

1 Type of Contract purchase – what type of contract solicitation – competitive/ non- competitive, Master Cooperative Contract; Enterprise Contract
2 Payment Type/Structure – the type of budget included in the contract;
3 The dollar amount of the contract;
4 Essential Agency Function;
5 Stability and Experience of Contractor's Key Management Staff;
6 Percentage of Services Performed by Subcontractors;
7 Compliance History;
8 Past Programmatic Performance;
9 Audit Outcomes;
10 Number of years in business;
11 Performance Measures;
12 Deliverables; and
13 Greater than $1 million dollars – amount of financial reports required.

Additional risk factors should be added when appropriate for a contract.

Rate each contractor on the risk elements using the range of Low (score 1-3), Medium (Score 4-7), or High (Score 8-10). The form will add up the scores in the Overall Risk Score field. The range for the Overall Risk Scores are:

Low risk procurement:        0 – 39
Medium risk procurement:    40 - 91
High Risk Procurement:    92 – 130

Copy from re:SearchTX

9 of 13

## APPENDIX A

The RAM should be completed for each new solicitation, however risk should continue to be assessed on an on-going basis throughout the contract period. A new RAM should be completed when risk conditions undergo a substantial change (e.g., contractor's management or ownership changes). Contract management and monitoring activities should be adjusted to focus on the riskiest contractors during the entire contract period.

| # | Risk Factor | Risk Level - LOW | Risk Level - MEDIUM | Risk Level - HIGH | Justification/Comments | Risk Level Score |
|---|---|---|---|---|---|---|
| | | Score 1-3 | Score 4-7 | Score 8-10 | | |
| **Pre-set Risk Factors** | | | | | | |
| 1 | Type of Contract Purchase | Interagency, MOU or Interlocal | Contract Less than $25K | Consulting, Emergency, Sole Source, Proprietary, or Construction > $25K | | |
| 2 | Payment Type/ Structure | Fixed price or contingency | Rate or Fee for Services | Cost Reimbursement | | |
| 3 | Total Dollar Amount | Less than $100K | $100K to $1 million | Over $1 million | | |
| 4 | Essential Agency Function | Contract services are not critical for meeting DIR's mission | Contract services are moderately essential to DIR's mission | Contract services are critical to DIR mission | | |
| 5 | Stability & Experience of Contractor's Key Management Staff | No recent change and significant experience | No recent change, but not significant experience; or recent change but significant experience | Recent change and not significant experience | | |
| 6 | Percentage of Services Performed by Subcontractors | No Subcontractor involvement | Subcontractors account for 50% or less of contract work performed | Subcontractors account for more than 50% of contract work performed | | |
| 7 | Compliance History | No issues of non-compliance | Moderate instances of non-compliance/ no history - never contracted with DIR before | Substantial finding of non-compliance | | |

Copy from re:SearchTX

| 8 | Past Programmatic Performance | Met or exceeded all output and outcome measures | Met 75% or more of output and outcome measures | Met less than 75% of output and outcome measures | | |
|---|---|---|---|---|---|---|
| | | | **Risk Factors - Financial** | | | |
| 9 | Audit Outcomes | No audit required or no issues or finding in audit(s) | Moderate issues or findings in audit(s) | Substantial issues or findings in audit(s) | | |
| 10 | Number of years in business | More than 5 years | 1 year to 5 years | Less than 1 year | | |
| | | | **Risk Factors - Contract** | | | |
| 11 | Performance Measures | Contract contains multiple defined and measurable performance measures | Contract contains at least one clearly defined or measurable performance measure | No performance measures included in contract | | |
| 12 | Deliverables | Contract contains multiple deliverables that are clearly defined | Contract contains at least one clearly defined deliverable | No deliverables included in contract | | |
| 13 | Greater than $1 Million Financial Reports required | Greater than $1 Million Financial reports required | Greater than $1 Million Financial reports required | Greater than $1 Million No Financial reports required | | |

| | | | | **Overall Risk Score:** | 0 |
|---|---|---|---|---|---|
| | | | | | |
| | | | | **Low risk procurement:** | 0-39 |
| | | | | **Medium risk procurement:** | 40-91 |
| | | | | **High risk procurement:** | 92-130 |

Copy from re:SearchTX

**Summary of Risk Assessment:**

**Additional Risks:**

**Risk Mitigation Plan:**

Copy from re:SearchTX

Exhibit I12 - DIR Contract Management Handbook Page 12

**APPENDIX B**

### TEXAS DEPARTMENT OF INFORMATION RESOURCES APPROVAL MATRIX

| Value of the Contract/Agreement/Work Order/Statement of Work (Contract) or Amendment Amount | Signature Authority | Examples of Contracts/Agreements |
|---|---|---|
| $1 Million and greater | Executive Director* | Enterprise Contracts and Amendments ($1M and >)<br>Statements of Work ($1M and >)<br>Service Agreements ($1M and >)<br>Interagency Contracts (IAC)s ($1M and >)<br>Audit Contracts<br>Outside Counsel Contracts |
| $0 to $999,999 | CTS Division Director | Enterprise Contracts and Amendments (<$1M)<br>CTS, CCTS and NSOC Service Agreements<br>CTS, CCTS and NSOC Statements of Work<br>CTS, CCTS, and NSOC IACs with state agencies |
| $0 to $999,999 | DCS Division Director* | Enterprise Contracts and Amendments (<$1M)<br>DCS Service Agreements<br>DCS Statements of Work<br>DCS IACs with state agencies |
| $0 to $999,999 | Chief Operations Officer* | PPMO Statements of Work |
| $0 to $999,999 | Deputy Executive Director* | Enterprise Contracts and Amendments (<$1M)<br>Audit Contracts (<$1M)<br>Outside Counsel Contracts (<$1M)<br>Trademark and other IP Documents (<$1M) |
| $0 to $999,999 | CISO, Security Division Director* | Enterprise Contracts and Amendments (<$1M)<br>Security Service Agreements<br>Security Statements of Work<br>Security IACs with state agencies |
| $0 to $999,999 | IRM, Digital Government Division Director* | Enterprise Contracts and Amendments (<$1M)<br>Texas.gov, ITS, and ISO/COOP Service Agreements<br>Texas.gov, ITS, and ISP/COOP Statements of Work<br>Texas.gov, ITS, and ISO/COOP IACs with state agencies |
| $0 to $999,999 | Chief Financial Officer* | Enterprise Contracts and Amendments (<$1M)<br>Facilities, Finance, Purchasing and HR Service Agreements<br>Facilities, Finance, Purchasing and HR Statements of Work<br>Facilities, Finance, Purchasing and HR IACs with state agencies |
| $0 to $999,999 | Chief Technology Officer* | Enterprise Contracts and Amendments (<$1M)<br>TPPG and ESS Service Agreements<br>TPPG and ESS Statements of Work<br>TPPG and ESS IACs with state agencies |
| $0 to $999,999 | Chief Procurement Office* | Enterprise Contracts and Amendments (<$1M)<br>Cooperative Contracts<br>Enterprise and Cooperative Contract Amendments to exercise a contract term extension<br>Agency Statements of Work |

Copy from re:SearchTX

| Value of the Contract/Agreement/Work Order/Statement of Work (Contract) or Amendment Amount | Signature Authority | Examples of Contracts/Agreements |
|---|---|---|
| $0 to $999,999 | Public Affairs Director* | Public Affairs Contracts and Amendments (<$1M)<br>Public Affairs Service Agreements<br>Public Affairs Statements of Work |

* This delegation of signature authority does not eliminate the requirement to have CTPM/CTCM review nor eliminate the requirement to have the Chief Procurement Officer approve prior to execution of the Contract/Agreement/Service Agreement/Statement of Work or Amendment. IAC includes any type of customer agreement for the program area.

Copy from re:SearchTX



**Texas Department of Information Resources**

## Request for Offer (RFO)

## Cybersecurity Products and Services

## DIR-CPO-TMP-550

| Class | Item(s) |
|---|---|
| 204-29 | *Data/File Security Hardware/Software, to Include Encryption |
| 208-55 | *Inventory Management Software, Microcomputer |
| 208-78 | *Redaction, De-identification Software |
| 208-81 | *Software for Computer Software Training, Microcomputer |
| 208-88 | *Software, Monitoring, Microcomputer |
| 208-89 | *Threat Alert Software, Microcomputer |
| 208-90 | *Utilities: Back-up, Batch File, Firewall, Menus, Operating System, Network Operating System, Network Management, Recovery, Screen, Security, Virus Protection... |
| 209-24 | *Biometric Authentication System Software, Mainframes and Servers |
| 209-91 | *Utilities: Back-up, Batch File, Menus, Network Management, Operating System, Recovery, Screen, Security, Virus Protection, etc., Mainframes and Servers |
| 838-34 | *Communication Security Systems |
| 918-93 | *Security and Safety Consulting |
| 920-37 | *Networking Services, Including Installation, Security, and Maintenance |
| 990-48 | *Identity Theft Protection and Data Security Services |
| 990-28 | *Document Recovery Services, Disaster, Including Paper Documents, Film, Tapes... |

# Issued: December 14, 2020

## Version 1.0

## Responses Due: January 21, 2021 02:00 PM (CT)

Copy from re:SearchTX

### 3.4.3 HUB Resources Available

A list of certified HUBs is available on the Texas Comptroller of Public Accounts (CPA) Website at: https://mycpa.cpa.state.tx.us/tpasscmblsearch/index.jsp. For additional information, contact the CPA's HUB program office at StatewideHUBProgram@cpa.texas.gov. If Respondent knows of any businesses that may qualify for certification as a HUB, they should encourage those businesses to contact the CPA HUB program office.

## 3.5. Successful Respondent Qualifications

### 3.5.1 Authorized Successful Respondents

Successful Respondents who propose to this RFO must be one of the following:

(a) Successful Respondent will sell directly to Customers through a Co-op Contract. Any proposing Successful Respondent who is not the Manufacturer/Publisher must supply a signed letter from the Manufacturer/Publisher certifying that Successful Respondent is an authorized reseller of Manufacturer's/Publisher's products to the agencies and political subdivisions of the State, including institutions of higher education, and may sell such products under the terms and conditions of the DIR Contract, in support of Successful Respondent's proposal. Signed letters of authorization must be submitted with Successful Respondent's proposal. Failure to supply the letter may result in elimination of the related proposal from the solicitation process.

(b) Successful Respondent will execute a Co-op Contract with DIR and designate one or more qualified dealers or resellers or Order Fulfillers to sell directly to Customers on its behalf. Successful Respondent may also sell directly to Customers. Successful Respondents proposing to this RFO must supply a signed letter from the Manufacturer/Publisher certifying that Successful Respondent is an authorized reseller of Manufacturer's/Publisher's products to the agencies and political subdivisions of the State, including institutions of higher education, and may sell such products under the terms and conditions of the DIR Contract, in support of Successful Respondent's proposal. Signed letters of authorization must be submitted with Successful Respondent's proposal. Failure to supply the letter may result in elimination of the related proposal from the solicitation process.

RFO DIR-CPO-TMP-550 Cybersecurity Products and Services                                    19

Copy from re:SearchTX

### 3.5.2 Federal Requirements

(a) State agencies are prohibited from doing business with terrorists and terrorist organizations. Any Respondent listed in the prohibited Vendor list authorized by Executive Order #13224, *"Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism"*, published by the United States Department of the Treasury, Office of Foreign Assets Control (Terrorism List) shall not be awarded a Contract as a result of this RFO. Any Respondent awarded a Contract must agree that if at any time during the term of the Contract the Successful Respondent is listed on the Terrorism List, the Successful Respondent shall promptly notify DIR. As part of DIR's contract management, periodic checks will be performed to ensure Contract Holder remains in compliance with these Federal Requirements. DIR shall have the absolute right to terminate the Contract without recourse in the event Successful Respondent becomes listed on the Terrorism List.

(b) Should any Contract Holder become suspended or debarred from doing business with the federal government as listed in the *System for Award Management (SAM)* maintained by the General Services Administration, the Contract Holder's Contract will be terminated without recourse.

(c) Successful Respondent shall comply with the requirements of the Immigration and Reform Act of 1986, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), and the Immigration Act of 1990 (8 U.S.C.1101, et seq.) regarding employment verification and retention of verification forms for any individual(s) hired on or after the effective date of the 1996 Act who will perform any labor or services under this Contract.

(d) The **Education Department of General Administrative Regulations (EDGAR)** are the federal regulations that govern all federal grants awarded by the U.S. Department of Education on or after December 26, 2014. EDGAR encourages the use of cooperative agreements for procurement or use of common or share goods and services in order to foster greater economy and efficiency. DIR uses an open market competitive procurement process to award contracts as required by Texas Government Code 2054 and 2157. If Successful Respondent provides evidence of its EDGAR compliance that DIR to the best of information and belief, finds to be satisfactory, then DIR may identify Successful Respondent as certifying that all or a

RFO DIR-CPO-TMP-550 Cybersecurity Products and Services 20

Copy from re:SearchTX

portion of Successful Respondent's listings are EDGAR eligible, and DIR may then permit Successful Respondent to so identify all or part of its offerings on Successful Respondent's DIR website. In such cases, upon request from eligible Customer, Successful Respondent must complete EDGAR certification affirmation forms to satisfy Customer requirement.

### 3.5.3 Successful Respondent Performance and Debarment

In accordance with 34 TAC, Chapter 20, Subchapter C, Respondent that is debarred from doing business with the State of Texas will not be awarded a Contract. The list of debarred vendors is located on the CPA Web site at:

https://comptroller.texas.gov/purchasing/programs/vendor-performance-tracking/debarred-vendors.php

### 3.5.4 Required Respondent and Subcontractor Current and Former State Employee Disclosures

Respondent shall disclose, for itself and on behalf of all of its Subcontractors, in its response to **Exhibit A Respondent Information, Section 12 Respondent and Subcontractor Conflict of Interest Disclosure**, all of the following:

1. Any current or former employees of Respondent who will spend twenty percent (20%) or more of their time on the Contract and are current or former employees of DIR within the past five (5) years;

2. Any proposed Respondent personnel assigned to work directly on the Contract twenty percent (20%) or more of their time who are related within two (2) degrees of consanguinity of any current or former employees of DIR. Disclosure of former state employees may be limited to the last five (5) years; and

3. Respondent will certify that they are in compliance with Texas Government Code, Title 6, Subtitle B, Section 669.003, relating to contracting with the executive head of a state agency. If Section 669.003 applies, Respondent will complete the following information in order for the Response to be evaluated: Name of Former Executive, Name of State Agency, Date of Separation for State Agency, Position with Respondent, and Date of Employment with Respondent.

### 3.5.5 Cybersecurity Training

In accordance with Section 2054.5192, Texas Government Code, for any contract with a

Copy from re:SearchTX



Contract #: AR3764

# STATE OF UTAH COOPERATIVE CONTRACT

1. **CONTRACTING PARTIES:** This contract is between the Utah Division of Purchasing and the following Contractor:

   Tyler Technologies Inc.
   _Name_

   One Tyler Way
   _Street Address_

   | Yarmouth | Maine | 04096 |
   |---|---|---|
   | _City_ | _State_ | _Zip_ |

   <u>Vendor #</u> VC248808  <u>Commodity Code #:</u> 920-05  <u>Legal Status of Contractor:</u> For-Profit Corporation

   <u>Contact _Name:_</u> Laura Calcutta  _Phone Number:_ +1 800-800-2581  _Email:_ laura.calcutta@tylertech.com

2. **CONTRACT PORTFOLIO NAME:** Platform Management; Master Data Management.

3. **GENERAL PURPOSE OF CONTRACT:** Citizen Engagement Platform.

4. **PROCUREMENT:** This contract is entered into as a result of the procurement process on FY2021, Solicitation# KM21-47.

5. **CONTRACT PERIOD:** Effective Date: <u>Tuesday, April 19, 2022</u>. Termination Date: <u>Monday, September 14, 2026</u> unless terminated early or extended in accordance with the terms and conditions of this contract. Renewal Options: two 1 year renewal options.

6. **Administrative Fee (if any):** One Quarter of One Percent (or 0.25%).

7. **Prompt Payment Discount Details (if any):** Refer to Attachment C.

8. **ATTACHMENT A:** NASPO ValuePoint Master Agreement Terms and Conditions
   **ATTACHMENT B:** Scope of Work
   **ATTACHMENT C:** Price Schedule
   **ATTACHMENT D:** End User License Agreements (as applicable)

   **Any conflicts between Attachment A and the other Attachments will be resolved in favor of Attachment A.**

9. **DOCUMENTS INCORPORATED INTO THIS CONTRACT BY REFERENCE BUT NOT ATTACHED:**
   a. All other governmental laws, regulations, or actions applicable to the goods and/or services authorized by this contract.
   b. Utah Procurement Code, Procurement Rules, and Contractor's response to solicitation #KM21-47.

10. Each person signing this Agreement represents and warrants that he/she is duly authorized and has legal capacity to execute and deliver this Agreement and bind the parties hereto. Each signatory represents and warrants to the other that the execution and delivery of the Agreement and the performance of each party's obligations hereunder have been duly authorized and that the Agreement is a valid and legal agreement binding on the parties and enforceable in accordance with its terms.

    IN WITNESS WHEREOF, the parties sign and cause this contract to be executed. Notwithstanding verbal or other representations by the parties, the "Effective Date" of this Contract shall be the date provided within Section 5 above.

| **CONTRACTOR** | | **DIVISION OF PURCHASING** | |
|---|---|---|---|
| _Hannah May_ | 04/20/2022 | _[signature] LPD 19_ | 04/20/2022 |
| Hannah May (Apr 20, 2022 11:41 EDT) | | Nick Hughes (Apr 20, 2022 09:48 MDT) | |
| Contractor's signature | Date | Director, Division of Purchasing | Date |

Hannah May | Senior Corporate Attorney
Type or Print Name and Title

Internal Contract Tracking #: AR3764     Solicitation #: KM21-47     Vendor #: VC248808

Copy from re:SearchTX



Copy from re:SearchTX

| | | **Tyler Technologies, Inc.** | |
| | | **APPENDIX C – PRICING INDEX** | |
| | | **DIR-CPO-5274** | |
| | | **Software (COTS) and Related Services** | |

| Brand | Category | DISCOUNT OF MSRP/List Price | Unit of Measure |
|---|---|---|---|
| **1-Software** | | | |
| Tyler Technologies | Case Management Complete Platforms and Porfolio Suites (SaaS or Software License) | 19.50% | Per User |
| Tyler Technologies | Justice Analytics Suite, CJIS Enterprise Data Platform | 5.00% | Population Based Pricing |
| **2. Related Services** | | | |
| Tyler Technologies | Managed Services - Silver, Gold, Platimum and Platimum Plus | 19.50% | Annualy |
| Tyler Technologies | Set Up Fee ( One time cost) | 19.50% | One Time Fee |
| Tyler Technologies | Custom Reporting Services | 19.50% | Per Configure Report |
| Tyler Technologies | Data Migration | 19.50% | Per Hour |
| Tyler Technologies | Implementation | 19.50% | Per Hour |
| Tyler Technologies | Training And Certification | 19.50% | Per User |
| Tyler Technologies | Certified Administrator Training | 19.50% | Per Class |
| Tyler Technologies | Certified Developer Training | 19.50% | Per Class |
| Tyler Technologies | Certified Implementation Consultant Training | 19.50% | Per Class |
| Tyler Technologies | Certified Report Engineer Training | 19.50% | Per Class |
| Tyler Technologies | Configuration Services by Role | 19.50% | Per Hour |
| Tyler Technologies | Maintenance and Support Gold, Platimum and Platimum Plus | 19.50% | Annualy |

Copy from re:SearchTX

**Tyler Technologies, Inc.**
**APPENDIX C – PRICING INDEX**
**DIR-CPO-5274**
**Software (COTS) and Related Services**

| Brand | Category | DISCOUNT OF MSRP/List Price | Unit of Measure |
|---|---|---|---|
| Tyler Technologies | Versa Maintenance Packages | 19.50% | Based on Customer Requirements |
| Tyler Technologies | Data Storage and Hosting Packages | 19.50% | Based on Customer Requirements |
| Tyler Technologies | Base annual Maintenance (20% of Base and Named User License Purchase Price) | 0.00% | 20% Calculated from Total Discounted Price |
| Tyler Technologies | Online Portal Module Base Year Maintenance (20% of Module Base and Named User License Purchase Price) | 0.00% | 20% Calculated from Total Discounted Price |
| Tyler Technologies | Analytics Module Base Year Maintenance (20% of Module Base and Named User License Purchase Price) | 0.00% | 20% Calculated from Total Discounted Price |
| **3. Turnkey Solutions** | | | |
| Turnkey solutions packages to be configure based on customers requirements and it will include but not limited to (Software and Services as listed above) | | 19.50% | Overall Package |

Copy from re:SearchTX

https://research.txcourts.gov/CourtRecordsSearch/ViewCasePrint/92023cd9c3d549c487193c479357710f

## Case Information

## SHAMAR BRADLEY vs. TEXAS DEPARTMENT OF INFORMATION RESOURCES

D-1-GN-24-009408

| Location | Case Category | Case Type | Case Filed Date | Judge | Case Status |
|---|---|---|---|---|---|
| Travis County - District Clerk | Civil - Employment | Other Employment | 11/20/2024 | 419TH, DISTRICT COURT | Open (Open) |

## Parties 2

| Type | Name | Nickname/Alias | Attorneys |
|---|---|---|---|
| Plaintiff | SHAMAR D BRADLEY | | Pro Se |
| Defendant | TEXAS DEPARTMENT OF INFORMATION RESOURCES | | DENVER BURRIS |

## Hearings 4

| Date/Time | Hearing Type | Judge | Location | Result |
|---|---|---|---|---|
| 12/18/2024 02:00 PM | Setting Date | | | |
| 1/22/2025 02:00 PM | Setting Date | | | |
| 2/7/2025 09:00 AM | Setting Date | | | |
| 2/18/2025 02:00 PM | Setting Date | | | |

## Events 91

| Date | Event | Type | Comments | Documents |
|---|---|---|---|---|
| 11/20/2024 | Filing | 5050DC | WHISTLEBLOWER RETALIATION COMPLAINT | ORIGINAL PETITION/APPLICATION (OCA).pdf |
| 11/20/2024 | Filing | 5402DC | STATEMENT OF INABILITY TO AFFORD PAYMENT OF COURT COSTS | STATEMENT OF INABILITY TO AFFORD COSTS.pdf |
| 11/20/2024 | Filing | 5050DC | WHISTLEBLOWER RETALIATION COMPLAINT | ORIGINAL PETITION/APPLICATION (OCA).pdf |
| 11/22/2024 | Filing | 5265DC | MOTION FOR INJUNCTIVE RELIEF | MOTION FOR INJUNCTIVE RELIEF.pdf |
| 11/22/2024 | Filing | 5415DC | CERTIFICATE OF SERVICE | CERTIFICATE OF SERVICE.pdf |
| 11/27/2024 | Filing | 5415DC | EVIDENCE IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF | EVIDENCE IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF.pdf |
| 12/2/2024 | Filing | 5415DC | WITNESS LIST | WITNESS LIST.pdf |
| 12/4/2024 | Filing | 5415DC | LETTER- SUBPOENA REQUESTS VIA PCT 5 | LETTER- SUBPOENA REQUESTS VIA PCT 5.pdf |
| 12/11/2024 | Filing | 5150DC | DIR S ORIGINAL ANSWER AND DEFENSES | DIR S ORIGINAL ANSWER AND DEFENSES.pdf |
| 12/13/2024 | Filing | 5150DC | DIR S PLEA TO THE JURISDICTION | DIR S PLEA TO THE JURISDICTION.pdf |
| 12/17/2024 | Filing | 5153DC | DIR S OPPOSITION TO PLAINTIFF S MOTION FOR INJUNCTIVE RELIEF AND | DIR S OPPOSITION TO PLAINTIFF S MOTION FOR INJUNCTIVE RELIEF AND REQUEST FOR TEMPORARY INJUNCTION.pdf |

Copy from re:SearchTX

| | | | REQUEST FOR TEMPORARY INJUNCTION | |
|---|---|---|---|---|
| 12/18/2024 | Hearing | Setting Date | - | - |
| 12/23/2024 | Filing | 5054DC | AMENDED WHISTLEBLOWER RETALIATION COMPLAINT | AMENDED WHISTLEBLOWER RETALIATION COMPLAINT.pdf |
| 1/9/2025 | Filing | 5153DC | DIR S AMENDED PLEA TO THE JURISDICTION | DIR S AMENDED PLEA TO THE JURISDICTION.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA | SIGN AND SEAL SUBPOENA.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA | SIGN AND SEAL SUBPOENA.pdf |
| 1/9/2025 | Filing | 5415DC | NOTICE OF HEARING ON TEXAS DEPARTMENT OF INFORMATION RESOURCES PLEA TO THE JURISDICTION | NOTICE OF HEARING ON TEXAS DEPARTMENT OF INFORMATION RESOURCES PLEA TO THE JURISDICTION.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA - JOHN DECHENE | SIGN AND SEAL SUBPOENA - JOHN DECHENE.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: MICHELLE DANG | SIGN AND SEAL SUBPOENA: MICHELLE DANG.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: WILLIAM FANG | SIGN AND SEAL SUBPOENA: WILLIAM FANG.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: WILLIAM FARAONE | SIGN AND SEAL SUBPOENA: WILLIAM FARAONE.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: TAWANNA HARRIS | SIGN AND SEAL SUBPOENA: TAWANNA HARRIS.pd |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: LISA JAMMER | SIGN AND SEAL SUBPOENA: LISA JAMMER.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: PATRICK LARSON | SIGN AND SEAL SUBPOENA: PATRICK LARSON.pd |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: EDUARDO MARQUIS | SIGN AND SEAL SUBPOENA: EDUARDO MARQUIS.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: AMANDA MONTGOMERY | SIGN AND SEAL SUBPOENA: AMANDA MONTGOMERY.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: SARAH PAYLOR | SIGN AND SEAL SUBPOENA: SARAH PAYLOR.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: BETH PERRY | SIGN AND SEAL SUBPOENA: BETH PERRY.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: BRIAN PURDY | SIGN AND SEAL SUBPOENA: BRIAN PURDY.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: RISHI SEEDAN | SIGN AND SEAL SUBPOENA: RISHI SEEDAN.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: GINA SMITH | SIGN AND SEAL SUBPOENA: GINA SMITH.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: ANN TEXTER | SIGN AND SEAL SUBPOENA: ANN TEXTER.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: TONY TRAN | SIGN AND SEAL SUBPOENA: TONY TRAN.pdf |
| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: GUY VACHON | SIGN AND SEAL SUBPOENA: GUY VACHON.pdf |

Copy from re:SearchTX

3 of 6

| 1/9/2025 | Filing | 4808DC | SIGN AND SEAL SUBPOENA: ISSAC WILCHER | SIGN AND SEAL SUBPOENA: ISSAC WILCHER.pdf |
|---|---|---|---|---|
| 1/9/2025 | Filing | 5415DC | EXECUTED SUBPOENA GUY VACHON | EXECUTED SUBPOENA GUY VACHON.pdf |
| 1/9/2025 | Filing | 5415DC | EXECUTED SUBPOENA EDUARDO MARQUIS | EXECUTED SUBPOENA EDUARDO MARQUIS.pdf |
| 1/9/2025 | Filing | 5415DC | EXECUTED SUBPOENA ISAAC WILCHER | EXECUTED SUBPOENA ISAAC WILCHER.pdf |
| 1/9/2025 | Filing | 5415DC | EXECUTED SUBPOENA TONY TRAN | EXECUTED SUBPOENA TONY TRAN.pdf |
| 1/9/2025 | Filing | 5415DC | EXECUTED SUBPOENA ANN TEXTER | EXECUTED SUBPOENA ANN TEXTER.pdf |
| 1/13/2025 | Filing | 5265DC | MOTION TO COMPEL DISCOVERY | MOTION TO COMPEL DISCOVERY.pdf |
| 1/13/2025 | Filing | 4893DC | EXECUTED SUBPOENA - MICHELLE DANG | EXECUTED SUBPOENA - MICHELLE DANG.pdf |
| 1/13/2025 | Filing | 4893DC | EXECUTED SUBPOENA - DEREK BLACKMAN | EXECUTED SUBPOENA - DEREK BLACKMAN.pdf |
| 1/13/2025 | Filing | 4893DC | EXECUTED SUBPOENA - TAWANA HARRIS | EXECUTED SUBPOENA - TAWANA HARRIS.pdf |
| 1/13/2025 | Filing | 4893DC | EXECUTED SUBPOENA - JOHN DECHENE | EXECUTED SUBPOENA - JOHN DECHENE.pdf |
| 1/13/2025 | Filing | 4893DC | EXECUTED SUBPOENA - SHARON BLUE | EXECUTED SUBPOENA - SHARON BLUE.pdf |
| 1/13/2025 | Filing | 4893DC | EXECUTED SUBPOENA - RISHI SEEDAN | EXECUTED SUBPOENA - RISHI SEEDAN.pdf |
| 1/13/2025 | Filing | 4893DC | EXECUTED RETURN SERVICE OF CITATION - TEXAS DEPARTMENT OF INFORMATION RESOURCES | EXECUTED RETURN SERVICE OF CITATION - TEXAS DEPARTMENT OF INFORMATION RESOURCES.pdf |
| 1/14/2025 | Filing | 5265DC | DIR S MOTION FOR CONTINUANCE | DIR S MOTION FOR CONTINUANCE.pdf |
| 1/14/2025 | Filing | 5265DC | MOTION TO DISMISS DEFENDANT S PLEA TO THE JURISDICTION AND MOTION FOR CONTINUANCE | MOTION TO DISMISS DEFENDANT S PLEA TO THE JURISDICTION AND MOTION FOR CONTINUANCE.pdf |
| 1/15/2025 | Filing | 4893DC | EXECUTED RETURN SERVICE OF CITATION - PERRY BETH | EXECUTED RETURN SERVICE OF CITATION - PERRY BETH.pdf |
| 1/15/2025 | Filing | 5265DC | MOTION FOR CONTEMPT | MOTION FOR CONTEMPT.pdf |
| 1/22/2025 | Filing | MOTION | TEXAS DEPARTMENT OF INFORMATION RESOURCES MOTION FOR A PROTECTIVE ORDER STAYING DISCOVERY | TEXAS DEPARTMENT OF INFORMATION RESOURCES MOTION FOR A PROTECTIVE ORDER STAYING DISCOVERY.pdf |
| 1/22/2025 | Filing | MOTION | MOTION TO DISMISS DEFENDANT S MOTION FOR A PROTECTIVE ORDER | MOTION TO DISMISS DEFENDANT S MOTION FOR A PROTECTIVE ORDER.pdf |

Copy from re:SearchTX

4 of 6

| 1/22/2025 | Filing | MOTION TO RETAIN/REINSTATE | MOTION FOR REINSTATEMENT | MOTION FOR REINSTATEMENT.pdf |
|---|---|---|---|---|
| 1/22/2025 | Hearing | Setting Date | - | - |
| 1/23/2025 | Filing | OTHER - NOTICE | NOTICE OF HEARING | NOTICE OF HEARING.pdf |
| 1/23/2025 | Filing | MOTION | AMENDED MOTION FOR CONTEMPT | AMENDED MOTION FOR CONTEMPT.pdf |
| 1/23/2025 | Filing | OTHER - NOTICE | DIR S AMENDED NOTICE OF HEARING | DIR S AMENDED NOTICE OF HEARING.pdf |
| 1/23/2025 | Filing | EXECUTED SERVICE | EXECUTED RETURN SERVICE OF SUBPOENA - SMITH, GINA | EXECUTED RETURN SERVICE OF SUBPOENA - SMITH, GINA.pdf |
| 1/23/2025 | Filing | EXECUTED SERVICE | EXECUTED RETURN SERVICE OF SUBPOENA - PURDY, BRIAN | EXECUTED RETURN SERVICE OF SUBPOENA - PURDY, BRIAN.pdf |
| 1/23/2025 | Filing | EXECUTED SERVICE | EXECUTED RETURN SERVICE OF SUBPOENA - FANG WILLIAMS | EXECUTED RETURN SERVICE OF SUBPOENA - FANG WILLIAMS.pdf |
| 1/23/2025 | Filing | EXECUTED SERVICE | EXECUTED RETURN SERVICE OF SUBPOENA - PAYLOR SARAH | EXECUTED RETURN SERVICE OF SUBPOENA - PAYLOR SARAH.pdf |
| 1/23/2025 | Filing | EXECUTED SERVICE | EXECUTED RETURN SERVICE OF SUBPOENA - FARAONE JIM | EXECUTED RETURN SERVICE OF SUBPOENA - FARAONE JIM.pdf |
| 1/23/2025 | Filing | EXECUTED SERVICE | EXECUTED RETURN SERVICE OF SUBPOENA - JAMMER LISA | EXECUTED RETURN SERVICE OF SUBPOENA - JAMMER LISA.pdf |
| 1/24/2025 | Filing | ORDER | ORDER DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF | ORDER DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF.pdf |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA - BRENT EDWARD WEBSTER, FIRST ATTORNEY GENERAL | SUBPOENA - BRENT EDWARD WEBSTER, FIRST ATTORNEY GENERAL.pdf |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA - HOLLY EILEEN TAYLOR | SUBPOENA - HOLLY EILEEN TAYLOR.pdf |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA SIGNED & SEALED - GERTRUDE "TRUDY" HUNTER STRASSBURGER | SUBPOENA SIGNED & SEALED - GERTRUDE "TRUDY" HUNTER STRASSBURGER.pdf |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA SIGNED & SEALED - JOSHUA TRAVIS "JOSH" RENO | SUBPOENA SIGNED & SEALED - JOSHUA TRAVIS "JOSH" RENO.pdf |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA SIGNED & SEALED - WARREN KENNETH "KEN" PAXTON JR. | SUBPOENA SIGNED & SEALED - WARREN KENNETH "KEN" PAXTON JR..pdf |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA SIGNED & SEALED - RALPH MICHAEL MOLINA | SUBPOENA SIGNED & SEALED - RALPH MICHAEL MOLINA.pdf |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA SIGNED & SEALED - RICKEY DURANTE | SUBPOENA SIGNED & SEALED - RICKEY DURANTE JONES.pdf |

Copy from re:SearchTX

📖 5 of 6

| | | | | |
|---|---|---|---|---|
| | | | JONES | |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA SIGNED & SEALED - JASON HUDSON | SUBPOENA SIGNED & SEALED - JASON HUDSON.pdf |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA SIGNED & SEALED - DEXTER EARL GILFORD | SUBPOENA SIGNED & SEALED - DEXTER EARL GILFORD.pdf |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA SIGNED & SEALED - KIMBERLEY ANN GDULA | SUBPOENA SIGNED & SEALED - KIMBERLEY ANN GDULA.pdf |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA SIGNED & SEALED - DELIA AILEEN GARZA | SUBPOENA SIGNED & SEALED - DELIA AILEEN GARZA.pdf |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA SIGNED & SEALED - MICHELLE E. FERNALD | SUBPOENA SIGNED & SEALED - MICHELLE E. FERNALD.pdf |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA SIGNED & SEALED - LESLIE WOOD DIPPEL | SUBPOENA SIGNED & SEALED - LESLIE WOOD DIPPEL.pdf |
| 1/27/2025 | Filing | OTHER - NOTICE | SUBPOENA SIGNED & SEALED - LUCIO ALONZO DEL TORO | SUBPOENA SIGNED & SEALED - LUCIO ALONZO DEL TORO.pdf |
| 1/29/2025 | Filing | SUBPOENA SIGNED & SEALED | SUBPOENA SIGNED & SEALED - JASON ANDERSON | SUBPOENA SIGNED & SEALED - JASON ANDERSON.pdf |
| 1/29/2025 | Filing | SUBPOENA SIGNED & SEALED | SUBPOENA SIGNED & SEALED - MICHAEL SHANE ATTAWAY | SUBPOENA SIGNED & SEAL - MICHAEL SHANE ATTAWAY.pdf |
| 1/29/2025 | Filing | SUBPOENA SIGNED & SEALED | SUBPOENA SIGNED & SEAL - BRENT DUPRE | SUBPOENA SIGNED & SEAL - BRENT DUPRE.pdf |
| 1/30/2025 | Filing | EXECUTED SERVICE | EXECUTED RETURN SERVICE - LARSON PATRICK | EXECUTED RETURN SERVICE - LARSON PATRICK.pdf |
| 1/30/2025 | Filing | OTHER - NOTICE | NOTICE OF HEARING | NOTICE OF HEARING.pdf |
| 1/30/2025 | Filing | MOTION | MOTION FOR CONTINUANCE | MOTION FOR CONTINUANCE.pdf |
| 2/5/2025 | Filing | MOTION | MOTION TO DISMISS FOR WANT OF PROSECUTION | MOTION TO DISMISS FOR WANT OF PROSECUTION.pdf |
| 2/5/2025 | Filing | RESPONSE | DIR S RESPONSE IN OPPOSITION TO PLAINTIFF S MOTION FOR CONTINUANCE | DIR S RESPONSE IN OPPOSITION TO PLAINTIFF S MOTION FOR CONTINUANCE.pdf |
| 2/6/2025 | Filing | MOTION | TEXAS DEPARTMENT OF INFORMATION RESOURCES MOTION FOR A PROTECTIVE ORDER STAYING DISCOVERY | TEXAS DEPARTMENT OF INFORMATION RESOURCES MOTION FOR A PROTECTIVE ORDER STAYING DISCOVERY.pdf |
| 2/7/2025 | Hearing | Setting Date | - | - |
| 2/18/2025 | Hearing | Setting Date | - | - |

Copy from re:SearchTX

1 of 49

D-1-GN-24-009408
**419TH DISTRICT COURT**

Filed in The District Court
of Travis County, Texas

NOV 2 0 2024　JG

At ___ H:40 ___ P.M.
Velva L. Price, District Clerk

| | | |
|---|---|---|
| SHAMAR D. BRADLEY | ) | IN THE ___ DISTRICT COURT |
| *Plaintiff* | ) | |
| *v.* | ) | TRAVIS COUNTY |
| | ) | |
| *TEXAS DEPARTMENT OF* | ) | |
| *INFORMATION RESOURCES* | ) | |
| *Defendant* | ) | |

---

**WHISTLEBLOWER RETALIATION COMPLAINT**

I
**BACKGROUND INFORMATION**

Shamar D. Bradley, MS, MBA, EIT ('Shamar') has been retaliated against in his employment as a Database Administrator II with the Texas Department of Information Resources at 300 W. 15th Street, Suite 1300, Austin, TX 78701, as a result of having reported criminal activity. The state governmental entity and persons that have retaliated against me are: Texas Department of Information Resources, Brian Hurdle, IT Operations Manager, and Lisa Jammer, Director of People and Culture Office.

II
**STATEMENT OF FACTS**

1. Between November 13th, 2023 and August 21st, 2024, Shamar was employed as a Database Administrator II with the Texas Department of Information Resources in Austin, Texas. His duties in that capacity require him to, among other things, coordinate the planning, development, maintenance, and monitoring of integrated database systems; evaluating and reviewing database architecture; and maintaining data integrity. Shamar had never received a written reprimand or notice of adverse action by any supervisor or manager.

Copy from re:SearchTX

11/27/2024 9:07 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-24-009408
Eva Fairchild

| | | |
|---|---|---|
| SHAMAR D. BRADLEY | ) | IN THE 419ᵗʰ DISTRICT COURT |
| *Plaintiff* | ) | |
| *v.* | ) | TRAVIS COUNTY |
| | ) | |
| *TEXAS DEPARTMENT OF* | ) | |
| *INFORMATION RESOURCES* | ) | |
| *Defendant* | ) | *Cause* NO. D-1-GN-24-009408 |

---

### EVIDENCE IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF

I
### LIST OF EXHIBITS

Exhibit A1 - Offer Letter 31OCT2023, Page 1 ............................................................. 5

Exhibit A2 - Offer Letter 31OCT2023, Page 2 ............................................................. 6

Exhibit B1 - DIR Database Administrator Job Description 13OCT2023, Page 1 ...................... 7

Exhibit B2 - DIR Database Administrator Job Description 13OCT2023, Page 2 ...................... 8

Exhibit B3 - DIR Database Administrator Job Description 13OCT2023, Page 3 ...................... 9

Exhibit B4 - DIR Database Administrator Job Description 13OCT2023, Page 4 .................... 10

Exhibit B5 - DIR Database Administrator Job Description 13OCT2023, Page 5 ....................11

Exhibit B6 - DIR Database Administrator Job Description 13OCT2023, Page 6 .................... 12

Exhibit B7 - DIR Database Administrator Job Description 13OCT2023, Page 7 .................... 13

Exhibit C - Shamar Bradley Termination Letter 21AUG2024................................................. 14

Exhibit D - Protected Whistleblower Disclosure 16AUG2024 .............................................. 15

Exhibit E - Business Objects Status Teams Meeting 07AUG2024......................................... 16

Exhibit F1 - Recent User Login Email from Guy Vachon - 15AUG2024, Page 1 .................. 17

Exhibit F2 - Recent User Login Email from Guy Vachon - 15AUG2024, Page 2 .................. 18

Page 1 of 18

Copy from re:SearchTX

Copy from re:SearchTX

II
**JURISDICTION AND SUMMARY OF EVIDENCE**

The Texas Department of Information Resources ("DIR") is a state of Texas governmental entity. See *Texas Government Code § 554.001(5)(A)*[i]. Shamar D. Bradley began employment at DIR on November 13th, 2023.[ii] Bradley was employed as a Database Administrator.[iii] Bradley was wrongfully terminated on August 21st, 2024.[iv] The total time of Bradley's employment at DIR was 9 months and 8 days. Therefore, he successfully completed the mandatory 9-month probationary period and is a "public employee." See *Texas Government Code § 554.001(4)*[v].

Bradley hereby timely invoked action under the DIR grievance/appeal procedure relating to the cause for termination of public employment at DIR. See *Texas Government Code § 554.006(b)(1)*[vi]. Bradley was wrongfully terminated in illegal retaliation[vii] for refusing to engage in illicit activity and for the good faith report of a violation of a law[viii] by public employees at DIR. Bradley refused to be complicit in and reported criminal violations of software copyright infringement[ix] by another public employee of DIR; shortly thereafter, he was terminated thus satisfying the knowledge-timing test. See *17 United States Code § 506(a)(1)(B), (e)*; see also *18 United States Code § 2319(b)(1)*.

DIR failed to display notice of whistleblower rights in the recently acquired Adult Day Care (ADC) facility.[x] See *Texas Government Code §    554.009(a)*. Notwithstanding aforementioned lack of notice, Bradley's burden of proof has been met with clear and convincing evidence[xi] and the allegation of retaliatory termination is presumed to be true. See *Texas Government Code §  554.004(a)*.[xii]

DIR sovereign immunity[xiii] is to be waived and abolished and relief[xiv] is being sought in the appropriate jurisdiction.[xv] See *Texas Government Code § 554.0035*. See also *Texas Government Code §  554.003(a)-(c)*. See also *Texas Government Code §  554.007(a)*.

Page 2 of 18

Copy from re:SearchTX

Copy from re:SearchTX

III
**CITATIONS AND ENDNOTES**

_____

[i] See *Texas Government Code § 554.001(5)(A)* - State governmental entity" means: a board, commission, department, office, or other agency in the executive branch of state government, created under the constitution or a statute of the state, including an institution of higher education, as defined by Section 61.003, Education Code

[ii] See Exhibits A1-A2 - Offer Letter 31OCT2023, Pages 1-2

[iii] See Exhibit B1-B7 - DIR Database Administrator Job Description 13OCT2023, Pages 1-7

[iv] See Exhibit C - Shamar Bradley Termination Letter 21AUG2024

[v] See *Texas Government Code § 554.001(4)* - "Public employee" means an employee or appointed officer other than an independent contractor who is paid to perform services for a state governmental entity.

[vi] See *Texas Government Code § 554.006(b)(1)* - (use of grievance or appeal procedures) "A public employee must initiate action under the grievance or appeal procedures of the employing state governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter. The employee must invoke the applicable grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of this chapter occurred.

[vii] See *Texas Government Code § 554.002(a), (b)(1)* - (retaliation prohibited for reporting violation of law) A state governmental entity may not terminate the employment of a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. In this section, a report is made to an appropriate law enforcement authority if the authority is a part of a state governmental entity that the employee in good faith believes is authorized to regulate under or enforce the law alleged to be violated in the report.

[viii] See *Texas Government Code § 554.001(1)(A)* - In this chapter "Law" means a state or federal statute.

[ix] See *17 United States Code § 506(a)(1)(B), (e)* - (Criminal offenses) Criminal Infringement means any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed by the reproduction or distribution, including by electronic means, during any 180–day period, of 1 or more copyrighted works, which have a total retail value of more than $1,000. (e) False Representation - any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

See also *18 United States Code § 2319(b)(1)* - (Criminal infringement of a copyright) Any person who commits an offense under section 506(a)(1)(A) of title 17 shall be imprisoned not more than 5 years, or fined in the amount set forth in this title, or both, if the offense consists of the reproduction or distribution, including by electronic means, during any 180-day period of 1 or more copyrighted works which have a total retail value of more than $2,500.

[x] See *Texas Government Code § 554.009(a)* - (notice to employees) A state governmental entity shall inform its employees of their rights under this chapter by posting a sign in a prominent location in the workplace.

[xi] See Exhibit D - Protected Whistleblower Disclosure 16AUG2024

[xii] See *Texas Government Code § 554.004(a)* - (burden of proof; presumption) A public employee who sues under this chapter has the burden of proof, except that if the termination of a public employee occurs not later than the 90th day after the date on which the employee reports a violation of law, the termination is presumed to be because the employee made the report.

[xiii] See *Texas Government Code § 554.0035* – (waiver of immunity) A public employee who alleges a violation of this chapter may sue the employing state governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

Copy from re:SearchTX

Copy from re:SearchTX

---

[xiv] See *Texas Government Code § 554.003(a)-(c)* – (relief available to public employee) (a) A public employee whose employment is suspended or terminated or who is subjected to an adverse personnel action in violation of Section 554.002 is entitled to sue for: injunctive relief; actual damages; court costs; and reasonable attorney fees.

In addition to relief under Subsection (a), a public employee whose employment is terminated in violation of this chapter is entitled to: reinstatement to the employee's former position or an equivalent position; compensation for wages lost during the period of termination; and reinstatement of fringe benefits and seniority rights lost because of the termination.

In a suit under this chapter against an employing state governmental entity, a public employee may not recover compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses in an amount that exceeds $200,000, if the employing state governmental entity has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the calendar year in which the suit is filed or in the preceding year.

[xv] See *Texas Government Code § 554.007(a)* - A public employee of a state governmental entity may sue under this chapter in a district court of the county in which the cause of action arises or in a district court of Travis County.

Page 4 of 18

Copy from re:SearchTX

Copy from re:SearchTX

Exhibit C - Shamar Bradley Termination Letter 21AUG2024

**DIR** Agency Memorandum

**To:** Shamar Bradley

**From:** Brian Hurdle

**Date:** August 21, 2024

**Subject:** Termination of Employment

This memorandum is to inform you that your employment is terminated effective today, August 21, 2024, for misconduct.

Texas Department of Information Resources | dir.texas.gov | #DIRisIT | @TexasDIR | Page 1

Page 14 of 18

Copy from re:SearchTX

01/24/2025 12:31:42 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-24-009408

CAUSE NO. D-1-GN-24-009408

| | | |
|---|---|---|
| SHAMAR D. BRADLEY | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| TEXAS DEPARTMENT OF INFORMATION | § | |
| RESOURCES | § | |
| Defendant. | § | 419TH JUDICIAL DISTRICT |

## ORDER DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

ON THIS DAY came to be heard the Motion for Injunctive Relief filed by Plaintiff Shamar Bradley. After due consideration of the law and the filings of the parties, the Court **DENIES** said motion.

SIGNED this 23 day of January, 2025.

HON. MAYA GUERRA GAMBLE
459TH DISTRICT JUDGE

Copy from re:SearchTX

<u>Exhibit M4A - Order Denying Motion for Injunctive Relief Email, 27JAN2025</u>

 Gmail

Shamar D. Bradley <shamar.d.bradley@gmail.com>

**This is a Signed Order notification from the Travis County District Clerk's Office for Case Number D-1-GN-24-009408**

TC.Orders@traviscountytx.gov <TC.Orders@traviscountytx.gov>        Mon, Jan 27, 2025 at 8:55 AM
To: SHAMAR.D.BRADLEY@gmail.com

This is a notification that a signed Order has been accepted by the Travis County District Clerk's Office.

CauseNumber: D-1-GN-24-009408

Date Accepted: 1/27/2025 8:55:20 AM

Document Information: ORDER DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

Please do not reply to this email. This message was automatically generated by The Travis County District Clerk's office

If you need technical assistance, please call: 512-854-9457

This email may have been generated by a computer program or a copy machine on behalf of another Travis County user. Please verify the validity of the message or the identity of the sender before taking any action if this email is unexpected or appears suspicious.

This electronic mail message, including any attachments, may be confidential or privileged under applicable law. This email is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this email, you are notified that any use, dissemination, distribution, copying, disclosure or any other action taken in relation to the content of this email including any attachments is strictly prohibited. If you have received this email in error, please notify the sender immediately and permanently delete the original and any copy of this email, including secure destruction of any printouts.

 **627368.pdf**
82K

Copy from re:SearchTX

Plaintiff's claims should be dismissed because he does not present a viable whistleblower claim and does not plead facts to show the waiver of sovereign immunity for whistleblower claims applies in this instance.

## II.  STANDARD OF REVIEW

A plea to the jurisdiction challenges the court's subject matter jurisdiction to decide a case. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547. 553-54 (Tex. 2000). A plaintiff has the burden to establish subject matter jurisdiction. *Id.* at 446. The existence of subject matter jurisdiction is a question of law for the court. *See City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010). Where the pleadings and evidence before the court fail to show subject matter jurisdiction, the court must grant a plea to the jurisdiction and dismiss the case. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217. 226-28 (Tex. 2004). The purpose of a plea to the jurisdiction "is to defeat a cause of action without regard to whether the claims asserted have merit." *Blue* at 554.

## III.  ARGUMENTS AND AUTHORITIES

In this case, the Court lacks subject matter jurisdiction because Plaintiff cannot overcome the sovereign immunity of DIR. As a result, Plaintiff's claims should be dismissed.

**A.  Sovereign Immunity Deprives this Court of Jurisdiction.**

In a plea to the jurisdiction, sovereign immunity may be properly raised because it "deprives a trial court of jurisdiction over lawsuits in which the state…or governmental units have been sued, unless the state consents to suit." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635-36 (Tex. 2012); see also

Copy from re:SearchTX

*Miranda*, 133 S.W.3d at 224; *Dallas Cnty. Mental Health v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998).

A suit against the State or its agencies is barred by sovereign immunity absent clear and unambiguous legislative consent, and sovereign immunity deprives a trial court of subject matter jurisdiction. *Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 224-225 (Tex. 2004); *Tex. Dep't. of Transp. v. Miller*, 8 S.W.3d 636, 638 (Tex. 1999). Sovereign immunity bars a suit against the State unless the legislature expressly consents to the suit. *Texas Nat. Res. Conservation Comm'n. v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002).

**B.    DIR is entitled to sovereign immunity.**

DIR "is an agency of the state" by statute. TEX. GOV. CODE §2054.004. As such, it is entitled to sovereign immunity.

**C.    Plaintiff's claims are barred by sovereign immunity.**

"A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction...That burden encompasses the burden of establishing a waiver of sovereign immunity in suits against the government". *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). Unless the plaintiff pleads a viable claim, sovereign immunity is retained for government defendants. *See Andrade v. NAACP of Austin*, 345 S.W.3d I, 11 (Tex. 2011).

Here, Plaintiff may not avail himself of any waiver of sovereign immunity because his whistleblower claim is not viable.

Copy from re:SearchTX

The Supreme Court of Texas has made it clear that "the statutory elements in Section 554.002(a) are 'jurisdictional when necessary to ascertain whether plaintiff has adequately alleged a violation of the [Whistleblower Act].' " *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012), citing *State v. Lueck*, 290 S.W.3d 876, 880 (Tex.2009). By statute, a plaintiff wishing to bring a whistleblower claim must have reported the alleged violation of law to "an appropriate law enforcement authority." *See* TEX. GOV. CODE §554.002(a). The statute defines "an appropriate law enforcement authority" as one that the employee in good faith believes is authorized to:

(1) regulate under or enforce the law alleged to be violated in the report, or
(2) investigate or prosecute a violation of law.

*See* TEX. GOV. CODE §554.002(b)(1) and (2). The Texas Supreme Court has held that "[t]o satisfy the Act's requirements, a report must be made to (1) an individual person who possesses the law-enforcement powers specified under the Act, or (2) someone who, like a police-intake clerk, works for a governmental arm specifically charged with exercising such powers." *Texas Dep't of Hum. Servs. v. Okoli*, 440 S.W.3d 611, 617 (Tex. 2014). The Supreme Court of Texas established that internal agency reports to a supervisor were not whistleblower reports to an appropriate law enforcement authority if the agency itself generally lacked authority to investigate or prosecute criminal conduct or otherwise regulate conduct outside the agency involved. *Id.*, at 618.

Here, Plaintiff observed what he described as a "mistake" related to use of copyrighted software. He specifically stated on two occasions "We are mistakenly

Copy from re:SearchTX

using one license key for two machines." Pl.'s Amd. Petition at 11. Plaintiff made these statements in a group chat on Microsoft Teams to various coworkers in DIR, none of whom are law enforcement authorities. Pl.'s Amd. Petition at 12. In his Amended Petition, Plaintiff judicially admits that he reported the alleged violation only to his coworkers at DIR. Pl.'s Amd. Pet. at 11-12. Plaintiff provides no evidence that he reported his concern to any actual law enforcement authority, opting instead to merely report the alleged violation to his supervisors and coworkers. DIR, as an agency, has no law enforcement duties or powers. SEE TEX. GOV. CODE §2054.051. Moreover, a report to his DIR manager is insufficient, because a governmental entity is obligated to comply with laws does not mean they are a law enforcement authority, and Plaintiff's manager is (at most) "a law-compliance authority, but he was not a law-enforcement authority" sufficient to meet the requirements of the Whistleblower Act, and dismissal based on sovereign immunity is appropriate. *See Univ. of Texas Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 685 (Tex. 2013). As a result, "[r]eporting to [the manager] was not protected by the Act." *Id.*, at 687.

Plaintiff did not report the alleged violation of law to anyone with "authority to investigate or prosecute criminal conduct or otherwise regulate conduct outside the agency involved." *Okoli*, 440 S.W.3d at 618. As a former employee of DIR, Plaintiff would know, based on his training and experience with the agency, that DIR is not a law enforcement authority and does not have prosecutorial powers in any sense. As a result, Plaintiff did not trigger the protections of the Whistleblower Act.

Copy from re:SearchTX

Under *Andrade*, DIR retains its sovereign immunity because Plaintiff's claim is not viable. As a result, Plaintiff's claims remain barred by sovereign immunity and should be dismissed accordingly.

## IV. CONCLUSION AND PRAYER

For the foregoing reasons, DIR respectfully requests this Court to grant this Plea to the Jurisdiction, to dismiss Plaintiff's claims in their entirety, and to grant DIR such other relief to which it may be entitled.

DATE: January 9, 2025

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief for General Litigation Division

*/s/ Denver Burris*
DENVER BURRIS
Assistant Attorney General
Texas Bar No. 24138940
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4105 | FAX: (512) 320-0667

Copy from re:SearchTX

**From:** shamar bradley <shamarb11@gmail.com>
**Sent:** Friday, January 3, 2025 4:01 PM
**To:** tc.civildistrictannounce <TC.CivilAnnouncements@traviscountytx.gov>
**Subject:** [CAUTION EXTERNAL] hearing announcement D-1-GN-24-009408

**CAUTION**: This email is from OUTSIDE Travis County. Links or attachments may be dangerous. Click the Phish Alert button above if you think this email is malicious.

hearing announcement on the Motion for Injunctive Relief for cause D-1-GN-24-009408 (Shamar D. Bradley vs. Texas Department of Information Resources, Whistleblower Retaliation Complaint).

Regards,
_____/s/_____
Shamar D. Bradley, MS, MBA, EIT
10109 Lake Creek Parkway, #170682
Austin, TX 78717

This electronic mail message, including any attachments, may be confidential or privileged under applicable law. This email is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this email, you are notified that any use, dissemination, distribution, copying, disclosure or any other action taken in relation to the content of this email including any attachments is strictly prohibited. If you have received this email in error, please notify the sender immediately and permanently delete the original and any copy of this email, including secure destruction of any printouts.

Copy from re:SearchTX

# CIVIL DISTRICT COURT ANNOUNCEMENT FORM

THIS FORM MUST BE **FILLED OUT IN FULL** AND **RECEIVED NO LATER THAN 5:00 P.M. ON WEDNESDAY OF THE WEEK PRIOR** IN ORDER FOR THE ANNOUNCEMENT TO BE PROCESSED. ANNOUNCEMENT MUST BE E-MAILED TO: **TC.CivilDistrictAnnounce@traviscountytx.gov**

Date and Time of Setting: January 22nd, 2025 at 2pm

Cause Number: D-1-GN-24-009408

Case Style: Shamar D. Bradley vs. Texas Department of Information Resources

Hearing(s)/Trial(s) that are set: Motion for Injunctive Relief

Name/Contact Information for any interpreter appearing on this setting: _____

_____

****All parties have conferred and we:

[  ] AGREE that this hearing/trial can proceed REMOTELY

**FILL OUT IN FULL** THE AGREEMENT TO REMOTE PROCEEDINGS WHICH IS LOCATED AT THE END OF THIS ANNOUNCEMENT FORM. SIGNATURES OF ALL SELF-REPRESENTED PARTIES AND ATTORNEYS OF RECORD MUST BE INCLUDED. ATTACH THIS FORM WHEN ANNOUNCING WITH THE COURT ADMINISTRATOR'S OFFICE. INCOMPLETE FORMS WILL NOT BE CONSIDERED.

(PLEASE NOTE THAT THE COURT WILL ADVISE ON HOW THE HEARING WILL PROCEED PRIOR TO THE HEARING. UNLESS OTHERWISE ORDERED OR INSTRUCTED BY THE COURT IN WHICH THE CASE IS ASSIGNED, PROCEEDINGS WILL OCCUR IN-PERSON)

Time Estimate (**TOTAL TIME FOR ENTIRE HEARING OR TRIAL**): 1 hour

*For Jury docket cases and Family and Civil Monday Long docket cases only:*

Has Alternative Dispute Resolution (ADR) been completed or waived by the Court?:

Yes: [  ] ; No: [  ] (If Not, Reason?_____)

**FOR FAMILY LAW CASES ONLY:**

Is/Are Hearing(s) Still Necessary?: Yes: [  ] ; No: [  ]

(If no, provide reason:_____)

District Judge being requested?: Yes: [  ] ; No: [  ]

Has an Agreement been filed waiving right to De Novo?: Yes: [  ] ; No: [  ]

Request for Record to be made of Proceeding?: Yes: [  ] ; No: [  ]

1

Copy from re:SearchTX

Exhibit M7 - Email from Court Administrator's Office, 03JAN2025

 Gmail

shamar bradley <shamarb11@gmail.com>

**RE: [CAUTION EXTERNAL] hearing announcement D-1-GN-24-009408**
1 message

**tc.civildistrictannounce** <TC.CivilAnnouncements@traviscountytx.gov>                    Fri, Jan 3, 2025 at 4:09 PM
To: shamar bradley <shamarb11@gmail.com>, "tc.civildistrictannounce" <TC.CivilAnnouncements@traviscountytx.gov>

Mr. Bradley

The announcement cannot be accepted as it is too early because your hearing is set for January 22, 2025. The ready announcement period is **ONE week prior Monday, Tuesday or Wednesday by 5:00 p.m.** Please send your announcement at that time.

Thank you,

Court Administrator's office

Travis County Civil & Family Courts

Copy from re:SearchTX

Exhibit M8 - Lack of Notice of Whistleblower Rights Sign at WPC

 **Gmail**

Shamar D. Bradley <shamar.d.bradley@gmail.com>

## [Records Center] Public Information Request :: R004019-010925
1 message

**Texas DIR Public Records Center** <texasdir@mycusthelp.net>
To: "shamar.d.bradley@gmail.com" <shamar.d.bradley@gmail.com>

Fri, Jan 24, 2025 at 4:55 PM

--- Please respond above this line ---

 **Powered by GovQA**

01/24/2025

RE: PUBLIC RECORDS REQUEST of January 09, 2025, Reference # R004019-010925

Dear Shamar Bradley:

DIR received a public information request from you on January 09, 2025. You requested:

"Date of posting and location of Notice of Whistleblower rights in WPC (300 W 15th St. Suite 1300, Austin, TX 78701)"

Thank you for your request. The Texas Department of Information Resources does not have any documents responsive to your request.

Regards,

Gloria C. Rivera
Legal Assistant

To monitor the progress or update this request please log into the Public Records Center

 **Powered by GovQA**

Copy from re:SearchTX

<u>Exhibit M9 - Lack of Notice of Whistleblower Rights Sign at ADC</u>

 Gmail

Shamar D. Bradley <shamar.d.bradley@gmail.com>

## [Records Center] Public Information Request :: R004020-010925
1 message

**Texas DIR Public Records Center** <texasdir@mycusthelp.net>    Fri, Jan 24, 2025 at 4:58 PM
To: "shamar.d.bradley@gmail.com" <shamar.d.bradley@gmail.com>

--- Please respond above this line ---



01/24/2025

RE: PUBLIC RECORDS REQUEST of January 09, 2025, Reference # R004020-010925

Dear Shamar Bradley:

DIR received a public information request from you on January 09, 2025. You requested:

"Date of posting and location of Notice of Whistleblower rights in ADC (9500 metric boulevard, Austin, TX 78758)"

Thank you for yourrequest. The Texas Department of Information Resources does not have anydocuments responsive to your request.

Regards,

Gloria C. Rivera
Legal Assistant

To monitor the progress or update this request please log into the Public Records Center



Copy from re:SearchTX

<u>Exhibit M10 - Lack Training of Whistleblower Rights</u>

 Gmail

Shamar D. Bradley <shamar.d.bradley@gmail.com>

## [Records Center] Public Information Request :: R004021-010925
1 message

**Texas DIR Public Records Center** <texasdir@mycusthelp.net>
To: "shamar.d.bradley@gmail.com" <shamar.d.bradley@gmail.com>

Fri, Jan 24, 2025 at 5:31 PM

--- Please respond above this line ---

 Powered by GovQA

01/24/2025

RE: PUBLIC RECORDS REQUEST of January 09, 2025, Reference # R004021-010925

Dear Shamar Bradley:

DIR received a public information request from you on January 09, 2025. You requested:

"Date of training, completion certificate, and training materials for whistleblower rights for Lisa Jammer, Brian Hurdle, and Shamar Bradley"

DIR does not have a training specifically designated as the whistleblower rights training as specified by your request. As such, DIR has no responsive documents and your request is now closed.

Regards,

Christi Koenig Brisky
Assistant General Counsel

To monitor the progress or update this request please log into the Public Records Center

 Powered by GovQA

Copy from re:SearchTX

 Gmail

shamar bradley <shamarb11@gmail.com>

**Hearing announcement - D-1-GN-24-009408**
1 message

**shamar bradley** <shamarb11@gmail.com>                  Thu, Jan 30, 2025 at 12:11 PM
To: TC.CivilDistrictAnnounce@traviscountytx.gov

Hi,

Just sending this hearing announcement in case the defense, who originally scheduled the hearing for 07feb2025 didn't already send it :).

Shamar

 **Hearing announcement 07feb2025.pdf**
157K

Copy from re:SearchTX

## CIVIL DISTRICT COURT ANNOUNCEMENT FORM

THIS FORM MUST BE **FILLED OUT IN FULL** AND **RECEIVED NO LATER THAN 5:00 P.M. ON WEDNESDAY OF THE WEEK PRIOR** IN ORDER FOR THE ANNOUNCEMENT TO BE PROCESSED. ANNOUNCEMENT MUST BE E-MAILED TO: **TC.CivilDistrictAnnounce@traviscountytx.gov**

Date and Time of Setting: February 7th, 2025 at 9am ;

Cause Number:  D-1-GN-24-009408

Case Style:  Shamar D. Bradley vs. Texas Department of Information Resources

Hearing(s)/Trial(s) that are set: Motion for Contempt

Name/Contact Information for any interpreter appearing on this setting: _____

_____

****All parties have conferred and we:

☐ AGREE that this hearing/trial can proceed REMOTELY

**FILL OUT IN FULL** THE AGREEMENT TO REMOTE PROCEEDINGS WHICH IS LOCATED AT THE END OF THIS ANNOUNCEMENT FORM. SIGNATURES OF ALL SELF-REPRESENTED PARTIES AND ATTORNEYS OF RECORD MUST BE INCLUDED. ATTACH THIS FORM WHEN ANNOUNCING WITH THE COURT ADMINISTRATOR'S OFFICE. INCOMPLETE FORMS WILL NOT BE CONSIDERED.

(PLEASE NOTE THAT THE COURT WILL ADVISE ON HOW THE HEARING WILL PROCEED PRIOR TO THE HEARING. UNLESS OTHERWISE ORDERED OR INSTRUCTED BY THE COURT IN WHICH THE CASE IS ASSIGNED, PROCEEDINGS WILL OCCUR IN-PERSON)

Time Estimate (**TOTAL TIME FOR ENTIRE HEARING OR TRIAL**):  1 hour

*For Jury docket cases and Family and Civil Monday Long docket cases only:*

Has Alternative Dispute Resolution (ADR) been completed or waived by the Court?:

Yes:☐ ; No:☐ (If Not, Reason?_____)

**FOR FAMILY LAW CASES ONLY:**

Is/Are Hearing(s) Still Necessary?: Yes:☐ ; No:☐

(If no, provide reason:_____)

District Judge being requested?: Yes:☐ ; No:☐

Has an Agreement been filed waiving right to De Novo?: Yes:☐ ; No:☐

Request for Record to be made of Proceeding?: Yes:☐ ; No:☐

1

Copy from re:SearchTX

Exhibit M13 - Email to Court Administrator's Office, 30JAN2025 - 2

**From:** shamar bradley <shamarb11@gmail.com>
**Sent:** Thursday, January 30, 2025 12:14 PM
**To:** tc.civildistrictannounce <TC.CivilAnnouncements@traviscountytx.gov>
**Subject:** [CAUTION EXTERNAL] Re: Hearing announcement - D-1-GN-24-009408

**CAUTION**: This email is from OUTSIDE Travis County. Links or attachments may be dangerous. Click the Phish Alert button above if you think this email is malicious.

It's supposed to be 2 hours, sorry

Copy from re:SearchTX

 Gmail

shamar bradley <shamarb11@gmail.com>

---

## RE: [CAUTION EXTERNAL] Re: Hearing announcement - D-1-GN-24-009408

**tc.civildistrictannounce**
<TC.CivilAnnouncements@traviscountytx.gov>
To: shamar bradley <shamarb11@gmail.com>

Thu, Jan 30, 2025 at 1:58 PM

Good afternoon Shamar,

The max amount of time you can set for this docket is 15 minutes. Therefore, majority of the settings on this date will not be heard by the judge. Please call our office for further information and to advise of which ones you would like to remove at (512) 854-2484 option zero.

*Best,*

*Court Administrator's Office*

*Travis County Civil District Courts*

*P.O. Box 1748*

*Austin, TX 78767*



This electronic mail message, including any attachments, may be confidential or privileged under

Copy from re:SearchTX

Exhibit M15 - Email to Court Administrator's Office, 30JAN2025 - 3

 Gmail                                    shamar bradley <shamarb11@gmail.com>

## Re: [CAUTION EXTERNAL] Re: Hearing announcement - D-1-GN-24-009408

**shamar bradley** <shamarb11@gmail.com>                    Thu, Jan 30, 2025 at 3:23 PM
To: "tc.civildistrictannounce" <TC.CivilAnnouncements@traviscountytx.gov>

Hi,

The court administrator agreed to a 2 hour hearing on February 7th.

Copy from re:SearchTX

<u>Exhibit M16 - Email from Court Administrator's Office, 30JAN2025 - 2</u>

 Gmail

shamar bradley <shamarb11@gmail.com>

**RE: [CAUTION EXTERNAL] Re: Hearing announcement - D-1-GN-24-009408**

1 message

**tc.civildistrictannounce**
<TC.CivilAnnouncements@traviscountytx.gov>
To: shamar bradley <shamarb11@gmail.com>

Thu, Jan 30, 2025 at 3:27 PM

This was set in error and therefore, will not be able to proceed. The max amount of time allowed is 15 minutes.

*Best,*

*Court Administrator's Office*

*Travis County Civil District Courts*

*P.O. Box 1748*

*Austin, TX 78767*



This electronic mail message, including any attachments, may be confidential or privileged under applicable law. This email is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this email, you are notified that any use, dissemination, distribution, copying, disclosure or any other action taken in relation to the content of this email including any attachments is strictly prohibited. If you have received this

Copy from re:SearchTX

On Thu, Jan 30, 2025 at 3:24 PM tc.civildistrictannounce <TC.CivilAnnouncements@ traviscountytx.gov> wrote:

That docket only allows for a max of 15 minutes.

*Best,*

*Court Administrator's Office*

*Travis County Civil District Courts*

*P.O. Box 1748*

*Austin, TX 78767*



This electronic mail message, including any attachments, may be confidential or privileged under applicable law. This email is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this email, you are notified that any use, dissemination, distribution, copying, disclosure or any other action taken in relation to the content of this email including any attachments is strictly prohibited. If you have received this email in error, please notify the sender immediately and permanently delete the original and any copy of this email, including secure destruction of any printouts.

Copy from re:SearchTX

Exhibit M18 - Email to Court Administrator's Office, 30JAN2025 - 4

**From:** shamar bradley <shamarb11@gmail.com>
**Sent:** Thursday, January 30, 2025 3:26 PM
**To:** tc.civildistrictannounce <TC.CivilAnnouncements@traviscountytx.gov>
**Subject:** Re: [CAUTION EXTERNAL] Re: Hearing announcement - D-1-GN-24-009408

**CAUTION:** This email is from OUTSIDE Travis County. Links or attachments may be dangerous. Click the Phish Alert button above if you think this email is malicious.

I can send you the audio recording of the court administrator agreeing to the 2 hour hearing.

Exhibit M19 - Email to Court Administrator's Office, 30JAN2025 - 5

**From:** shamar bradley <shamarb11@gmail.com>
**Sent:** Thursday, January 30, 2025 3:39 PM
**To:** tc.civildistrictannounce <TC.CivilAnnouncements@traviscountytx.gov>
**Subject:** Re: [CAUTION EXTERNAL] Re: Hearing announcement - D-1-GN-24-009408

**CAUTION:** This email is from OUTSIDE Travis County. Links or attachments may be dangerous. Click the Phish Alert button above if you think this email is malicious.

Please provide the name, address, and phone number of the supervisor for the announcements division.

Copy from re:SearchTX

 Gmail

shamar bradley <shamarb11@gmail.com>

## RE: [CAUTION EXTERNAL] Re: Hearing announcement - D-1-GN-24-009408

**tc.civildistrictannounce**
<TC.CivilAnnouncements@traviscountytx.gov>
To: shamar bradley <shamarb11@gmail.com>

Thu, Jan 30, 2025 at 3:41 PM

Good afternoon Shamar,

We attempted to contact you earlier regarding this to further explain and left a detailed voicemail. Please contact us at (512) 854-2484 option zero for further information.

*Best,*

*Court Administrator's Office*

*Travis County Civil District Courts*

*P.O. Box 1748*

*Austin, TX 78767*



This electronic mail message, including any attachments, may be confidential or privileged under applicable law. This email is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this email, you are notified that any use,

Copy from re:SearchTX

Exhibit M21 - Email from Court Administrator's Office, 30JAN2025 - 5

**From:** shamar bradley <shamarb11@gmail.com>
**Sent:** Thursday, January 30, 2025 3:26 PM
**To:** tc.civildistrictannounce <TC.CivilAnnouncements@traviscountytx.gov>
**Subject:** Re: [CAUTION EXTERNAL] Re: Hearing announcement - D-1-GN-24-009408

**CAUTION**: This email is from OUTSIDE Travis County. Links or attachments may be dangerous. Click the Phish Alert button above if you think this email is malicious.

I can send you the audio recording of the court administrator agreeing to the 2 hour hearing.

Copy from re:SearchTX

Exhibit M22 - Order Granting Defendant's Plea to the Jurisdiction

02/28/2025 05:17:27 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-24-009408

CAUSE NO. D-1-GN-24-009408

| | | |
|---|---|---|
| SHAMAR D. BRADLEY | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| TEXAS DEPARTMENT OF INFORMATION | § | |
| RESOURCES | § | |
| Defendant. | § | 419TH JUDICIAL DISTRICT |

## ORDER GRANTING DIR'S AMENDED PLEA TO THE JURISDICTION

ON THIS DAY came to be heard the Amended Plea to the Jurisdiction filed by Defendant Texas Department of Information Resources ("DIR"). After due consideration of the law and the filings of the parties, the Court finds said plea meritorious. It is therefore,

**ORDERED** that DIR's Plea to the Jurisdiction is **GRANTED**. It is further **ORDERED** that Plaintiff's claims against DIR are **DISMISSED WITH PREJUDICE** in their entirety.

SIGNED this 28th day of February, 2025.

_____
HON. JESSICA MANGRUM
200TH DISTRICT JUDGE

Copy from re:SearchTX

 Gmail

Shamar D. Bradley <shamar.d.bradley@gmail.com>

## This is a Signed Order notification from the Travis County District Clerk's Office for Case Number D-1-GN-24-009408

**TC.Orders@traviscountytx.gov** <TC.Orders@traviscountytx.gov>    Mon, Mar 3, 2025 at 12:06 PM
To: SHAMAR.D.BRADLEY@gmail.com

This is a notification that a signed Order has been accepted by the Travis County District Clerk's Office.

CauseNumber: D-1-GN-24-009408

Date Accepted: 3/3/2025 12:06:21 PM

Document Information: ORDER GRANTING DIR'S AMENDED PLEA TO THE JURISDICTION

Please do not reply to this email. This message was automatically generated by The Travis County District Clerk's office

If you need technical assistance, please call: 512-854-9457

This email may have been generated by a computer program or a copy machine on behalf of another Travis County user. Please verify the validity of the message or the identity of the sender before taking any action if this email is unexpected or appears suspicious.

This electronic mail message, including any attachments, may be confidential or privileged under applicable law. This email is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this email, you are notified that any use, dissemination, distribution, copying, disclosure or any other action taken in relation to the content of this email including any attachments is strictly prohibited. If you have received this email in error, please notify the sender immediately and permanently delete the original and any copy of this email, including secure destruction of any printouts.

 **639523.pdf**
217K

Copy from re:SearchTX

04/04/2025 04:32:12 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-20-006861

CAUSE NO. D-1-GN-20-006861

| | | |
|---|---|---|
| JAMES BLAKE BRICKMAN, DAVID MAXWELL, J. MARK PENLEY, and RYAN M. VASSAR Plaintiffs, | § § § § § § | IN THE DISTRICT COURT OF |
| v. | § § | TRAVIS COUNTY, TEXAS |
| OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF TEXAS | § § § § | |
| Defendant. | § | 250th JUDICIAL DISTRICT |

## FINAL JUDGMENT

The trial of this case took place on February 20 and March 26, 2025. All matters, legal and factual, were submitted to the Court for its determination.

The Court heard evidence from Plaintiffs.

Plaintiffs moved for judgment based on the sworn pleadings and evidence, and the Court announced its decision for Plaintiffs.

In support of its decision, the Court makes the following findings:

On September 30, 2020, Plaintiffs were all public employees employed by the Defendant, the Office of the Attorney General of the State of Texas ("Defendant" or "OAG") in OAG's office in Austin, Travis County, Texas. OAG had more than 500 employees in each of 20 or more calendar weeks in 2019 and 2020.

On September 30, 2020, Plaintiffs in good faith reported to appropriate law enforcement authorities violations of law by Attorney General Ken Paxton, other employees of the Office of the Attorney General, and the Office of the Attorney General. Plaintiffs reported to law enforcement that, over the course of 2019 and 2020, Ken Paxton abused his office, obstructed

1

Copy from re:SearchTX

justice, and accepted bribes from Nate Paul. Plaintiffs reported that Paxton and OAG deployed the power of OAG and directed employees and resources of OAG spanning multiple functions and departments, to improperly interfere in the civil disputes and criminal matters of Nate Paul. Plaintiffs also reported that Paxton and OAG engaged in these acts not only to benefit Paul, but to benefit Paxton personally because of the financial, reputational and personal relationships between Paul and Paxton, relationships Paul and Paxton sought to conceal. These reports were made in good faith.

On October 1, 2020, Plaintiffs notified Paxton and the Office of the Attorney General of the reports to law enforcement.

The Office of the Attorney General then retaliated against Plaintiffs by first attempting to harass and intimidate them, placing some of the Plaintiffs on investigative leave, and then by terminating their employment. OAG terminated Plaintiff James Blake Brickman's employment on October 20, 2020, Ryan Vassar's employment on November 17, 2020, David Maxwell's employment on November 2, 2020, and Mark Penley's employment on November 2, 2020.

Plaintiffs made their reports to law enforcement in good faith, and OAG terminated each of the Plaintiffs because of their reports to law enforcement in violation of the Texas Whistleblower Act.

In addition to evidence establishing that OAG terminated Plaintiffs because of their reports to law enforcement, it is presumed that OAG took the adverse employment actions because OAG terminated each Plaintiff within 90 days of their reports.[1]

Each of the Plaintiffs initiated action under the grievance or appeal procedures of the OAG before filing suit and not later than the 90th day after the date on which the violations of the Texas

---

[1] *See* TEX. GOVT. CODE §554.004(a).

2

Copy from re:SearchTX

Whistleblower Act occurred. Each of the Plaintiffs filed suit not later than the 90th day after the date on which the violations of the Texas Whistleblower Act occurred. Each of the Plaintiffs presented evidence establishing the damages awarded in this Judgment.

Because reinstatement, a form of mandatory relief available under the Texas Whistleblower Act, is not feasible, Plaintiffs are entitled to an award of the value of such reinstatement, commonly referred to as "front pay."[2]

OAG by and through its counsel of record elected not to dispute the Plaintiffs' lawsuit as to any issue, including any issue of fact in this case as to the claim or damages. Moreover, OAG won the right to avoid discovery in this case by certifying to the Supreme Court of Texas that "the agency does not contest liability, damages, or reasonable attorneys' fees." On attorney's fees, OAG represented to the Supreme Court that it "agreed not to contest the figures offered by Plaintiffs." Having achieved the relief it sought, OAG is now estopped from contesting liability, damages, or the attorney's fees figures that Plaintiffs' counsel have testified are reasonable and necessary. *See Pegram* v. *Herdrich*, 530 U.S. 211, 227, n. 8 (2000) (Judicial estoppel protects the integrity of the judicial system and "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."); *Fleming v. Wilson*, 694 S.W.3d 186, 192 (Tex. 2024) (quoting *Pegram* for application of judicial estoppel if the successful representation arose "in another phase" of the same case).

Independent of judicial estoppel, the Court finds that Plaintiffs have proved liability, damages, and reasonable and necessary attorney's fees by a preponderance of the evidence. Because the Office of the Attorney General violated the Texas Whistleblower Act by firing and

---

[2] *See* TEX. GOVT. CODE §554.003(b)(1); *see also Pollard v. E.I. Du Pont Nemours & Co.*, 532 U.S. 843-853 (2001); *City of Houston v. Livingston*, 221 S.W.3d 204, 231-233 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 n. 27 (5th Cir. 2001); and *Walmart Stores, Inc. v. Davis*, 979 S.W.2d 30, 45 (Tex. App.— Austin 1998, pet. denied).

3

Copy from re:SearchTX

otherwise retaliating against the Plaintiffs for in good faith reporting violations of law by Ken Paxton and OAG, the Court hereby renders judgment for Plaintiffs. Accordingly, the Court ORDERS that Plaintiffs recover the following from the Office of the Attorney General:

**As to Plaintiff James Blake Brickman,**

| | |
|---|---|
| Compensation for wages lost during the period of termination in the amount of | $65,770.82; |
| Compensatory damages for emotional pain, suffering inconvenience, mental anguish, loss of enjoyment of life in the amount of | $250,000.00; |
| Prejudgment interest on the above damages awarded at the rate of 7.5% from November 12, 2020, until the date of this judgment in the amount of | $102,906.69 |
| Attorneys' fees in the amount of | $842,269.00[3]; |
| Court costs in the amount of | $2,420.66; and |

Post-judgment interest on all of the above at the rate of 7.5%, compounded annually, from the date this judgment is rendered until all amounts are paid in full.

**As to Plaintiff David Maxwell,**

| | |
|---|---|
| Compensation for wages lost during the period of termination in the amount of | $871,249.83; |
| Compensatory damages for emotional pain, suffering inconvenience, mental anguish, loss of enjoyment of life in the amount of | $250,000.00; |
| Prejudgment interest on the above damages awarded at the rate of 7.5% from November 12, 2020, until the date of this judgment in the amount of | $365,404.57; |
| In lieu of reinstatement, front pay, from the date of trial through the remainder of the Attorney General's current term in the amount of | $392,916.59; |
| Attorneys' fees in the amount of | $336,708.00; and |

---

[3] Plaintiff Brickman's attorney's fees are comprised of: $465,705 from Tom Nesbitt; $345,995 from the firm of Cain & Skarnulis; and $30,569 from the firm of Scanes Yelverton & Talbert.

4

Copy from re:SearchTX



Copy from re:SearchTX

**Number of Openings:** 1

**Overtime Status:** Exempt

**Job Posting:** Apr 28, 2025, 4:08:28 PM

**Closing Date:** Ongoing

**Description**

**Position Title:**

Project Manager III

**Class/Group:**

1560/B24

**Military Occupation Specialty Code:**

Navy 641X

**Fair Labor Standards Act Status:**

Exempt

**Number of Vacancies:**

1

**Division/Section:**

Chief Operations Office/Program Operations/Strategic Client Services

**Salary Range:**

$7500.00 - $7916.67 / monthly

**Duration:**

Regular

**Hours Worked Weekly:**

40

**Travel:**

Occasional

**Work Location:**

Central / Austin, Texas 78756

**Web site:**

Copy from re:SearchTX

3 of 7

https://dir.texas.gov/

**Refer Inquiries to:**

People and Culture Office

**Telephone:**

(512) 463-5920 or (512) 475-4957

**How To Apply:**
- Select the link below to search for this position: https://capps.taleo.net/careersection/ex/jobsearch.ftl?lang=en

- Enter the job posting number 00049052 in the keyword search.

- You must create a CAPPS Career Section candidate profile or be logged in to apply.

- Update your profile and apply for the job by navigating through the pages and steps.

- Once ready, select "Submit" on the "Review and Submit" page.

- If you have problems accessing the CAPPS Career Section, please follow the instructions in the Resetting CAPPS Password for Job Candidate desk aid.

**Special Instructions:**
- Applicants must provide in-depth information in the **EXPERIENCE & CREDENTIALS** section to demonstrate how they meet the position qualifications. Incomplete applications may result in disqualification.

- Resumes may be uploaded as an attachment but are <u>not</u> <u>accepted in lieu of</u> the information required in the **EXPERIENCE & CREDENTIALS** section of the application.

**Interview Place/Time:**

Candidates will be notified for appointments as determined by the selection committee.

**Selective Service Registration:**

Section 651.005 of the Government Code requires males, ages 18 through 25 years, to provide proof of their Selective Service registration or proof of their exemption from the requirement as a condition of state employment.

**H-1B Visa Sponsorship:**

We are unable to sponsor or take over sponsorship of an employment Visa at this time.

**Equal Opportunity Employer**

Copy from re:SearchTX

The Department of Information Resources does not exclude anyone from consideration for recruitment, selection, appointment, training, promotion, retention, or any other personnel action, or deny any benefits or participation in programs or activities, which it sponsors on the grounds of race, color, national origin, sex, religion, age, or disability. Please call 512-475-4922 to request reasonable accommodation.

## What We Do

We are a technology agency powered by people.

DIR offers secure, modern, and cost-effective technology to help government entities in Texas serve their constituents.

DIR is a fast-paced and collaborative environment with highly motivated, innovative, and engaged employees dedicated to achieving the best value for the state. We have over 250 professionals working at DIR who are honored to serve as the cornerstone of public sector technology in Texas. By joining DIR, you will be an integral part of transforming how technology serves Texans.

## Position Summary

When your publicly funded organization requires telecommunications services, DIR makes procuring these services easy and cost effective. Since pricing is negotiated with the full volume buying power of the State of Texas, we're able to provide highly competitive rates and services levels for voice, data, wireless, video, internet and managed services including network optimization and management of voice and/or data networks.

This position performs complex (journey-level) project management services in support of client procurements for voice and data communications products and services, for the client's enterprise and agency networks in conjunction with the Communications Technology Services (CTS) Operations and CTS Network Engineering groups. Responsible for the development of business and technical requirements documentation for procurements. Works with the contract manager in all phases of the procurement life cycle to assure the objectives for the procurements are met and the project adheres to the schedule. Conducts facilitated sessions with subject matter experts and ensures the documents are completed to meet procurement and business goals. Coordinates and articulates various project and technological concepts, as well as meeting coordination, with all necessary employee/management levels within DIR and client agencies. Initiates and maintains partnerships and relationships by collaborating with internal business and technical representatives as required. Manages the execution of delivery by outside telecom and other project entities. Works under the supervision of the Manager of Strategic Client Solutions with input and guidance from other division leads, and the leadership and guidance of the Division Director. Works under general supervision, with moderate latitude for the use of initiative and independent judgement.

Copy from re:SearchTX

- Provides direction for telecommunications procurement projects; ensuring the project supports and aligns with the stated vision, goals and objectives
- Creates a project structure that provides the appropriate level of controls on processes and changes to project objectives; develops the plan that brings together the project, resources, timelines, monitoring and controls
- Assesses, develops, and recommends sound solutions that apply technology to solve client's business goals and objectives. Manages vendor relationships, internal team members, and client agency stake holders to ensure prompt, sound, and feasible solution tracking
- Ensures regular reviews and reporting are conducted for stakeholders, management and executives
- Develops a methodology to ensure the component parts of the procurement, business and technical, integrate properly to accomplish the whole
- Analyzes the need for resources by tracking allocated resources against the project specifications, makes resource recommendations and helps determine Operational risk tolerances of assigned Enterprise and Agency projects.
- Carry out ongoing program management responsibilities of named environments or initiatives as deemed necessary
- Performs other work-related duties as assigned.

## Qualifications

### Education

- Graduation from a four-year college or university with major coursework in computer science, computer information systems, management information systems, engineering, or business; or related field.
- Additional work-related experience may be substituted for education on a year-for-year basis (High-school diploma required.

### Experience and Training Required

- Minimum of three (3) years of multi-disciplined project management experience
- Minimum of three (3) years of telecommunications industry experience
- Minimum of two (2) years of procurement experience for telephony infrastructure

### Experience and Training Preferred

- Open Systems Interconnection (OSI) model Layer 1 technologies to include fiber plant layout, copper-based cabling infrastructure, and points of entry concepts.
- Possess working knowledge of Ethernet, Internet Protocol (IP), Voice

Copy from re:SearchTX

Over IP, and/or Multiprotocol Label Switching (MPLS) network management and/or network design.

## Knowledge, Skills, and Abilities

- Solid understanding of project-based work
- Good understanding of project management theory and practice
- Good understanding of procurement processes
- Sufficient understanding of cabling concepts, Ethernet, IP, Vo IP, MPLS technologies and general voice and data networking principles of design and operations to assess and design workable, feasible solutions with clients
- Excellent analytical skills; strong skill in attention to detail
- Strong interpersonal skills, including leadership and mentorship skills
- Good writing skills for reports, requirements definition and other documentation
- Demonstrated ability to plan, prioritize, and complete multiple assignments on time with minimal supervision
- Demonstrated ability and thorough knowledge of the management and delivery of telecom services
- Demonstrated ability to work with technical teams to design and deliver telecom solutions
- Ability to articulate technological solutions with all levels of client executives
- Ability to evaluate multiple streams of work for consistency and integration in meeting specific objectives
- Ability to follow standard processes, and communicate effectively and cordially with program staff and management regarding progresses and critical issues
- Ability to effectively communicate both abstract and detailed information to varied audiences
- Ability to quickly master new subjects; ability to be creative, flexible and resourceful
- Ability to seek assistance, advice, or direction when appropriate
- Ability to exercise courtesy, tact and diplomacy in all communications
- Ability to establish and maintain effective and cordial working relationships at all organizational levels, including agency management, direct supervisors, co-workers, internal and external customers.
- Ability to understand, follow and convey brief oral and/or written instructions.
- Ability to communicate both verbally and in writing, in a clear and concise manner.
- Ability to work independently and as part of a team, and to support and contribute to a cohesive team environment.
- Ability to work under pressure and exacting schedules to complete assigned tasks.
- Ability to work a flexible schedule to meet required deadlines.
- Ability to comply with all agency policy and applicable laws.
- Ability to comply with all applicable safety rules, regulations, and

Copy from re:SearchTX

standards.

**Computer Skills**

- Proficiency in the use of a computer and applicable software necessary to perform work assignments e.g., Microsoft Office for word processing, spreadsheets, and Teams meeting software.

**Other Requirements**

- Regular and punctual attendance at the workplace.
- Criminal background check.

**Working Conditions**

- Work is normally performed in a typical interior/office work environment
- Frequent use of computers, copiers, printers, and telephones.
- Frequent standing, walking, sitting, listening, and talking.
- Frequent work under stress, as a team member, and in direct contact with others.
- Occasional outside work including construction site visits
- Occasional bending, stooping, lifting, and climbing.

Apply Online        Add to My Job Cart

Texas.gov | Statewide Search from the Texas State Library | State Link Policy | Texas Homeland Security

Glenn Hegar, Texas Comptroller · Comptroller.Texas.Gov · Contact Us

Privacy and Security Policy | Accessibility Policy | Link Policy | Public Information Act | Compact with Texans

Copy from re:SearchTX

## Exhibit 1 - "State-Owned Property" Email from Lisa Jammer, 27AUG2024



Shamar D. Bradley <shamar.d.bradley@gmail.com>

### State-Owned Property

Lisa Jammer <lisa.jammer@dir.texas.gov>
Tue, Aug 27, 2024 at 5:22 PM
To: "Shamar.D.Bradley@gmail.com" <Shamar.D.Bradley@gmail.com>

Shamar:

Your employment with DIR was terminated on Wednesday, August 21, 2024. As part of the offboarding process, you **must** return all state-owned property that was issued to you by DIR. This includes, but is not limited to, the following DIR assets:

- Latitude 7410
- MiFi 8000
- iPhone 13

If you have any DIR assets not included in the list above, you must return them as well. **Please return all DIR assets in your possession by 5:00 PM on Friday, August 30, 2024, at the William P. Clements Building located at 300 W. 15th Street, Austin, Texas 78701.** If you fail to return this property by the stated date and time, then DIR will issue an invoice to you requiring your full repayment of all items still in your possession.

**Lisa Jammer** | Chief People and Culture Officer, PHR, SHRM-CP, CDP
Human Resources Department
Texas Department of Information Resources
Lisa.Jammer@dir.texas.gov
O: (512) 475-4612
M: (512) 426-3259
300 W. 15th Street, Suite 1300, Austin, TX 78701



**Transforming How Texas Government Serves Texans**
#DIRisIT | @TexasDIR | About DIR



Copy from re:SearchTX

## Exhibit 2 - "DIR Equipment" Email from Randa Maldonado, 12SEP2024

 Gmail

Shamar D. Bradley <shamar.d.bradley@gmail.com>

**DIR Equipment**

Randa Maldonado <randa.maldonado@dir.texas.gov>                     Thu, Sep 12, 2024 at 9:49 AM
To: "Shamar.D.Bradley@gmail.com" <Shamar.D.Bradley@gmail.com>
Cc: Lisa Jammer <lisa.jammer@dir.texas.gov>

Good Morning Shamar,

Please return all state-owned property that was issued to you by DIR. This includes, but is not limited to, the following DIR assets:

- Latitude 7410
- MiFi 8000
- iPhone 13

If you have any DIR assets not included in the list above, you must return them as well. Please follow the instructions listed below to ship and return all DIR assets in your possession by **5:00pm on Monday, September 16, 2024.** If you fail to return this property by the stated date and time, then DIR will issue an invoice to you requiring your full repayment of all items still in your possession.

**Shipping Instructions**

Go to the nearest FedEx location.

- Have FedEx package the laptop/equipment, utilize the **DIR FedEx Account No. 1108-8402-8** and create a shipping label to the following address:

  Department of Information Resources (DIR)

  Attn: ITS Issac Wilcher

  300 W. 15th Street, Suite 1300

  Austin Texas 78701

- Send email to me with the **FedEx tracking number.**

Please let me know if you have any questions.

Thanks,

Randa Maldonado | People & Culture Director, PHR
People & Culture Office
Texas Department of Information Resources
(512) 463-5920 | randa.maldonado@dir.texas.gov
300 W. 15th Street, Suite 1300, Austin, TX 78701


Transforming How Texas Government Serves Texans
#DIRisIT | @TexasDIR | About DIR



Copy from re:SearchTX

Exhibit 3 - Request for Invoice Email to Lisa Jammer, 20SEP2024



Shamar D. Bradley <shamar.d.bradley@gmail.com>

**Re: DIR Equipment**

**Shamar D. Bradley** <shamar.d.bradley@gmail.com>          Fri, Sep 20, 2024 at 11:46 AM
To: Randa Maldonado <randa.maldonado@dir.texas.gov>
Cc: Lisa Jammer <lisa.jammer@dir.texas.gov>, "issac.wilcher@dir.texas.gov"
<issac.wilcher@dir.texas.gov>

Invoice me. Who's handling my appeal?

Exhibit 4A - DIR Whistleblower Appeal Email, 23SEP2024, Page 1



Shamar D. Bradley <shamar.d.bradley@gmail.com>

**DIR Whistleblower Appeal**

**Shamar D. Bradley** <shamar.d.bradley@gmail.com>          Mon, Sep 23, 2024 at 10:30 AM
To: Randa Maldonado <randa.maldonado@dir.texas.gov>
Cc: Lisa Jammer <lisa.jammer@dir.texas.gov>, "josh.godbey@dir.texas.gov"
<josh.godbey@dir.texas.gov>

Hello,

I am formally invoking action under the DIR grievance/appeal procedure relating to the cause
for termination of public employment at DIR as set forth in Texas Government Code §
554.006(b)(1).

The PDF attachment has additional info. Please advise as to the DIR employee responsible
for handling the internal DIR whistleblower grievance.

Regards,
Shamar


**appeal - Copy.pdf**
3335K

Copy from re:SearchTX

Petition for Redress

The Texas Department of Information Resources ("DIR") is a state of Texas governmental entity. See _Texas Government Code § 554.001(5)(A)_[i]. Shamar D. Bradley began employment at DIR on November 13th, 2023.[ii] Bradley was employed as a Database Administrator.[iii] Bradley was wrongfully terminated on August 21st, 2024.[iv] The total time of Bradley's employment at DIR was 9 months and 8 days. Therefore, he successfully completed the mandatory 9-month probationary period and is a "public employee." See _Texas Government Code § 554.001(4)_[v].

Bradley hereby timely invokes action under the DIR grievance/appeal procedure relating to the cause for termination of public employment at DIR. See _Texas Government Code § 554.006(b)(1)_[vi]. Bradley was wrongfully terminated in illegal retaliation[vii] for refusing to engage in illicit activity and for the good faith report of a violation of a law[viii] by public employees at DIR. Bradley refused to be complicit in and reported criminal violations of software copyright infringement[ix] by another public employee of DIR; shortly thereafter, he was terminated thus satisfying the knowledge-timing test. See _17 United States Code § 506(a)(1)(B), (e)_; see also _18 United States Code § 2319(b)(1)_.

DIR failed to display notice of whistleblower rights in the recently acquired Adult Day Care (ADC) facility.[x] See _Texas Government Code § 554.009(a)_. Notwithstanding aforementioned lack of notice, Bradley's burden of proof has been met with clear and convincing evidence[xi] and the allegation of retaliatory termination is presumed to be true. See _Texas Government Code § 554.004(a)_.[xii]

In the event that the DIR grievance procedure fails to reinstate Bradley with backpay and extra benefits, DIR sovereign immunity[xiii] will be waived and abolished and relief[xiv] will be sought in the appropriate jurisdiction.[xv] See _Texas Government Code § 554.0035_. See also _Texas Government Code § 554.003(a)-(c)_. See also _Texas Government Code § 554.007(a)_. This will also result in additional civil penalties[xvi] for the public employees responsible for the violation and an audit[xvii] of DIR. See _Texas Government Code § 554.008_. See also _Texas Government Code § 554.010_.

Copy from re:SearchTX

Exhibit 5 - Information Request for Invoice for DIR Property, 08NOV2024

 Gmail

Shamar D. Bradley <shamar.d.bradley@gmail.com>

**[Records Center] Public Information Request :: R003958-102724**

**Texas DIR Public Records Center** <texasdir@mycusthelp.net>
To: "shamar.d.bradley@gmail.com" <shamar.d.bradley@gmail.com>

Fri, Nov 8, 2024 at 5:43 PM

--- Please respond above this line ---



11/08/2024

RE: PUBLIC RECORDS REQUEST of October 27, 2024, Reference # R003958-102724

Dear Shamar Bradley:

DIR received a public information request from you on October 27, 2024. You requested:

"Invoice for state property formerly assigned to Shamar bradley who was fired for reporting his coworker for criminal copyright infringement"

Thank you for your request. DIR does not have any responsive documents to your request.

Regards,

Gloria C. Rivera
Legal Assistant

To monitor the progress or update this request please log into the Public Records Center



Copy from re:SearchTX

Exhibit 6 - Police Presence at DIR Board Meeting, 29MAY2025

Copy from re:SearchTX

Exhibit 7 - Report of Criminal False Report to Peace Officer, 30MAY2025

Amanda Crawford
Executive Director and State Chief Information Officer
300 West 15th Street, Suite 1300
Austin, TX 78701
Delivered via email to amanda.crawford@dir.texas.gov

May 30th, 2025

Dear Director Crawford,

As you may or may not be aware, I have been falsely arrested numerous times; therefore, I exercise an abundance of caution to safeguard my personal and professional reputation for my personal safety and wellbeing, which is why I am appealing my termination to the Supreme Court.

After I was falsely accused of and terminated for "unacceptable conduct" the day after reporting my coworker for repeatedly sleeping at work and engaging in criminal copyright infringement, I received an email from Lisa Jammer on August 27th, 2024 at 5:22 PM, stating: "DIR will issue an invoice to you requiring your full repayment of all items still in your possession." *See* Exhibit 1 - "State-Owned Property" Email from Lisa Jammer, 27AUG2024. Then I received an email from Randa Maldonado on September 12th, 2024 at 9:49 AM, stating: "DIR will issue an invoice to you requiring your full repayment of all items still in your possession." *See* Exhibit 2 - "DIR Equipment" Email from Randa Maldonado, 12SEP2024.

On September 20th, 2024 at 11:46 AM, I sent Lisa and Randa an email, stating: "Invoice me. Who's handling my appeal?" *See* Exhibit 3 - Request for Invoice Email to Lisa Jammer, 20SEP2024. I did not receive a response or an invoice for DIR equipment so I filed a Public Records Request for the invoice. On November 8th, 2024 at 5:43 PM, I received the following response from Gloria C. Rivera: "You requested: "Invoice for state property formerly assigned to Shamar bradley who was fired for reporting his coworker for criminal copyright infringement" Thank you for your request. DIR does not have any responsive documents to your request." *See* Exhibit 4 - Public Information Request for Invoice for DIR Property, 08NOV2024.

Yesterday, May 29th, 2025 I made an appearance at the DIR Quarterly Board Meeting to retrieve my personal property that was seized after I was retaliated against for blowing the whistle on my coworker's criminal activity. Shortly after I arrived at the Board meeting, a police presence was requested. After the meeting concluded, I confirmed with the officer that my presence was the cause of his appearance. I requested that the officer contact DIR to retrieve my personal property and the invoice for the DIR equipment; fortunately, I was able to retrieve my personal property, but unfortunately, I was advised by the State Police Officer that it is DIR's contention that the DIR property assigned to me is designated as stolen, which is false, as evidenced above and below. Please be advised that it is a criminal offense to knowingly make a false statement to a peace officer with intent to deceive by claiming a crime occurred, when in reality, it did not, as set forth in Tex. Pen. Code § 37.08. Thank you for you attention to this matter, and it was nice seeing you.

_____/S/_____
Shamar D. Bradley, MS, MBA, EIT
10109 Lake Creek Parkway, #170682
Austin, TX 78717
shamar.d.bradley@gmail.com
210-425-5464

Copy from re:SearchTX

Exhibit 8 - Email from Lisa Jammer, 30MAY2025

 Gmail

Shamar D. Bradley <shamar.d.bradley@gmail.com>

**Invoice for State Equipment**

Lisa Jammer <lisa.jammer@dir.texas.gov>                                         Fri, May 30, 2025 at 5:56 PM
To: "Shamar D. Bradley" <shamar.d.bradley@gmail.com>
Cc: Josh Godbey <josh.godbey@dir.texas.gov>

Dear Shamar,

Please see the attached document.

Regards,

Lisa Jammer

**Lisa Jammer** | Chief People and Culture Officer, PHR, SHRM-CP, CDP
Human Resources Department
Texas Department of Information Resources
Lisa.Jammer@dir.texas.gov
O: (512) 475-4612
M: (512) 426-3259
300 W. 15th Street, Suite 1300, Austin, TX  78701



**Transforming How Texas Government Serves Texans**
#DIRisIT | @TexasDIR | About DIR



 **Invoice for State Equipment.pdf**
152K

Copy from re:SearchTX

Exhibit 9 - Defendants' Threat of Any Legal Action, 30MAY2025



**Texas Department of Information Resources**
Transforming How Texas Government Serves Texans

May 30, 2025

**Shamar D. Bradley**

Mr. Bradley,

Upon your termination on August 21, 2024, DIR requested the return of state equipment in your possession. Our records reflect that, as of May 30, 2025, you have not returned the following agency assets.

| PROPERTY TAG | ASSET DESCRIPTION | ACQUISITION COST |
|---|---|---|
| 313-8338 | LATITUDE 7410 | 1,379.01 |
| 313-8815 | IPHONE 13, MIDNIGHT, 128GB | 629.99 |
| NA | MIFI DEVICE | 99.00 |
| | TOTAL ASSETS VALUE | $ 2,108.00 |

Within ten calendar days of May 30, 2025, please resolve this situation by either:

- Returning all of the above equipment to the Department of Information Resources by shipping it at agency expense by the method outlined below; or
- Remitting a money order or cashier's check, payable to the "Department of Information Resources" in the amount of $2,108.00, the details of which are broken out in the above table.

On Thursday, May 29, 2025, you indicated that the equipment in your possession was in San Antonio. The letter you submitted to Amanda Crawford indicated an Austin address. As DIR does not have a return address for a pre-paid label, please follow the below instructions to return the equipment:

- Go to the nearest FedEx location.
- Have FedEx package the laptop/equipment and, use the **DIR FedEx Account No. 1108-8402-8,** to create a shipping label to the following address:

  Department of Information Resources (DIR)
  Attn: ITS Issac Wilcher
  300 W. 15th Street, Suite 1300
  Austin Texas 78701

Absent resolution of this matter within ten calendar days of May 30, 2025, by either returning the equipment or remitting payment as described above, DIR will consider any appropriate legal action available to the agency for your failure to return the state's property.

P.O. Box 13564, Austin, TX  78711-3564  |  (512) 475-4700  |  dir.texas.gov  |  @TexasDIR

Copy from re:SearchTX

Cause No. D-1-GN-25-001373

| | | |
|---|---|---|
| SHAMAR D. BRADLEY | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| v. | § | |
| TEXAS OFFICE OF THE | § | TRAVIS COUNTY, TEXAS |
| ATTORNEY GENERAL, | § | |
| TEXAS DEPARTMENT OF | § | |
| INFORMATION RESOURCES, | § | |
| *and all other Defendants* | § | 261ST JUDICIAL DISTRICT |
| *similarly situated* | § | |

## ORDER GRANTING THE PLAINTIFF'S MOTION FOR RULE 2.6 ASSIGNMENT

ON THIS DAY came to be heard the Motion for Local Rule 2.6 Assignment filed by

Plaintiff Shamar D. Bradley. After due consideration of the law and the filings of the parties, the

Court finds said plea meritorious. It is therefore.

**ORDERED** that the Plaintiff's Motion for Local Rule 2.6 Assignment is **GRANTED.**

SIGNED this _____ day of _____ 2025

_____

Judge Presiding

Copy from re:SearchTX

| | | |
|---|---|---|
| SHAMAR D. BRADLEY | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| v. | § | |
| TEXAS OFFICE OF THE | § | TRAVIS COUNTY, TEXAS |
| ATTORNEY GENERAL, | § | |
| TEXAS DEPARTMENT OF | § | |
| INFORMATION RESOURCES, | § | |
| *and all other Defendants* | § | 261ST JUDICIAL DISTRICT |
| *similarly situated* | § | |

## ORDER GRANTING THE PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

ON THIS DAY came to be heard the Motion for Injunctive Relief filed by Plaintiff Shamar D. Bradley. After due consideration of the law and the filings of the parties, the Court finds said plea meritorious. It is therefore.

**ORDERED** that the Plaintiff's Motion Injunctive Relief is **GRANTED.** It is further **ORDERED** that the defendant reinstate the plaintiff to the equivalent position of Project Manager III, effective immediately, at the Texas Department of Information Resources.

SIGNED this _____ day of _____ 2025

_____

Judge Presiding

Copy from re:SearchTX

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 102484817
Filing Code Description: Motion (No Fee)
Filing Description: Motion for injunctive relief
Status as of 7/7/2025 8:29 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Shamar Bradley | | shamar.d.bradley@gmail.com | 6/26/2025 2:59:42 PM | SENT |
| Denver Burris | | denver.burris@oag.texas.gov | 6/26/2025 2:59:42 PM | SENT |

App. 000161

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michelle Elliott on behalf of Denver Burris
Bar No. 24138940
michelle.elliott@oag.texas.gov
Envelope ID: 108131279
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: 20251117_Brief_final
Status as of 11/17/2025 2:55 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Jennifer Foster | | Jennifer.Foster@oag.texas.gov | 11/17/2025 2:50:12 PM | SENT |
| Rosalind Hunt | | ROSALIND.HUNT@OAG.TEXAS.GOV | 11/17/2025 2:50:12 PM | SENT |
| Denver Burris | | denver.burris@oag.texas.gov | 11/17/2025 2:50:12 PM | SENT |
| Josh Godbey | | JOSH.GODBEY@OAG.TEXAS.GOV | 11/17/2025 2:50:12 PM | ERROR |

Associated Case Party: TEXAS DEPARTMENT OF INFORMATION RESOURCES

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Denver Burris | | Denver.Burris@oag.texas.gov | 11/17/2025 2:50:12 PM | SENT |
| Michelle Elliott | | Michelle.Elliott@oag.texas.gov | 11/17/2025 2:50:12 PM | SENT |

Associated Case Party: SHAMARD.BRADLEY

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Shamar D.Bradley | | shamar.d.bradley@gmail.com | 11/17/2025 2:50:12 PM | SENT |